**United States District Court**

District _Eastern District of Louisiana_

Name _David Lee Williams_

Prisoner No. _Ø 98840_

Docket No.

**07-9724**

**SECT. K MAG. 6**

Place of Confinement _La. State Penitentiary_

The Attorney General of the State of Louisiana: _Buddy Caldwell_

Name of Petitioner (include the name upon which convicted) petitioner)

Name of Respondent (authorized person having custody of

_David Lee Williams_        v.    _Burl Cain, Warden_

PETITION

1. Name and location of court which entered the judgment of conviction under attack _22nd Judicial District Court / Courthouse, Washington + Main Street, Franklinton, La._       2.

Date of judgment of conviction _March 16, 1982_       3.

Length of sentence _Life imprisonment_       4.

Nature of offense involved (all counts) _(1) Count of Aggravated Rape_

5. What was your plea? (Check one)
   (a) Not guilty          [✓]
   (b) Guilty              [ ]
   (c) Nolo contendere     [ ]
   (d) Not guilty by reason of insanity [ ]

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   _N/A_

6. Kind of Trial: (Check one)
   (a) Jury         [✓]
   (b) Judge only   [ ]

7. Did you testify at trial?
   Yes [✓]   No [ ]

8. Did you appeal from the judgment of conviction?
   Yes [✓]   No [ ]

___ Fee _Pauper_
___ Process _____
X  Dktd _____
___ CtRmDep_____
___ Doc. No._____

**TENDERED FOR FILING**

DEC 14 2007

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

AO 241
REV 6/82

(2)

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court _Louisiana Supreme Court_

(b) Result _Denied_

(c) Date of result and citation, if known _March 2, 1983; 427 So.2d 873; 82-KA-19117_

(d) Grounds raised _Error Patent on the face of the Record_

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court _Eastern District of Louisiana, United States District Court_

(2) Result _Denied_

(3) Date of result and citation, if known _____

(4) Grounds raised _Insufficient Evidence / Denial of Due Process - Having Never Been Indicted by a Grand Jury Before Trial + Sentence_

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____

(2) Result _____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes [ ✓ ]   No [ ]

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _22nd Judicial District Court and La. Supreme Court_

(2) Nature of proceeding _Post Conviction Application / Habeas Corpus Writ_

(3) Grounds raised _Newly Discovered Evidence - Brady Issue / No Grand Jury Indictment / Ineffective Assistance of Counsel / DNA_

AO 241 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes [ ✓ ]  No [   ]

(5) Result _Evidence Destroyed by floodwaters in basement/evidence room_

(6) Date of result _June 24, 2005_

(b)  As to any second petition, application or motion give the same information:

(1) Name of court _22nd Judicial District Court_

(2) Nature of proceeding _Post Conviction Application_

(3) Grounds raised _No Grand Jury Indictment_

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes [ ✓ ] No  [   ]

(5) Result _Denied_

(6) Date of result _April 11, 2006_

(c)  Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.      Yes [   ] No [ ✓ ]
(2) Second petition, etc.    Yes [ ✓ ] No [   ]

(d)  If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_(1) Evidence Destroyed - No further action needed_

12.  State *concisely* every ground on which you claim that you are being held unlawfully.  Summarize *briefly* the *facts* supporting each ground.
If necessary, you may attach pages stating additional grounds and *facts* supporting same.
     CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground
     on which you request action by the federal court.  If you fail to set forth all grounds in this petition, you may be barred from presenting
     additional grounds at a later date.

(3)

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these ground for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: Petitioner has Never been indicted by a Grand Jury though Charged with and convicted of an Offense Punishable only by Life imprisonment

Supporting FACTS (state briefly without citing cases or law) _____

See Attached Memorandum of Law

_____

_____

_____

_____

_____

B. Ground two: _____

Supporting FACTS (state briefly without citing cases or law)

_____

_____

_____

_____

_____

_____

AO 241 (Rev. 5/85)

C. Ground three: _____

_____

Supporting FACTS (state briefly without citing cases or law) _____

_____

_____

_____

_____

_____

_____

D. Ground four: _____

_____

Supporting FACTS (state briefly without citing cases or law) _____

_____

_____

_____

_____

_____

_____

13. If any of the ground listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes [    ] No [ ✓ ]

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein

    (a) At the preliminary hearing   *Mr. Reggie Simmons, 1012 Main Street, Franklinton, La.*
    *70438*

    (b) At arraignment and plea   *Same as above*

AO 241 (Rev. 5/85)

(c) Trial: N/c. Thomas Ford, Jr. P.O. Box 5250, Jeddah, Saudi Arabia 21422 ; Sam Collett, Jr.
602 Willis Ave.
BoGalusa, La. 70427

(d) At sentencing _____

Same as above

(e) On appeal S. Gustin McElroy, Suite 202 C, 600 W. Hwy., 190 Covington, La. 70433
David J. Knight, Suite 2450, 639 Loyola Ave., N.O., La. 70113

(f) In any post-conviction proceeding _____NONE_____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____None_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes [ ] No [ ✓ ]

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes [ ] No [ ✓ ]
(a) If so, give name and location of court which imposed sentence to be served in the future: _____N/A_____

(b) Give date and length of the above sentence: _____N/A_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes [ ] No [ ✓ ]

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____N/A_____
Signature of Attorney (if any)

I declare under the penalty of perjury that the foregoing is true and correct. Executed on

December 12, 2007
(date)

David L. Williams #98840
Signature of Petitioner

(6)

IN THE UNITED STATES DISTRICT COURT
*for* EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS

Docket No: _____

STATE EX REL. DAVID LEE WILLIAMS
*Petitioner*

versus

N. BURL CAIN, WARDEN
*Respondent*

MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT
TO TITLE 28 U.S.C. SECTION 2254 AND REQUEST
FOR AN EVIDENTIARY HEARING

Original Application on behalf of David Lee Williams

Prepared & Submitted by:

*David L. Williams*

David Lee Williams, #098840
Magnolia Unit - 4
Louisiana State Prison
Angola, Louisiana 70712

TABLE OF CONTENTS

PAGE

MEMORANDUM OF LAW IN SUPPORT
    OF APPLICATION FOR WRIT OF HABEAS CORPUS ........................ 1

Statement of the Proceeding ...................................................... 1

APPLICABLE STANDARD OF REVIEW ......................................... 3

STATEMENT OF THE CASE ....................................................... 4

WHY TRIAL COURT'S DENIAL IS ERRONEOUS ............................. 5

ERROR 3 .............................................................................. 9

ERROR 4 .............................................................................. 11

VERDICT CONTRARY TO LAW AND EVIDENCE ............................ 24

ERROR 6
    INSUFFICIENT EVIDENCE ................................................... **26**

ERROR 7 .............................................................................. 34

ERROR 8 .............................................................................. 36

ERROR 9 .............................................................................. 45

ASSIGNMENT OF ERROR 10
    INEFFECTIVE ASSISTANCE OF COUNSEL ............................. 62

Louisiana Rules for Court, State 2000 ........................................... 66

CONCLUSION ....................................................................... 81

CERTIFICATE OF SERVICE ...................................................... 82

A

## TABLE OF AUTHORITIES

PAGE

**U.S. CONSTITUTION**

Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Amendment 13 [1865] section (1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Amendment 14 [1868] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Amendment 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Amendment 6 [1791] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Amendment 8 [1791] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Amendment XIII-Xiv . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

U.S.C.A. Const. Amend. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

U.S.C.A. Const. Amends. 5, 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

United States Const. VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

**I.A. CONSTITUTION**

(La. Const. 1974) art. 1, section 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Amendment V [1791] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Amendment VI [1791] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Amendment VIII [1791] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Amendment XIII [1865] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Amendment XIV [1868] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

B

Art. III, Section 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Art. IV, Section 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Art. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Art. VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Article 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

La. Const. 1 § 13 section 13, § 2, § 3, § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

La. Const. Art. 1 § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

La. Const. Art. 1 § 2-3; § 15-16, § 19-20, §22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

LSA-Const. Art. 1 § 9, 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

LSA-Const. Art. 1, § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FEDERAL CASES

Neil v. Biggers, 114 S.Ct. 217 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942) . . . 51

Anders v. California, 386 U.S. 738, 87 S.Ct. 1394, 18 L.Ed.2d 493 (1967) . . . . . . . . . . . . . . . 78

Andrews v. Collins, 24 F.3d 612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argersinger v. Hamlin, 407 U.S. 25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (12/24/04) . . . . . . . . . . . . . 5

Barefoot v. Texas, 463 U.S. 880, 103 S.Ct. 3383 . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Berger v. United States, 295 U.S. 78, 55 S.Ct. 629 . . . . . . . . . . . . . . . . . . . . . . . . . 42

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) . . . . . . . . . . . . . . . . 49

Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) . . . . . . . . . . . . . . . . 15

Cantrell v. Alabama, 546 F.2d 652 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . 79

Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) . . . . . . . . . . . . . . . 75

Davis v. Alaska, 415 U.S. 308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) . . . . . . . . . . . . . . . 53

Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) . . . . . . . . . . . . . . . . . . 79

Ganby v. State of Alabama, 569 F.2d 1318 (3/23/78) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) . . . . . . . . . . . . . . . 50

Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) . . . . . . . . . . . . . . 54

Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981) . . . . . . . . . . . . . . . . 32

In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) . . . . . . . . . . . . . . . . . . . 75

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) . . . . . . . . . . . . . . . 32

Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574 . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

Kyles v. Whitley, 514 U.S. 419 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Loftis v. Estelle, 515 F.2d 872 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) . . . . . . . . 80

Napue v. Illinois, 79 S.Ct. 1173 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Neil v. Biggers, 93 S.Ct. at 382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pointer v. Texas, 380 U.S. 400 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) . . . . . . . . . . . . . . . . . . . . 50

Sellers v. Estelle, 651 F.2d 1074 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064 . . . . . . . . . . . . . . . . . . . . . . 79

U.S. v. Cronic, 466 U.S. 648, 104 S.Ct. at 2039, 80 L.Ed.2d 657 (1984) . . . . . . . . . . . . . . . 64

United Sav. Assn. Of Texas v. Timbers of Inwood Forest Associates, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Auten, 632 F.2d 478 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

United States v. Bagley, 105 S.Ct. 3375, 3381 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

United States v. Downing, 753 F.2d 1224 (3rd Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Fosher, 590 F.2d 381 (1st Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Nordic Village, Inc., 503 U.S. 30, 36, 112 S.Ct. 1011, 15, 117 L.Ed.2d 181 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Rosnow, 9 F.3d 728 (2/28/94) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Wash. Legal Found. v. Legal Found. of Wash., 271 F.3d 835 . . . . . . . . . . . . . . . . . . . . . . . . 79

STATE CASES

Barbara A. Smith v. American Indemnity Insurance Company, et al., 598 So.2d 486 . . . . . . . . 19

State of Louisiana v. Jake Shiels, 1881 WL 8764 (La.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Carlin v. Cain, 97-2390 (La. 3/13/98), 706 So.2d 968 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Chappel v. The State, 1835 WL 925 (Tenn), May Term, 1835 . . . . . . . . . . . . . . . . . . . . . . . . 1

People v. McDonald, 690 P.2d 709 (Cal. 1984)(overruled on other grounds. 4 P.3d 265) . . . . . 16

State ex rel. David A. Winn v. State, 685 So.2d 104, 95-0898 (La. 10/2/96) . . . . . . . . . . . . . . 56

State ex rel. Gregory Cormier v. State of Louisiana, 731 So.2d 274, 1998-2111 (La. 10/13/95) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

State ex rel., Glover v. State, 660 So.2d 1189 (La. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

State ex rel., Graffagnino v. King, 436 So.2d 559 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

State ex rel., Thompson v. State of Louisiana, 661 So.2d 479, 94,0480 (La. 10/13/95) . . . . . . . 49

State v. Alexander, 504 So.2d 591 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

State v. Berry, 430 So.2d 1005 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

State v. Burnett, 496 So.2d 1236 (La.App. 5 Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

State v. Butters, 527 So.2d 1023 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

State v. Cage, 583 So.2d 1125 (La. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

State v. Cage, 637 So.2d 89, 87-2778 (La. 2/4/1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Chapple, 660 P.2d 1208 (Ariz. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

State v. Clayton, 427 So.2d 827 (La. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

State v. Davis, 385 So.2d 193 (La. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

State v. Demolle, 621 So.2d 167 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

State v. Donahue, 355 So.2d 247 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

State v. Donahue, 408 So.2d 1262 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

State v. Drew, 360 So.2d 500, 518-19 (La. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

State v. Easter, 756 So.2d 703, 32,940 (La.App. 2 Cir. 4/7/00) . . . . . . . . . . . . . . . . . . . . . 68

State v. Edwards, 420 So.2d 663 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

State v. Fickes, 497 So.2d 392 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

State v. Fugler, 721 So.2d 1, 1997-1836 (La.App. 1 Cir. 9/25/98) . . . . . . . . . . . . . . . . . . . . 70

State v. Garrison, 400 So.2d 874 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

State v. Gibbs, 355 So.2d 1299 (La. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

State v. Hansbro, 796 So.2d 185, 35,027 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Hardman, 467 So.2d 1163, 1171 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

State v. Hartman, 479 So.2d 948 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

State v. Hartman, 530 So.2d 615 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

State v. Hills, 129 So.2d 12 (La. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

State v. Hodges, 526 So.2d 406 (La.App. 4 Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

State v. Hubbard, 48 P.3d 953 (Utah, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

State v. Jackson, 437 So.2d 855 (La. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

State v. Kenner, 900 So.2d 948 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Knapper, 579 So.2d 956 (La. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

State v. Lanieu, 855 So.2d 512, 2003-2640 (La. 10/1/04) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

State v. Lewis, 343 So.2d 1056 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

State v. Lott, 434 So.2d 1274 (La.App. 1 Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

State v. Mack, 403 So.2d 8 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

State v. Marse, 365 So.2d 1319 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

State v. Mason, 32 An. 1019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

State v. Nuccio, 454 So.2d 93 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

State v. Parish, 405 So.2d 1080 (La. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

State v. Perron, 660 So.2d 903 (La.App. 4 Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

State v. Pitts, 3 So. 118 (La. 1887) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

State v. Prieur, 277 So.2d 126 (La. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

State v. Richey, 249 So.2d 143 (La. 1971), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

State v. Rosette, 653 So.2d 80 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

State v. Ruple, 437 So.2d 873 (La.App. 2 Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

State v. Sims, 465 So.2d 769 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

State v. Smith, 542 So.2d 175 (La.App. 1 Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

State v. Stevenson, 334 So.2d 195 (La. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

State v. Sullivan, 596 So.2d 177, 186 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

State v. Trent, 517 So.2d 1053 (La.App. 3 Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

State v. Wiggins, 556 So.2d 622 (La.App. 2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 17

State v. Williams, 427 So.2d 873 (La. 3/2/83) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

State v. Williams, 815 So.2d 378 (La.App. 1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 17

State v. Willie, 422 So.2d 1128 (La. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Winn v. Louisiana, 685 So.2d 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

## CODAL AND STATUTORY ARTICLES

LSA-C.Cr.P. 382, subd. A, 533(5), subd. C, C.Cr.P. 383 . . . . . . . . . . . . . . . . . . . . . . . 12

LSA-C.Cr.P art. 770 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

LSA-C.Cr.P art. 771 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

LSA-C.Cr.P Art. 461-6, 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

28 U.S.C. 2254(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

LSA-C.Cr.P Art. 442-444(A)(1)(2)(3); (B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

LSA-C.Cr.P Art. 468 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

LSA-C.Cr.P Art. 473 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

LSA-C.Cr.P Art. 821(A)-(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

LSA-C.Cr.P Art. 851(1), C.Cr.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

LSA-C.Cr.P Art. 852 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

LSA-C.Cr.P Art. 861 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

LSA-C.Cr.P Art. 872(2)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

LSA-C.Cr.P Art. 882(A)(B)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

LSA-C.Cr.P Art. 930.3(A)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

LSA-C.Cr.P Article 926.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

LSA-C.Cr.P art. 401-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

LSA-C.Cr.P art. 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

LSA-C.Cr.P art. 438 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

LSA-C.Cr.P art. 442-3, 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

LSA-C.Cr.P art. 461-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

LSA-C.Cr.P art. 461-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. art. 464 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

La.C.Cr.P. art. 465-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

La.C.Cr.P. art. 770-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. art. 774 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

La.C.Cr.P. art. 775(3)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

La.C.Cr.P. art. 778 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. art. 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. art. 811 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. art. 813-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. art. 821-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. art. 851(1)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. art. 853 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. art. 882(A)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

La.C.Cr.P. 61, 62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

La.C.Cr.P. art. 382-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La.C.Cr.P. Art. 765(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

La.C.Cr.P. Art. 844(A)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

La.C.Cr.P. art. 382-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

La.C.Cr.P. art. 384, art. 383, art. 382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

La.C.Cr.P. art. 442-4; (A) 1-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

La.C.Cr.P. art. 462 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

La.C.Cr.P. art. 464 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

La.C.Cr.P. art. 851(1)(3)(5)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

La.C.Cr.P. art. 872 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

La.C.Cr.P. arts. 442, 443, 444 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

La. C.E. art. 104-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

La. C.E. art. 105; 401; 403-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

La. Code of Criminal Procedure Article 495.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

La.C.Cr.P. art. 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

La.C.Cr.P. art. 729.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

La.C.Cr.P. art. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

La.C.Cr.P. art. 851(3)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

La.C.Cr.P. art. 872 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

La.C.Cr.P. art. 926.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

La.C.Cr.P. art. 930.8(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

La.C.Cr.P. Art. 930.8 A(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

La.C.Cr.P. Arts. 930.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

La.C.E. art. 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

La.R.S. 14:64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Louisiana Code of Crim. P. Art. 841(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

LSA-C.Cr.P. 382, subd. A, 533(5), 535, subd. C . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

LSA-C.Cr.P. Art. 775(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LSA-C.Cr.P. art. 162 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

LSA-C.Cr.P. art. 465, 473 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

LSA-C.Cr.P. art. 930.8, subd. A(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

LSA-C.Cr.P. arts. 382, 920 (1)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LSA-C.Cr.P. arts. 535 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LSA-C.E. art. 801, subd. D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

LSA-Crim. P. Art. 382; Art. 5, Art. 383, Art. 462 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

LSA-R.S. 14:42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LSA-R.S. 15:445-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

LSA-R.S. 15:455 and 15:466 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

LSA-R.S. 44:1 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

R.S. 14:42(1)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

R.S. 15:438 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

R.S. 15:452 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

UNITED STATES DISTRICT COURT
*for the* EASTERN DISTRICT OF LOUISIANA

Doc. #37,096

DAVID LEE WILLIAMS
                 Petitioner

VERSUS

BURL CAIN, WARDEN
Louisiana State Penitentiary
                 Respondent

CIVIL ACTION

CASE NO: _____

SECTION: _____

FILED: _____

---

MEMORANDUM OF LAW IN SUPPORT
OF APPLICATION FOR WRIT OF HABEAS CORPUS

---

MAY IT PLEASE THE COURT:

NOW INTO COURT comes, David Lee Williams, hereinafter referred to as petitioner in the above mentioned case seeking relief pursuant to 28 U.S.C. section 2254, D(1) and (2), Writ of Habeas Corpus.

I.      Statement of the Proceeding

Petitioner was charged with Aggravated Rape in violation of La. R.S. 14:42. Petitioner was tried by a jury and convicted as charged on March 16, 1982. Pursuant to this conviction the trial court imposed a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence.

The decision of the lower court failed to apply the decision of the Louisiana Supreme Court in *Chappel v. The State*, 1835 WL 925 (Tenn), May Term, 1835, *State of Louisiana v. Jake Shiels*, 1881 WL 8764 (La.); *State v. Mason*, 32 An. 1019; *State v. Pitts*, 3 So. 118 (La. 1887); *State v. Ruple*, 437 So.2d 873 (La.App. 2 Cir. 1983); *State v. Demolle*, 621 So.2d 167 (1993); *State v. Donahue*, 355 So.2d 247 (1978); *State v. Stevenson*, 334 So.2d 195 (La. 1976); *State v. Smith*, 542

1

So.2d 175 (La.App. 1 Cir. 1989); *State v. Davis*, 385 So.2d 193 (La. 1980); *State v. Lott*, 434 So.2d 1274 (La.App. 1 Cir. 1983), as set forth in this petition herein. This amounts to an erroneous interpretation and application of the Constitutions and of the law. This decision has caused material injustice.

Further, the Supreme Court of Louisiana has failed in its judicial duty to correct the District Court error and properly exercise its' Supervisory Jurisdiction over the matter, the effect being to depart from proper judicial proceedings, or to sanction such abuse by the lower court in this case, as to call for an exercise of this Court's supervisory authority. This is a jurisdictional issue since State knowingly instituted prosecution of a charge of aggravated rape by bill of information rather than by grand jury indictment. State Constitution mandates that prosecution of an individual held to answer for crime of aggravated rape, punishable by life imprisonment, SHALL be initiated and instituted by grand jury indictment. LSA-Const. Art. 1, § 15; LSA-R.S. 14:42; LSA-C.Cr.P. arts. 382, 920 (1)(2). This is a jurisdictional issue and can be raised at any time. United States v. Rosnow, 9 F.3d 728 (2/28/94); LSA-C.Cr.P. arts. 535, 535 comment, and is reversible as matter of law. LSA-C.Cr.P. Art. 775(3). In any event, relator, vies that although his sentence is within the statutory limits, it is illegal, since there was no grand jury indictment upon which it should rest and therefore, it is invalid. La.C.Cr.P. art. 872. Relator's charges never come before a grand jury to determine form of grand jury indictment, C.Cr.P. art. 462, to consider the nature of it contents, C.Cr.P. art. 464; to consider the evidence; C.Cr.P. arts. 442, 443, 444. An indictment is jurisdictional. There was never a Grand Jury proceeding in this case. As a matter of law, relator had a right to have fellow citizens acting independently of either prosecuting attorney or judge, weigh the evidence to determine if he should be taken to trial. Louisiana Legislative law prohibits

State prosecutors and judges from instituting prosecution for offenses punishable by Death of Life Imprisonment.

Defendant sought review of that conviction on direct appeal assigning several errors. The Louisiana Supreme Court, State v. Williams, 427 So.2d 873, La. 1983), denied relief. Petitioner then filed his Application for post conviction relief into the Twenty-Second Judicial District Court, alleging several assignment of errors. The petitioner's writ was denied. He appealed to the Louisiana Supreme Court and was subsequently denied there as well. Petitioner was recently denied in the Louisiana State Supreme Court on September 21, 2007. It is from that erroneous denial that petitioner now seeks relief in this Honorable Court.

## APPLICABLE STANDARD OF REVIEW

With the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, [Pub. L. No. 104-132, 110 Stat. 1214 at 1218-19.1, codified in scattered sections 2254, subsection (d), Congress dramatically circumscribed the Great Writ of Habeas Corpus and bound the ability of the federal courts to grant habeas relief to state prisoners. Prior to this enactment, Federal courts  when reviewing applications for habeas relief determined the validity of the state court's conviction under a de novo standard of review.  However, federal courts are now limited to such determination under standards created by AEDPA, in that:

28 U.S.C. 2254(d) directs that an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceeding unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding.

A decision that is "contrary" to law essentially involves an "unreasonable" application of law; therefore, both clauses of (d)(1) must be read in conjunction to each other, giving effect to both, *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 15, 117 L.Ed.2d 181 (1992).

Subsection (d)(2), considered in conjunction with the two clauses of subsection (d)(1), *United Sav. Assn. Of Texas v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988), represents the applicable standard of review restricted to questions of fact.

## STATEMENT OF THE CASE

Relator was charged on January 7, 1982, by Bill of Information with Aggravated Rape, a violation of La.R.S. 14:42 and Armed Robbery, a violation of La.R.S. 14:64. On March 15, 1982 Assistant District Attorney severed the charge of Armed Robbery before trial and continued with charge of Aggravated rape under Bill of Information. On March 15-16, 1982 a jury convicted the relator *only* of Aggravated rape and the trial court imposed the mandatory sentence of life imprisonment without benefits. He appealed the conviction to the First Circuit Court of Appeal, which transferred it to the Louisiana Supreme Court in *State v. Williams*, 427 So.2d 873 (La. 3/2/83). He has filed a prior Post Conviction Application. However, the current habeas application is in compliance with La.C.Cr.P. Art. 930.8 A(1) and is based on newly discovered evidence which was recently received from the Clerk of Court's Office in a letter dated July 25, 2005, which states the following:

4

> "I have searched through your record and what was filed on January 7, 1982 was a Bill of Information not a Bill of Indictment. Therefore, there will be no grand jury report in your case."

(See attached Exhibit -A-)

The United States Supreme Court has held that:

> "Petitioner was entitled to present evidence in support of Brady claim that had not been presented to state post conviction Court."

*Banks v. Dretke*, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (12/24/04).

Relator also filed an application that is in compliance with La.C.Cr.P. art. 926.1 et seq., relative to a DNA.

Relator then filed an Objection/Traverse in response to the state's answer in opposition. The 22nd Judicial District Court granted petitioner an evidentiary hearing on April 11, 2006 but denied requested relief. Petitioner requested a verbatim transcript of the evidentiary hearing and the trial court granted request and ordered the court reporter to transcribe a copy for the petitioner.

Petitioner did not receive any notification of the trial court's denial of his post conviction relief application until only recently. See notification from Clerk of Court.

## WHY TRIAL COURT'S DENIAL IS ERRONEOUS

A review of the documents and exhibits submitted with relator's PCR and the objection/traverse will demonstrate the relator has recently been provided with a document from the Office of the Clerk of Court, which substantiate his claim that he was not prosecuted as required by law for the crime of Aggravated rape. (See attached Exhibit -A).

Relator further contends that pursuant to La. Const. Art. 1 § 15 states in pertinent part the following:

> "Prosecution of a felony shall be initiated by indictment or information, but no person shall be hed to answer for a capital crime

5

or a crime punishable by life imprisonment except by indictment by
a grand jury. . ."

The Louisiana criminal code specifically sets out the statutory requirements for instituting

criminal prosecution in the State of Louisiana in La.C.Cr.P. art. 383(A) in pertinent part which

states the following:

A prosecution for an offense punishable by death, or for an offense
punishable by life imprisonment, shall be instituted by indictment
by a grand jury.

The United States Constitution also states the following in 28 U.S.C.A. Amend. V in

pertinent part:

"No person shall be held to answer for a capital, or otherwise
infamous crime, unless on a presentment or indictment of a Grand
Jury."

Relator has also received documentation from the Franklinton Police Department and the

District Attorney's Office which states that a rape kit was submitted to the State Police Crime Lab

in Baton Rouge, Louisiana.  See attached exhibit - B.

Though relator received the documents from the police department more than (1) year ago,

the Louisiana Supreme Court has recently decided in a per curiam opinion that; "The fact that

relator discovered new facts before the prescriptive period had run but did not file until after it had

run does not make the application untimely.  Instead, if delays caused by matters outside the

control of the state have prejudiced the state, it may invoke La.C.Cr.P. art. 930.8(B) and demand

a hearing on that issue." *State v. Lanieu*, 855 So.2d 512, 2003-2640 (La. 10/1/04).  Citing *Carlin

v. Cain*, 97-2390 (La. 3/13/98), 706 So.2d 968, relative to procedural requirement of La.C.Cr.P.

Arts. 930.4 and 930.8, which are relevant in this instant case.  Therefore, the issues in this post

conviction should be reviewed on the merits.  Further, *Carlin*, supra, notes that "the exception to

the three-year time bar provided by La.C.Cr.P. art. 930.8(A)(1) for claims based on facts 'not

known to the petitioner or his attorney' imposes no express due diligence requirement on the inmate and remains subject to the laches provision of La.C.Cr.P. art. 930.8(B)."

Further, pursuant to La.C.Cr.P. art. 926.1, the petitioner has until (2007) to seek DNA PCR relief seeking DNA testing.

To overcome procedural default bar to claim, a habeas petitioner must demonstrate cause for the default and prejudice; ineffective assistance of counsel may constitute cause. *Andrews v. Collins*, 24 F.3d 612. To establish actual prejudice to overcome a state procedural bar, a habeas petitioner must show that, but for the error of counsel, he might not have been convicted.

Relator has shown cause and prejudice, due to his counsel's failure to investigate and learn of the rape kit and the lack of a Grand Jury indictment. Thus, due to counsel's ineffective assistance, relator has shown it was reasonably probable that the results of the proceedings would have been different had suppressed evidence been disclosed. *State v. Kenner*, 900 So.2d 948.

Relator further admits that his claims for relief articulated in his original PCR and in the interest of justice, relator feels that his claims for relief should be heard on the merits by this Honorable Court. Louisiana law governing post conviction relief, tempers the rule of finality by providing a form in which prisoners in state custody may attack their final convictions on constitutional grounds. When required to so in the interest of justice, the district court may consider a claim for PCR although it was fully litigated in an appeal from the proceedings to the judgment of conviction and sentence. The official revision comment to this article observes that "[t]he trial court has the discretion to make allowances for the unique case in which justice requires that the same ground be relitigated." *State v. Cage*, 637 So.2d 89, 87-2778 (La. 2/4/1994).

Relator present his claims and asks, why he should not be given the benefit of this Honorable Court's authority on reviewing his ineffective assistance of counsel claim especially

considering the totality of the circumstances and the fact that the relator is not a lawyer, nor is he trained as a lawyer and should not be held to the stringent standards as a lawyer.

Denial of Motion to Quash Bill of Information

Bill read in open court Hon. Judge James R. Strain, Jr., Hon. Judge Thomas W. Tanner, Hon. Judge Hillary J. Crain, whom relator was originally tried, convicted and sentenced under an Hon. Judge Raymond S. Childress who relator sought relief of judgment in instant case. Neither judge upheld his duties to the court (Section II) to give the issues in controversy deliberate, impartial, and studied analysis and consideration, nor did they abide by (Section II) district court standards, Equality, Fairness, and Integrity, Standard 3.1. Fair and reliable Judicial Process, Standards 3.3. Court Decisions and Actions.

On February 25, 1982, Motion to Quash was filed in open court by the defendant's counsel Mr. Reggie Simmons. Court denied Motion to Quash. Mr. Simmons objected to the Court's denial of Motion to quash bill of information charging R.S. 14:64 armed robbery and R.S. 14:42 aggravated rape which could only be legally instituted by grand jury indictment.

Art. 296, Scope of preliminary examination before and after indictment: If the defendant has not been indicted by a grand jury for the offense charged, the court shall, at the preliminary examination, order his release from custody or bail if, from the evidence adduced, it appears that there is not probable cause to charge him with the offense or with a lesser included offense. If the defendant is ordered held upon a finding of probable cause, the court shall fix his bail if he is entitled to bail. In Court's denial of motion to quash at preliminary examination resulted in Relator's due process being denied him. Relator contends he had right to quash the bill of information on legal and relevant laws and Const. of United States and Louisiana. Title XV, Art. 532(8). The Court has no jurisdiction of the offense charged: Art. 534(2). The offense is not one

8

for which prosecution can be instituted by a bill of information. Art. 535(A)(5)(6). Te information charges an offense for which prosecution can be instituted only by a grand jury indictment. Art. 537; Trial of issues arising on Motion to Quash. All issues, whether of law or fact, that arise on a motion to quash shall be tried by the court without a jury. By denying Relator a hearing under Title XV court denied Due Process of fact finding to determine if the State had right to prosecute defendant.

Hon. Judge Thomas W. Tanner erred in denying Motion to quash bill of information, therein, constituting a reversible error because his denial inflict great harm and prejudice against Relator, in that from the very start Relator was denied his right as a citizen of the United States and of Louisiana. (Extract of Minute page 1).

## ERROR 3

Court erred when it allowed bill of information to be read in open court as a menas to initiate prosecution against defendant of R.S. 14:42 Aggravated rape which could only be instituted legally by a grand jury indictment. (Tr.Trans.P. 43). Court knew that trial couldn't proceed without proper jurisdiction through grand jury indictment. Therefore, court did not adhere to (Judges Duties to the Court; District Court Standards). Thereby violating Relator's constitutional right to a fair and impartial trial and judicial process of law. Title XXVI, Art. 761. A jury trial commences when the first prospective juror is called for examination. Art. 765(2). The reading of the indictment. Title X, Art. 382; Method of instituting criminal prosecutions. (A). A prosecution for an offense punishable by death, or for an offense punishable by life imprisonment, shall be instituted by indictment by a grand jury. Art. 872. Basis for valid sentence: A valid sentence must rest upon a valid and sufficient: (1) Statute; (2) Indictment; and (3) Verdict, judgment, or plea of guilty. See Art. 882(A)(B).

Bill of Information or indictment must be clearly and concisely stated and must contain all the essential elements of crime intended to be charged in sufficient particularity to enable defendant to prepare for trial, to allow court to determine propriety of the evidence which is submitted upon the trial and to impose the correct punishment on verdict of guilty, and to afford protection from subsequent prosecution for the same offense.  LSA-Const. Art. 1 § 9, 10.  LSA-R.S. 14:42 and 14:64; LSA-C.Cr.P. art. 465, 473.

Aggravated rape R.S. 14:42 section (1) states, "Whoever commit the crime or item of aggravated rape shall be punished by life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.  (La. Const. 1974) art. 1, section 2: No person shall be deprived of life, liberty, or property, except by due process of law; Section 3: No person shall be denied equal protection of the law. § 3.  Right to Individual Dignity: Relator's rights were not preserved and enforced when prosecution was allowed without Due Process of Law of an indictment in proceedings and in presenting indictment in open court.  Therefore making Slavery and involuntary servitude prohibited and illegal since there is no indictment there can be no crime thereby where there is no crime there can be no punishment.  Section 16.  Every person charged with a crime of presumed innocent until proven guilty and is entitled to a speedy, public and (impartial trial) in the parish where the offense or an element of the offense occurred, unless venue is charged in accordance with law.  Relator contends there could be no fair and impartial trial when court allowed and State prosecuted Relator for R.S. 14:42 aggravated rape initiated by a bill of information rather than being instituted by a grand jury which law prescribed.  (§19) Right to Judicial Review: Section 19.  No person shall be subjected to imprisonment of forfeiture of rights . . . without the right to judicial review based upon a complete record of all evidence upon which the judgment is based.

Relator has not had a Judicial review of all the records for which his conviction stands. The facts are that favorable and impeaching evidence was withheld by prosecutor. (§20) Right to Humane Treatment: Section 20. No law shall subject any person to . . . unusual punishment: Though Relator's conviction and sentence appears in all respects legal by law. The facts are inescapable that R.S. 14:42 can be instituted only by a grand jury indictment and not by bill of information. Therefore, making the conviction and sentence illegal by law and conviction and sentence unusual punishment. Const. U.S. 1974, Article 1. Declaration of Rights.

§ 13. Rights of the Accused.

Section 13. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. Section §2, §3, §14, §15, §19, §20, §22, Art. III, Section 2, Art. IV, Section 1; Section 2 Art. VI, Art. VII; Amendment V [1791], Amendment VI [1791], Art. VII, Amendment VIII [1791], Amendment XIII [1865], Amendment XIV [1868].

Relator contends that all his rights as a citizen of the United States and of the State of Louisian have been denied through Due Process of Law.

## ERROR 4

Court erred in not instructing the jury according to the law of aggravated rape, and failed to clarify Assist. Prosecutor's instruction to jury that ultimately led to a guilty verdict in the instant case.

Assist. Prosecutor Rusty Knight stated in pertinent part, the case we are trying today is a case of Aggravated Rape. I want to read to you the definition of Aggravated rape as found in our Louisiana Criminal Code and ask you a question or two about it as a group in whole. Aggravated rape is defined as a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances. (T.Tr.11). (1) Where the victim resisted the act to the utmost but whose resistance was overcome by force, or (2) Where the victim is prevented from resisting the act by

11

threats of great and immediate bodily harm accompanied by apparent power of execution, or (3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.  Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. . .  Now do any of you have any personal problems to applying this definition of rape as I've read it to you? (T.Tr. 12).  Q.  Does the fact that there is, that the crime carries a life imprisonment sentence at hard labor without benefit of parole, probation or suspension of sentence, would that prevent any of you from rendering a fair and impartial judgment in this case at the end of the evidence?  (T.Tr. 13).  What Mr. Knight failed to inform the jury of is that he nor the State could institute a charge of Aggravated rape against Relator in instant case legally by bill of information.  LSA-C.Cr.P. 382, subd. A, 533(5), subd. C, C.Cr.P. 383.  LSA-Const. Art. 1 §§ 9, 10; LSA-R.S. 14:42; 14:64; LSA-C.Cr.P. art. 465, 473; C.Cr.P. art. 462, art. 464, art. 442-3, 4.

BY MR. KNIGHT: State would at this time move to call case number 37,096, State of Louisiana versus David Lee Williams as to Count One only in that bill of information.  We move to sever under the provisions of Code of Criminal Procedure Article 495.1 as to the second count.

District Attorneys' are empowered to amend indictment to charge lesser offenses.  The State may abandon the charge of a greater crime and proceed with prosecution for the lesser crime, and no formal indictment is necessary for the purpose. *State v. Hansbro*, 796 So.2d 185, 35,027.  The prosecutor had the authority to sever the charges in the instant case, however, only for the lesser offense of aggravated rape being forcible rape since relator was charged by way of bill of information and no laws or Constitutions would have been violated.  However, prosecutor severed the charge of armed robbery from aggravated rape under a bill of information and proceed to prosecute the greater charge illegally.

12

Relator asserts the prosecutor's and court's misstatement and application of law prejudiced him and the judge's instruction did not alleviate the problem by providing a clear and unambiguous statement of the law and the jury's responsibilities. Jury had right to know that the State was required by law and constitution to indict accused by grand jury before it could prosecute a crime of aggravated rape, a crime for which the penalty of life imprisonment that there may be a fair and just verdict.

SECTION 2.

Court erred when it failed to instruct the jury on the limited purposes for which other crime evidence may be used as required by *State v. Prieur*, 277 So.2d 126 (La. 1973). The requirement of Prieur apply when the other crime evidence is admitted under the exception outlined in LSA-R.S. 15:455 and 15:466. *Prieur*, supra. (P.3) of *State v. Donahue*, 408 So. 1262.

The instruction which this Court held to have been erroneous in the case of *State v. Gibbs*, 355 So.2d 1299 (La. 1978), because it did not advise the jury that it was entitled to acquit "because it was not convinced beyond a reasonable doubt because of lack of evidence as to an essential element of the crime."

State introduced as evidence $286.00 that was supposedly stolen from the victim. Relator contends that the money had no probative value in the trial other than to prejudice the jury against the accused. (T.Tr. 56, 57). It must be noted that Mrs. Thompson stated that that wasn't all the money taken from her and that she only identified the money after it was placed in her possession and not before. See police affidavit of Mrs. Thompson's statement. (Exhibit E4-A thru E4-D).

Victim/Witness testimony was different from her police statement. LSA-C.E. art. 801, subd. D. To pass the balancing test of La.C.E. art. 404 which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues or misleading the jury.  Relator counsel was prohibited from questioning victim fully about money because Prosecutor withheld relevant information in the police affidavit from defense.

Relator contends that the money was not relevant to the Prosecutor's case to prove aggravated rape, but was used to prejudice, confuse the issue and to mislead the jury and was a waste of time. (C.E. art. 403).  "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  (C.E. art. 401).

Relator contends he was never tried, convicted nor sentenced for robbing or stealing anything from Mrs. Thompson, therefore such evidence was irrelevant to the rape charge and should have been excluded as evidence to prove a rape.

The admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant.  As to the prejudicial effect of evidence of other crimes, Wigmore says:

The natural and inevitable tendency of the tribunal -- whether judge or jury -- is to give excessive weight to the various record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.  Evidence of crimes related to the offense with which a defendant is charged is inadmissible except under special exceptions.  For an excellent discussion of the problem, see McCormick on Evidence, s 190 (Cleary Ed. 1972).  Aside from related offenses admissible as part of the res gestae, and convictions admissible for impeachment purposes, Louisiana statutes provide for only three exceptions -- acts relevant to show intent, knowledge or system. *State v. Prieur*, 277 So.2d 126, 128, 129.

SECTION 3.

Court erred in its instruction on circumstantial evidence:

> Evidence is either direct or circumstantial.  Direct evidence is
> evidence which if believed proved a fact.  Circumstantial, or indirect
> evidence, is evidence which if believed proved a fact, and from that
> fact you may logically and reasonably conclude that another fact
> exists.  You cannot find a defendant guilty solely on circumstantial
> evidence unless the facts proved by the evidence exclude every
> reasonable hypothesis of innocence.  (T.Tr. 177).

Relator contends that this erroneous charge prejudice the accused that it confused jury in

thinking that it as a whole could look beyond the law in the State must prove its case against the

accused beyond every reasonable doubt to come to a guilty verdict.  Court erred when it did not

instruct the jury that it had obligation to acquit if there was a lack of sufficient evidence to convict

the accused of aggravated rape.

Court failed to instruct jury as to law applicable to R.S. 15:438, Circumstantial evidence.

The rule as to circumstantial evidence is: assuming every fact to be proved that evidence tends to

prove, in order to convict, it must exclude every reasonable hypothesis of innocence.

Relator contend the jury instruction on reasonable doubt undermined the level of assurance

in the outcome of guilt phase of the trial required by the due process clause, in violation of *Cage*

*v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).  The question for the Court

resolution, therefore, is whether it appears beyond a reasonable doubt that the erroneous instruction

did not contribute to the jury's finding of guilt.  See *State v. Cage*, 538 So.2d 1125 (a.), cert.denied,

502 U.S. 874, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991).  Compared to *Cage*, Relator asserts, the

evidence of guilt in this case is not overwhelming.

Relator asserts that the prosecutor and judge misstated the applicable law and the judge's

instruction did not alleviate the problem by providing a clear and unambiguous statement of the

law and the jury's responsibilities.  See *People v. McDonald*, 690 P.2d 709 (Cal. 1984)(overruled on other grounds. 4 P.3d 265); *State v. Hubbard*, 48 P.3d 953 (Utah, 2002); *State v. Chapple*, 660 P.2d 1208 (Ariz. 1983); *United States v. Downing*, 753 F.2d 1224 (3rd Cir. 1985); *United States v. Fosher*, 590 F.2d 381 (1st Cir. 1979).

Relator contends that court erred in not instructing the jury as to the reliability of eyewitness identification.

Relator assert that in-court identification was unreliable and highly suggestive and prejudice in its mislead jurors to believe that identification by victim/witness was conclusive and led to the guilty verdict.

The court must note these facts:

"1.  Identification of the defendant is a critical issue in the state's case.

2.  The case turns substantially or entirely upon eyewitness testimony.

3.  There is little or no collateral evidence to independently corroborate the defendant's connection with the crime.

4.  The defendant advances an alibi and maintains that he was not present when the offense was committed."

5.  There was no lineup identification or photo identification after the commission of the crime, although victim said she knew relator to be the perpetrator of crime they were never socially or otherwise connected, and being the only Black man at counsel table was overt that victim would point him out as perpetrator of crime against her.

6.  Witness out of court identification was inadequate, though victim spent at least 30 to 40 minutes with her attacker and she testified she clearly saw her assailant.  However, her testimony clearly shows she did not.  (T.Tr. 55).  It is noteworthy that the victim never describes the clothes,

height, complexion, age, and voice of perpetrator which is very essential to prosecutor case to convict.   It is noteworthy that the victim not once said she identified relator to police officers as her attacker.  (T.Tr. 49-68).  Moreover, not once did any police officer, Mr. Harold Varnado, Mr. Denver Miller, Mr. Wade Bateman, Mr. David McNish, say Mrs. Thompson identified David Lee Williams as the perpetrator of the crime.  (T.Tr. 80 thru 100).  It is also noteworthy, that there no fingerprints offered from crime scene of the perpetrator to collaborate Mrs. Thompson testimony that Relator was in fact her attacker. *State v. Wiggins*, 556 So.2d 622 (La.App. 2nd Cir. 1990). The trial judge gave the following instruction:

> The State must prove beyond a reasonable doubt that the crime charged in this case was actually committed.  But more than that, the State must also prove beyond a reasonable doubt that the defendant, Williams Wiggins, committed the crime.   Therefore, the identification of William Wiggins as the perpetrator is a necessary part of the State's case.  As with other witnesses, you must first decide whether [the victim] is telling you the truth as she understands it.  But you must do more than that, you must also decide how accurate the identification was, wehther the witness saw what she thought she saw.  You should consider whether the witness had a good opportunity to see the person; whether the witness seemed as though she was paying careful attention to what was going on; whether the description given by the witness was close to the way the defendant actually looked; how much time had passed between the crime and the first identification by the witness; whether at the time of the first identification by the witness was likely to make a mistake; that is, the witness was not asked to pick out the person she saw from a group of people.  You should also consider whether the witness seemed certain at the time of the first identification and again when she testified here in court.

If you are not convinced beyond a reasonable doubt that it was the defendant who committed the crime, you must find him not guilty.  556 So.2d at 626.  See also *State v. Williams*, 815 So.2d 378 (La.App. 1st Cir. 2002); *State v. Hills*, 129 So.2d 12 (La. 1960).  The trial court refused to give an instruction on eyewitness identification.  Supreme Court found error -- such a charge should have been included as misidentification was the sole defense.  In *State v. Richey*,

249 So.2d 143 (La. 1971), the trial court declined to give a special instruction and was upheld without elaboration. There was corroboration. There was corroboration in the case to the identification. See also *Neil v. Biggers*, 93 S.Ct. at 382.

Factors affecting the witness' opportunity to observe the offender at the time of the offense include.

> (1) The length of time available for observation;
> (2) The distance between the witness and the offense;
> (3) Whether the witness' view of the offender was obstructed in any way;
> (4) The light or lack of light at the time;
> (5) The witness' state of mind at the time of the observation, including whether the witness was experiencing extreme fear during the incident; and
> (6) Any other circumstances affecting the witness' opportunity to observe the person committing the crime.

Factors affecting the reliability of any identification made after the offense include:

> (1) The length of time between the occurrence of the crime and the identification;
> (2) The circumstances surrounding the identification;
> (3) Whether the offender was a stranger to the witness before the incident;
> (4) The witness' certainty or lack of certainty about the identification;
> (5) Whether or not the witness has previously expressed an inability to identify the attacker;
> (6) The witness' state of mind at the time of the identification; and
> (7) Any other circumstances bearing on the reliability of the identification.

You may also consider any occasion on which the witness gave a description of the offender which conflicted with the witness' description or identification at trial.

Relator contends that such jury instruction should been made by judge automatically without having to ask; considering that State's case was hinged on the testimony of the victim.

18

Trial judge is not required to give precise instruction submitted by litigants; he need only given instruction that properly reflect applicable law and adequately convey issue to jury.

Appellate court may not set aside finding of fact by judge or jury in absence of manifest error or unless it is clearly wrong.

Adequate jury instruction are those that fairly and reasonably point issues and provides correct principles of law for jury to apply. ***Barbara A. Smith v. American Indemnity Insurance Company, et al.***, 598 So.2d 486.

Prior to rendering a verdict of guilt, the trial judge instructed the jury on the evidence that is needed to prove aggravated rape. However, the trial court did not instruct the jury as to the law applicable to this case. Therefore, relator was denied effective assistance of counsel when defense counsel failed to object to the trial court's instruction to the jury which applied the wrong law and statute to the instant matter, and therefore, resulted in his conviction.

CONTENTION:

Petitioner/Relator contend that he was denied effective assistance of counsel when counsel failed to object to the trial court's instruction to the jury which fail to mention essential elements of the crime.

PRINCIPLE OF LAWS:

In order for the defendant to properly preserve his objection to the trial court's general charge to the jury, he must comply with the contemporaneous objection rule. An objection to the general jury charge is timely if made immediately after the jury is retired. ***State v. Mack***, 403 So.2d 8 (1981); ***State v. Hardman***, 467 So.2d 1163, 1171 (1985). In the instant case, defense counsel did not object to the trial court's instruction to the jury which fail to mention essential elements of the crime.

19

ARGUMENT:

To establish the claim of ineffective assistance of counsel a defendant must demonstrate that his defense attorney fail to meet the level of competency normally demanded of attorneys in criminal cases. *State v. Fickes*, 497 So.2d 392 (1986); *State ex rel., Graffagnino v. King*, 436 So.2d 559 (1983). The right of effective assistance of counsel does not require errorless counsel or counsel which may be judged ineffective only on hindsight. Upon reviewing a claim of ineffective assistance, a court should inquire whether counsel violated some duty to the client and if so, determine whether the defendant was prejudiced by the violation. *State v. Hartman*, 530 So.2d 615 (1988). Here, counsel failed to object to the trial court's failure to instruct the jury on essential elements of the crime. *State v. Sims*, 465 So.2d 769 (1985).

The trial court is required to instruct the jury as to the law applicable to the case and every theory of defense supported by the evidence regardless whether the judge accepts the theory as true. *State v. Garrison*, 400 So.2d 874 (1981). The trial judge instruction to the jury on the elements of aggravated rape read as follows in pertinent part:

> "Aggravated rape is an act of vaginal sexual intercourse with a person who is not the spouse of the defendant and without the person's lawful consent when the following is present: First, the person resisted the act of vaginal sexual intercourse to the utmost, but the person's resistance was overcome by force, or the person was prevented from resisting the act of vaginal sexual intercourse by threat of great and immediate bodily harm accompanied by apparent power of execution. Sexual intercourse is deemed to have taken place even though emission did not occur. Any vaginal sexual penetration, however slight, is sufficient. Thus, in order to convict the defendant of aggravated rape, you must find, first, that the defendant committed an act of vaginal sexual intercourse with Ethel Thompson without the lawful consent of Ethel Thompson, and Secondly, that Ethel Thompson was a person who was not the defendant's spouse. Thirdly, that Ethel Thompson resisted to the utmost, but her resistance was overcome by force or Ethel Thompson was prevented from resisting by threats of great and

20

> immediate bodily harm with apparent power of execution." (See:
> jury charge page 178-179 attached hereto).

The above instructions fail to mention the limited purposes for which other crime evidence may

be used as evidence and its probative value in other cases. The above instructions fail to mention

that the jury was obligated to acquit if there was a lack of sufficient evidence to convict the

accused of aggravated rape.

The above instruction fail to mention the law applicable to R.S. 15:438, Circumstantial

evidence. It fail to instruct the jury as to the unreliability of eyewitness identification. It also fail

to mention the element of armed with a dangerous weapon.

At the time of relator's arrest and conviction, the aggravated rape statute had been amended

under Act No. 707 to include the element of armed with a dangerous weapon. The amended statute

read:

> Aggravated rape is a rape committed where the anal or vaginal
> sexual intercourse is deemed to be without lawful consent of the
> victim because it is committed under any one of the following
> circumstances:
>
> > (1) Where the victim resists the act to the utmost but where
> > resistance is overcome by force; or
> >
> > (2) Where the victim is prevented from resisting the act by
> > threats of great and immediate bodily harm, accompanied by
> > apparent power of execution; or
> >
> > (3) Where the victim is prevented from resisting the act
> > because the offender is armed with a dangerous weapon; or
> >
> > (4) Where the victim is under the age of twelve years. Lack
> > of knowledge of the victim's age shall not be a defense.

Under the above statute, the State was required to prove three of the elements to support its

connection that petitioner committed the crime of aggravated rape.

21

Here the prejudice suffered by the erroneous jury charge and counsel's failure to object to said charge is clear. *State v. Butters*, 527 So.2d 1023 (1998). Relator's defense at trial consists of the presumption of innocence; and that, according to the evidence, there was no great force employed, that the victim was in no great and immediate harm where she felt she was going to die, there was no weapon involved in the crime. The trial judge's instruction clearly lower the standard of proof that is required by the aggravated rape statute and the Due Process Clause interpreted in, *In re Winship*, the court noted that "in State criminal trials due process clause of the 14th Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *U.S. v. Cage*, 111 S.Ct. at p.329. (Citing *Winship*, 443 U.S. 315). In this case, the erroneous instruction so prejudiced relator as to affect his substantial right; in that, it contributed to the jury's verdict of aggravated rather than forcible rape. *State v. Alexander*, 504 So.2d 591 (1987).

The judge's obligation under art. 807 is a corollary to his basic obligation to charge the jury as to the law applicable to the case pursuant to La.C.Cr.P. art. 802. Under art. 802, the trial judge is required to cover every phase of the case supported by the evidence whether or not accepted as true. *State v. Marse*, 365 So.2d 1319 (1979). However, when as here, defense counsel fail to comply wiht the contemporaneous objection rule concerning the trial court failure to include essential elements in its's instruction to the jury, then it cannot be said that counsel render effective assistance. *State v. Everett*, 530 So.2d 615. Therefore, relator's conviction and sentence must be reversed and vacated.

The verdict was contrary to the law and evidence. Art. 851(1), C.Cr.P. Relator contends that the verdict was contrary to the law and evidence in that he was tried, convicted, and sentenced to life imprisonment in violation of R.S. 14:42 aggravated rape instituted by bill of information.

Bill of Information was defective as well as illegal in failing to follow short form for charging Aggravated rape. It is also defective and illegal in that C.Cr.P. art. 382. Method of Instituting Criminal Prosecution: (A) states, "A prosecution for an offense punishable by death, or for an offense punishable by life imprisonment, (shall) be instituted by indictment by a grand jury."

Art. 383. Indictment: An indictment is a written accusation of crime made by a grand jury. It must be concurred in by not less than nine of the grand jurors, indorsed "a true bill", and the endorsement must be signed by the foreman. Indictment shall be returned into the district court in open court. La.C.Cr.P. art. 5; *State v. Pitts*, 39 La.Ann. 914, 3 So. 118. Regarding Grand Jury, see Art. 442-444(A)(1)(2)(3); (B); art. 461-2; art. 465-6; Art. 468, Art. 473.

SECTION 1. CONCLUSION

Mrs. Thompson stated to the questions of prosecutor that her attacker was making threats of death to her before and after the rape. However, when asked by the Prosecutor, "What did he threaten to do if you tried to resist him?" A. He just kept, he kept repeating, I don't know how many times he said he would kill me if I didn't hush and attempted to move the cover once to free my face so that I could breathe, and he told me that, and he told me if I didn't hush hollering he would kill me, cut my head off. Mrs. Thompson never answered that question directly, she never said the attacker threaten her if she resisted his attempt to have sexual intercourse with her, instead she said he threaten to harm her if she continued to holler. Prosecutor go on to use a deceptive question to deceive the court and jury that the victim was resisting her attacker. Q. Alright. Did you believe that he would do that if you didn't quit resisting? A. Well, certainly. He had come in here. (T.Tr. 55-6). See earlier statement by victim to the same question posed in a different way, the 6th question, and the 6th answer. (T.Tr. 51).

SECTION 1          **VERDICT CONTRARY TO LAW AND EVIDENCE**

The victim was asked, "Mrs. Thompson, is there any doubt in your mind who it was that came to your house on January 3rd in the early morning hours and raped you?" A. "No, no doubt," and she named the defendant David Lee Williams as her attacker. On cross examination by Mr. Ford: "You stated that David Lee Williams walked into the hallway and you saw him and from that point he was in contact with you, that is seeing, hearing or touching?" She replied, "I recognized him when he was, when he got in the door of the dining room. He had come through the kitchen and the dining room." (T.Tr. 60). This statement is in direct contradiction to her statement made to the court earlier (T.Tr. 55) where she stated to a question about where the rape took place, "Right on the bed, the same bed I was in when he walk in." If she encountered her attacker while she was still in bed, how can the victim see the man coming through kitchen and dining room? This just doesn't add up logically. Mrs. Thompson can't be in two places at the same time.

Still under cross examination by Mr. Ford, she contines, "And the wall light was on the wall of the dining room right by the door where he went out into the hallway. I recognized him as soon as he got there because I was trying to make up my mind what to do after hearing all this noise. I knew something had had happen, but I did not know what, and the minute I saw him when he entered this door by the light, I could see perfectly who it was, and other than that, I never would have known." In her affidavit to officers, Mrs. Thompson said something similar but quite different as to seeing her attacker, "I just don't know about how long I slept anyway I finally heard this noise, like somebody uh, that ran into something. And I jump up in the bed, sat up in the bed, and I said what on earth is happening. And just as I went to get off of the bed to see if I could see anybody or anything around he entered the door. (Exhibit E4-A). Against court must review (T.Tr. 55) where Mrs. Thompson states she was on the bed when her attacker converged upon her before

24

she was able to come to a door so how can she see him and recognize him by the light in the hallway? (T.Tr. 60). See Exhibit D2, the configuration drawing of the victim's home where point of observation of perpetrator and point of observations where victim observed perpetrator, and position of light, and her statement to police affidavit and T.Tr. 55 is proof that Mrs. Thompson perjured herself on the witness stand in to help prosecutor gain a guilty verdict. Some valuable documents in this case of relators' that must be considered by this Court is thoroughly and throughout its pages is Mrs. Thompson's initial police statement or her affidavit of the facts to offices about the events that transpired in the early morning attack on her, exhibit E4-A thru E4-D, here it even shows Mrs. Thompson may have through her conduct of conversation induced and facilitated the commission of the sexual assault against her. "He said when have you had any?" "Mrs. Thompson replied, "Oh, goodness, I said oh, 10 years," exhibit E4-A. It was said also in exhibit D2 by Mrs. Thompson that she had taken a bath before calling the police. One would reasonably have to think what effect this would have on the evidence and the State's case and to Mrs. Thompson as a truthful witness. Police drawing of the house and Mrs. Thompson statement out of court and in court thoroughly proves she never saw her attacker clearly enough to give a description to say that the man who did this to me; in fact, she was sitting on her bed about to get up when the attacker came in on her, in the room with the light to his back with no other lighting in the house.

Prosecutor purposely withheld exculpatory and impeaching documents from defense that his star witness, the victim of the crime wouldn't be made to appear to look like a liar before the jury. Thereby State prejudiced defense in not turning over documents it had asked for, through the Brady act. Court must inquire as to, what happened to victim's underwear, what happened to hair comb of perpetrator, with hair samples and fingerprints, what happened to flashlight that

perpetrator took from victim and threw on bed, what happened to fingerprint evidence period, perpetrator came through window, fell to floor.  There should have been fingerprints all over that section of the house and in the victim's bedroom.  However, none was presented by State to prove relator was perpetrator of crime or was in the victim's house.  This sort of evidence surely would have strengthen State's case against any perpetrator of any crime.  However, there being such a fundamental lack of such strong evidence surely weaken the State's case against any defendant to be prosecuted for the crime of aggravated rape.

Relator contends this was and is sufficient evidence to have convicted him of aggravated rape.  If there was a rape there was a total lack of evidenec of the aggravated nature of the rape. There is legitimate reason to question Mrs. Thompson identity of relator as the perpetrator of the crime against her because of the inconsistency in her police statement and her courtoom testimony are not harmoniously joined to make reasonable sense to any rational person.

## ERROR 6
## INSUFFICIENT EVIDENCE

Facts of case are Mrs. Thompson made two contradictory statements to police officers during her statement of the crime against her and throughout her testimony in the prosecution of relator.  In her statement to the Court, she stated, after hearing noise in her home, "So I was trying to make up my mind what could I or should I do, tip around in the house to see if I could see anything, and about that time he appeared, had come from where I heard this noise, through the kitchen, then the dining room, wall light on, and when he got to that light, I could see clearly who he was."  She stated her attacker rushed over and that he took a flashlight from her that she had managed to take hold of and threw it on the bed and pushed her over and threaten to kill her if she continued to holler, she did not see any weapon at any time.  (T.Tr. 49-64).  Identity of the defendant not properly identified.  No lineup.  It must be noted in her statement to officers Mrs.

Thompson replied when asked, "Did he strike you at any time?" Mrs. Thompson said, "No, he just took his hand and put over my mouth and whenever he would move his hand he would push that robe back down a little.  Nowhere during her testimony does Mrs. Thompson states that she was beaten, choked, dragged or abused in any other way than being threaten.  (Exhibit E4-C).

SECTION 1.  PROSECUTION FAILED TO PROVE THE VICTIM FEARED FOR LIFE

Mrs. Thompson is asked, "Did you feel that if you hollered or resisted at that point that he would hurt you?  A.  "I guess he would.  I suppose I would hollered again, I suppose. . ."  (T.Tr. 50, 51).  By using the word (I guess) Mrs. Thompson was using a conjectural statement there was no founded evidence in her mind to base any sufficient fear of being hurt by her attacker.  Then she uses the word, (I suppose) which is to make a hypothesis assumption which is to say she didn't know if her attacker would hurt nor was she in fear that he would.

SECTION 2.  DID NOT RESIST HER ATTACKER

From Mrs. Thompson latter statement shows there was very little or resistance of the attack on her part against her attacker.  Mrs. Thompson states that the whole time the perpetrator was in her bedroom she had a blanket, sheet, or robe over her face and that her attacker was all over her room looking for money and at the same point she told him where the money was.  Her statement during testimony clearly shows she was not trying to struggle or fight off her attacker, but only to keep his hand from over her mouth and nose.  (Trial T. 52).

Again, Mrs. Thompson says when her attacker left he went out right back through the dining room door where he came in where she had recognized him by the light.  (T.Tr. 53).  Mrs. Thompson was asked, "Did he hold you down during the course of the rape?"  She answered, "That's right."  However, what wasn't brought out is how her attacker held her down and to what degree of force he used to hold her down.  To illustrate a point using the, *State v. Trent*, 517 So.2d

1053 (La.App. 3 Cir. 1987) case.  There are similar differences in the case against Trent and Relators' and major differences.  In the Trent case, like Relators' both victims were up in age. Mrs. Iris Hidalgo being 70 years old, and Mrs. Ethel Thompson being 82 years old, the defendant Matthew Trent confessed to the crime, relator has always maintained his innocence.  Trent was identified by the victim by his voice and article of clothing, and complexion and general size. Relator was not identified by article of clothing nor his voice, his complexion, and identity of him is not reliable.  Mrs. Iris Hildago testified, "He ripped my bed clothes off of me.  I still had my robe on.  I continued to scream and call on God and was fighting with everything in me.  He was holding me down with both knees and he said, 'Lady, if you don't stop screaming I will smother you."  She submitted.  In the case of Mrs. Thompson testified she screamed and grabbed a flashlight there was no kicking, there was no wrestling with her attacker, there's no attempt to scratch him, bite him, or to get away from him.  In contrast to the Trent case, relator case is far from an aggravated rape case by any standards.  The next question put to Mrs. Thompson was, "Where did he rape in the house?"  She answered, "Right on the bed, the same bed I was in when he walked in."  This statement by Mrs. Thompson is in direct contradiction to her earlier statement to the court that she had gotten out of bed to investigate the noise in her home and had seen her attacker clearly as he rushed her.  However, in this statement when she was attacked, she was still on her bed, in her room, when her attacker came in her room.  Mrs. Thompson was next asked, "Did you resist him or fight him any way?"  She answered, "I couldn't do a thing.  He was holding me down, as I said before. . . ."  Still she doesn't say how she was held down or to what degree of force was used to hold her down.  Again one must reflect on State v. Trent.  Mrs. Thompson goes on to relate that she's a victim of arthritis and hardly has strength to get around, and that, "I can't do anything, I had no way of defending myself."  By all definition of aggravated rape, her own

testimony proves it was not.  (T.Tr. 55).  Mrs. Thompson claim she was debilitated from fighting off her attacker because of arthritis.  However, there was no medical testimony to say she was a victim of arthritis or to what degree.  The District Attorney would have the court view Mrs. Thompson as a twelve (12) year old child as in *State v. Jackson*, 437 So.2d 855 (La. 1983).  In this case, the victim is 12 years of age who is raped in the middle of the night in a bed with two younger children in the same bed.  One can foresee many reasons why this child didn't cry out or fight off her attacker.  He had threaten to kill her, and being inexperienced in most everything in life at her age, she didn't know what to do.  There was two younger children in the room and in the same bed, she feared for their safety too.  Furthermore, there were other family members in the house asleep, she feared for their lives too.  It is noted she did not say a thing until after her attacker was chased off.

As is noted in the *Jackson* case, Dr. Broussard testified to his physical examination of the victim, "revealed several lacerations of the victim's inferior hymen and her vaginal wall.  Dr. Broussard testified that the injuries were serious and resulted from forced entry.  *State v. Jackson*, 437 So.2d 855 (La. 1983).  The Supreme Court of Louisiana note in the *Jackson* case, "We first consider whether the rape occurred under the circumstances set forth in La.R.S. 14:42(2), i.e., "Where the victim is prevented from resisting the act by means of threats of great and immediate bodily harm, accompanied by apparent power of execution."  "The victim testified that she was frightened and would do anything the defendant asked."  The court found there was sufficient evidence to find defendant guilty beyond a reasonable doubt based on the facts that defendant to harm victim, that victim was frightened, and that the victim was but a 12 year old child and defendant being ten years older than she.  Under *State v. Parish*, 405 So.2d 1080 (La. 1981), the court noted that the legal definition of aggravated rape set forth in La.R.S. 14:42(2) was virtually

identical to forcible rape.  See *State v. Willie*, 422 So.2d 1128 (La. 1982).  The sole distinction between the two crimes is the "degree of force employed and the extent to which the victim resist." 405 So.2d at 1087.  A greater degree of force is necessary to justify the more serious punishment imposed for aggravated rape.  Unfortunately, there is no magic formula to determine which acts of coerced sexual intercourse warrant the greater punishment of aggravated rape rather than forcible rape.  Each case must be examined on its own facts.  We hold that evidence in this case is sufficient to justify the jury verdict of aggravated rape.  The magnitude of the force exerted upon the victim upon the victim is most clearly evidence by the injuries she sustained as a result of the attack.  Blood was found on her underclothes and her bed sheets.  Dr. Broussard testified that the defendant was visibly upset when he examined her.  She was still bleeding at the time of his examination and her vaginal vault was full of blood.  Dr. Broussard found several lacerations of the victim's inferior hymen and also of her inferior vaginal wall.  One laceration of the vaginal wall measured approximately two centimeters long and one and one-half centimeters deep.  The doctor termed the victim's injuries as serious and roughly similar to an episiotomy.  Although Dr. Broussard could have stitched the open wounds, he chose not to do so, for he thought it wise not to sedate her.  The doctor further stated that the victim was probably a virgin prior to the attack, and he was of the impression that she did not understand what had happened to her.

We also consider the fact that the victim was twelve years old at the time of the offense. The amount of force required by the twenty-two year old defendant to subdue the child was certainly less than the force necessary to overcome the resistance of a mature woman.  For these reasons, we conclude that viewing the evidence in the light most favorable to the prosecution, any rational jury could have found beyond a reasonable doubt that the victim was raped under the circumstance listed in subsection (2) of La.R.S. 14:42 with a sufficient degree of force to warrant

punishment in the greater degree as aggravated rape.  Now compared to relator's case, the story is quite different.  Dr. Wickboldt the examining physician stated it was at least or less 5:00 in the morning when he examined Mrs. Thompson, he did pertinent observation, not a complete physical exam.  It was oriented to the rape examination.  He stated, she was an elderly lady.  She was not in any particular distress as far as heart, lung condition were to be concerned.  In just attempting to make observation, she was clothed in a nightgown.  Under her nightgown, she did not have on any underwear.  I understood later there had already been handed over to the police.  There was no, (T.Tr. 105) injury to her skin or bruises, scratches, cuts, etc., in the vaginal area.  There was a laceration, that is a tear, around the opening of the vagina.  On it has bled, there was some blood on the surface, but there was no active bleeding at the time I examined her.  There was also no abrasion on the cervix, which is the, sort of opening or mouth to the womb, which is deep in the vagina.  Q.  Alright, sir, now the tear that you mentioned around the opening of the vagina, would this be consistent with some trauma to the vaginal area?  A.  "Yes."  Q.  And the abrasion on the cervix, when you say an abrasion, is this a laceration cut?  What is the nature of this?"  A.  An abrasion is a superficial tearing of the surface, much like a brush burn.  (T.Tr. 109).  Q.  I am going to give you a hypothet, if I could, assume the facts which you found on your physical examination.  That is a tear around the opening of the vagina where there had been bleeding but no active bleeding was present at the time of your examination.  White fluid in the vagina which was consistent with seminal fluid, and the abrasion of the cervix, are these symptoms consistent with forcible intercourse?  A.  "They are consistent with intercourse, which I would imagine would be painful.  (T.Tr. 110).  In comparing these two cases, Dr. Broussard stated the victim in *State v. Jackson*, 437 So.2d 855 (La. 1983) was 12 years of age, was frighten because of threats made toward her, she tried to estracate herself from the room and was forced back in.  Upon examination

31

Dr. Broussard testifies she had, "several lacerations of the victim's inferior hymen and vaginal wall." Doctor said, "the injuries were serious and resulted from forced entry." Court said, "The magnitude of the force exerted upon the victim is most clearly evidenced by the injuries she sustained as a result of the attack. Blood was found on her underclothes, and bed sheets, she was visibly upset, she was still bleeding, vagina vault was full of blood, several lacerations of inferior hymen and inferior vaginal wall, one laceration of the vaginal wall was two centimeters long and the other was one and one-half centimeters deep. Doctor termed the victim's injuries serious and roughly similar to an episiotomy. The doctor could stitch open wounds, but didn't want to sedate child in present condition. Court considered it took far less force to rape a 12 year old child than it would require force for a mature woman to submit to the act. Relator's case is not so complicated. Doctor stated Mrs. Thompson, "Was not in any particular distress as far as heart, lung conditions were to be concerned, her underwear were taken by the police, which never was presented as evidence at trial so it will never be known if they had blood in them or not. (T.Tr. 105). There were no injuries to her skin or bruises, scratches, cuts, etc., in the vaginal area. There was (a laceration), that is a tear, around the opening of the vagina. There was no bleeding though there was blood on the surface. There was (an abrasion on the cervix, which Dr. Wickboldt described as, "a superficial tearing of the surface, much like a brush burn, from "over-expansion." (T.Tr. 106). When asked if these injuries resulted from forcible intercourse, doctor answered, "They are consistent with intercourse . . ." Relator is convinced that under the standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), he would not have been found guilty of aggravated rape. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).

SECTION 3.

(1.)  Prosecutor failed to prove aggravated nature circumstances of R.S. 14:42, (1) Where the victim resists the act to the utmost, but her resistance is overcome by force.  Mrs. Thompson's own testimony in court and her initial police statement proves she did not resist the act of rape but through her conduct induced or facilitated its commission.

R.S. 14:42(2).  Where victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.  It is most important that Court pay close attention to determine if prosecutor proved section (2) of R.S. 14:42.  For instance, althought victim was threaten with great harm, however was it immediate bodily harm, accompanied by apparent power of execution.

Definition of immediate: without any time intervening; instant; of the present moment, not separated; next; nearest, direct.  Mrs. Thompson testimony show she was unsure her attacker would harm her when asked that question she said, "I guess; I supposed."  Then, too, her attacker was all over her room looking for money there being no immediate threat of her being hurt.

Definition for accompanied: go with; be associated with.

Definition for apparent: in plain view, capable of being clearly perceived; obvious.  The question then is, was the threat of death made to the victim of such magnitude at that point she felt she would die if his demands weren't met?  Mrs. Thompson answered the question herself, "Armand: did he strike you at any time?  Thompson: No, he just took his hand and put over my mouth. . ."  "He told me he would kill me . . . . I don't know if he meant it -- I didn't know." (Exhibit E4-C).  Under the standard provided by *Jackson v. Virginia*, did the State prove aggravated rape?  443 U.S. at 319, 99 S.Ct. at 2789.  Relator contends State did not prove beyond