STATE OF LOUISIANA

VS.

DAVID LEE WILLIAMS

NO. 82-CRC-37096

22ND JUDICIAL DISTRICT

PARISH OF WASHINGTON

## DISTRICT ATTORNEY'S PROCEDURAL OBJECTIONS
## TO PETITION FOR POST CONVICTION RELIEF

NOW INTO COURT, Through the undersigned Assistant District Attorney, comes: BURL CAIN, WARDEN, and objects to the petition for post conviction relief filed by the defendant herein on procedural grounds, as follows:

I.

The petition is time-barred pursuant to C. Cr. P. Article 930.8.

II.

The claim is a repetitive application under Article 930.4 of the C. Cr. P.

WHEREFORE, For the reasons set forth in the attached memorandum, respondent prays that the above procedural objections be sustained and that petitioner's application for post conviction relief be dismissed with prejudice.

Respectfully submitted:

DALE E. BRANCH
ASSISTANT DISTRICT ATTORNEY
905 PEARL STREET
FRANKLINTON, LA 70438
1/985/839-6711
1/985/839-7860 (Fax)
BAR ROLL NO. 3390

## MEMORANDUM IN SUPPORT OF
## PROCEDURAL OBJECTION

### STATEMENT OF THE CASE

On January 3, 1982, this defendant committed an aggravated rape of Mrs. Ethel Thompson, an elderly lady who lived in Washington Parish. There is no question about his guilt. Mrs. Thompson had known the defendant for many years and testified that he was the one who raped and robbed her that day. He was tried and found guilty on March 18, 1982. An appeal was filed to the Louisiana State Supreme Court and this Court affirmed the conviction and sentence on March 2, 1983, the date the judgment became final.

### LAW AND ARGUMENT

#### I.

This petition is time-barred pursuant to Code of Criminal Procedure Article 930.8.

In 1990, the Louisiana Legislature enacted C. Cr. P. Article 930.8 which limited the time allowed for filing applications for post conviction relief. The change was made effective October 1., 1990. for those defendants who were convicted before the act was passed, the Statute contained a provision which allowed a grace period of one year for them to file for post conviction relief.

This one year period expired on October 1, 1991.

In Lemmon v. Connick, 590 So.2d 574, the Supreme Court held that a post conviction procedure was in the nature of a civil proceeding.

This conviction became final in 1974 (C.Cr.P.Art.922). This petition for post conviction relief was filed on February 1, 2004 more than twenty years from the date the conviction was finalized.

In State Ex Rel. Glover v. State, (93-2330, 94-2101, 94-2197, 660 So.2n 1189 La. 1995), the Supreme Court held that:

1.  Article 930,8 which limits the filing period for most applications for post conviction relief to three years, and allowing petitioners whose applications would have been barred on effective date of

rule one year to file, did not violate Federal or State due process clauses, habeas corpus clauses, or ex post facto clauses, or the State constitutional clause guaranteeing right of access to courts.

2.  The statutory requirement that the trial judge inform the defendant of the limitations period for post conviction relief is supplicatory language and does not bestow an enforceable right upon an individual defendant.

3.  Even if the trial court reached the merits in an untimely filed application for post conviction relief, this did not preclude the court of appeal from invalidating applications on the basis of a time bar.

In effect, the Supreme Court has held that the time bar contained in Article 930.8 is absolute unless the defendant can substantially allege that one of the exceptions applies. None of the exceptions apply in this case.

The defendant claims that he has obtained newly discovered evidence from the District Attorney's file which would permit him to file this petition although it is some twenty years past the time limitations. His brief asserts that he obtained this information on July 7, 2002, more than two years before he filed this petition. The record will reflect that he filed a Petition for Post Conviction Relief on June 13, 2003. The same grounds were alleged and the court denied that petition. This petition is repetitive under Article 930.4 the Code of Criminal Procedure. This defendant has filed many petitions for post conviction relief. This writer has answered more than three. He continues to allege the same grounds and his claims continue to be denied. All of the claims raised in the present filing have been raised before. The state submits that this defendant has exhausted his remedies under post conviction relief and any further filings should be denied.

If this litigation is not criminal, it must be civil and the defendant is held to the same standard as any other civil litigant. If his claim has prescribed, it has prescribed. Like any other civil litigant, a post conviction relief petitioner must file his petition in the Clerk's office of the proper court prior to the prescription date. In this case, the defendant filed his application too late.

CONCLUSION

For the reasons cited above, the petition has no merit and is filed many years too late. The petition should be denied.

Respectfully submitted:

DALE E. BRANCH
ASSISTANT DISTRICT ATTORNEY
905 PEARL STREET
FRANKLINTON, LA 70438
1/985/839-6711
1/985/839-7860 (Fax)
BAR ROLL NO. 3390

STATE OF LOUISIANA

VS.

DAVID LEE WILLIAMS

NO. 82-CRC-37096

22ND JUDICIAL DISTRICT

PARISH OF WASHINGTON

CERTIFICATE

I CERTIFY THAT THE FOREGOING ANSWER WAS SERVED ON Mr. David Lee Williams, #098840, Camp J, Gar 2-L-6, Louisiana State Penitentiary, Angola, LA 70712 by placing a copy of same in the United States mail postage prepaid addressed to him.

November 14th, 2005

_____
Dald E. Branch

NOV 17 2005

Mr. David Lee Williams, #098840
Camp J, Gar 2 L 6
Louisiana State Penitentiary
Angola, LA 70712

70712+3600

WALTER P. REED
DISTRICT ATTORNEY
WASHINGTON - ST. TAMMANY PARISH
22ND JUDICIAL DISTRICT
905 PEARL STREET
FRANKLINTON, LA 70438

Received Nov. 16, 2005
Please Advise
more closely
filed
both

STATE OF LOUISIANA                    22ND JUDICIAL DISTRICT COURT

EX REL. DAVID LEE WILLIAMS

     (Petitioner),              PARISH OF WASHINGTON


-Versus-                              STATE OF LOUISIANA


                     DOCKET NO: 82-CR-37096

BURL CAIN, Warden

Louisiana State Penitentiary

     (Respondent),


## PETITIONER'S OBJECTION/TRAVERSE TO THE STATE'S RESPONSE TO PETITIONER'S POST-CONVICTION RELIEF, WRIT OF HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW, David L. Williams, Hereinafter, Relator, who submits the instant Relator's Response/Objection to the state's answer against the Relator's Post-Conviction Relief Application filed into the Twenty Second Judicial District Court.


### STATEMENT OF THE CASE

    Relator was charged on January 7, 1982 by Bill of Information with Aggravated Rape, a violation of *La. R.S. 14:42* and Armed Robbery, a violation of *La. R.S. 14:64*. On March 15-16, 1982, A jury convicted the Relator on both counts and the trial court imposed the mandatory sentence of life imprisonment for the violation of Aggravated Rape. Relator appealed the conviction to First Circuit Court of Appeals, which transferred his appeal to the Louisiana Supreme Court in *State v. Williams*, 427 So.2d 873 (La. 3/2/83). Relator has filed a prior Post-Conviction Application. However, the current application is in compliance with La. C.Cr.P. Art. 930.8A(1) and based on newly discovered evidence which was recently received from the Clerk of Court's Office in a letter dated July 25, 2005, which states the following:

"I have searched through your record and what
was filed on January 7, 1982 was a 'Bill of
Information' not a 'Bill of Indictment.'
Therefore, there will be no grand jury report
in your case."

(See attached Exhibit -A-)

The United States Supreme Court has held that:

"Petitioner was entitled to present evidence
in support of **Brady** Claim that had not been to
presented to state post-conviction Court. . ."

**Banks v. Dretke,** 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166

(12/24/04)

This application is also in compliance with La. C.Cr.P. art.

926.1 et seq. relative to a DNA.

Relator now files an Objection/Traverse in response to the

state's answer in opposition.

### RELATOR'S OBJECTION AND TRAVERSE TO THE STATE'S RESPONSE

#### 1.

Relator objects to the state's assessment of his claims

asserted in his Application for Post-Conviction Relief (PCR) and

files this traverse and objection thereto.

#### 2.

A review of the documents and exhibits submitted with

Relator's (PCR) application and with this Objection/traverse will

demonstrate that relator has recently been provided with a document

from the Office of the Clerk of Court, which substantiate his claim

that he was not prosecuted as required by law for the crime of

Aggravated rape.(See attached Exhibit -A-).

Relator further contends that pursuant to **La. Const. Art. 1 §**

15 states in pertinent part the following:

"Prosecution of a felony **shall** be initiated by
indictment or information, but no person shall
be held to answer for a capital crime or a
*crime punishable by life imprisonment* except
by indictment by a grand jury. . ."

The Louisiana Criminal Code specifically sets out the

statutory requirements for instituting criminal prosecution in the

2

state of Louisiana in *La.C.Cr.P. Art. 383(A)* in pertinent Part

which states the following:

> "A prosecution for an offense punishable by
> death, or for an offense *punishable by life*
> *imprisonment*, **SHALL** be instituted by
> indictment by a grand jury.

The United States Constitution also states the following in

28 **U.S.C.A. Amend. V** in pertinent part:

> "No person **shall** be held to answer for a
> capital, or otherwise infamous crime, unless
> on a *presentment or indictment of a Grand*
> *Jury*. . ."

**3.**

Relator has also received documentation from the Franklinton

Police Department and the District Attorney's Office which states

that a rape kit was submitted to the State Police Crime Lab. In

Baton Rouge, Louisiana. (See attached exhibit -B-).

Though Relator received the documents from the police

department more than (1) year ago the Louisiana Supreme Court has

recently decided in a Per Curiam Opinion that; "The fact that

Relator discovered the new facts before the prescriptive period had

run but did not file until after it had run does not make the

application untimely. Instead if delays caused by matters outside

the control of the state have prejudiced the state, it may invoke

*La. C.Cr.P Art. 930.8(B)* and demand a hearing on that issue." *State*

*v. Lanieu,* 855 So.2d 512, 2003-2640 (La. 10/1/04). Citing *Carlin v.*

*Cain,* 97-2390 (La. 3/13/98), 706 So.2d 968, relative to procedural

requirement of *La.C.Cr.P.* Arts. 930.4 and 930.8, which are relevant

in this instant case. Therefore, the issues in his post conviction

should be reviewed on the merits. Further, *Carlin, Supra* notes that

"the exception to the three-year time bar provided by *La. C.Cr.P*

*Art. 930.8(A)(1)* for claims based on facts 'not known to the

Petitioner or his attorney' imposes no express due diligence

requirement on the inmate and remains subject to the laches

3

provision of *La. C.Cr.P. Art. 930.8(B)*. . ."

Further, pursuant to *La. C.Cr.P. Art. 926.1*, the Petitioner has until (2007) to seek DNA PCR relief seeking DNA testing.

Relator request this Honorable Court to Order the Louisiana State Police Crime Lab in Baton Rouge, Louisiana and the Riverside Medical Center to produce the DNA samples that was collected in the rape kit, along with other evidence collected at the time of the crime; which will prove exclusively that Relator is innocent of the crime of aggravated rape.

### 4.

To overcome procedural default bar to clam, a habeas Petitioner must demonstrate cause for the default and prejudice; ineffective assistance of counsel may constitute cause. *Andrews v. Collins*, 21 F.3d 612. To establish actual prejudice to overcome a state procedural bar, a habeas Petitioner claiming ineffective assistance of counsel must show that, but for the error of counsel, he might not have been convicted. *U.S.C.A.*Amend.6.

Relator has shown cause and prejudice, due to his counsel's failure to investigate and learn of the rape kit and the lack of a Grand Jury indictment. Thus, due to counsel's ineffective assistance of counsel, Relator has shown that it was reasonably probable that the results of the proceedings would have been different had suppressed evidence been disclosed. *State v. Kenner*, 900 So.2d 948.

### 5.

Relator further submits that his claims for relief articulated in Relator's original application for postconviction and in the interest of justice, the Relator feels that his claims for relief should be heard on the merits by this Honorable Court.

Louisiana law governing post conviction relief, *La. C.Cr.P. art. 924 et seq.*, tempers the rule of finality by providing a form

in which prisoners in state custody may attack their final convictions on constitutional grounds. When required to do so "in the interest of justice," the district court may consider a claim for post-conviction relief although it was fully litigated in an appeal from the proceedings to the judgement of conviction and sentence...." The Official Revision Comment to this article observes that "[t]he trial court has the discretion to make allowances for the unique case in which justice requires that the same ground be relitigated." *State v. Cage, 637 So.2d 89, 87-2778 (La.2/4/1994)*

Relator present his claims and asks, in essence, why he should not be given the benefit of this Honorable Court's authority on reviewing his ineffective assistance of counsel claim especially considering the totality of the circumstances and the fact that the Relator is not a lawyer, nor is he trained as a lawyer and should not be held to the stringent standards as a lawyer. *Haines v. Kerner, supra.*

### CONCLUSION

WHEREFORE, Relator prays this honorable court will appoint counsel, grant a hearing, accept this objection and traversal to the state's answer and incorporate its arguments and authorities and principles into his application for post conviction relief and consider these issues exhausted in the trial court for further review by the appellate court, should this Honorable Court deny Relator relief.

Relator further prays that his conviction and sentence be set aside, and an instanter or order of Habeas Corpus be issued to release from custody.

Respectfully submitted,

David L. Williams #98040
Camp G House 2 Right 13
Louisiana State Penitentiary
Angola, Louisiana 70712

5

## CERTIFICATE OF SERVICE

I, a David L. Williams, hereby certify that a copy of the foregoing Objection To The Commissioner's Report has been served upon opposing counsel by Mailing a copy of same to the following address with First Class Postage prepaid on this _29th_ day of _November_, 2005.


Dale E. Branch, Asst. District Attorney
905 Pearl St.
Franklinton, Louisiana 70438


Clerk of court
Washington Parish
22nd Judicial District Court
P.O. Box 607
Franklinton, Louisiana 70438


Respectfully submitted;

David L. Williams #98840
Camp D Raven 2-R-13
Louisiana State Penitentiary
Angola, Louisiana 70712

6

# The Supreme Court of the State of Louisiana

STATE EX REL DAVID LEE WILLIAMS

VS.                                    NO. 87-KH- 1946

HILTON BUTLER, WARDEN
LOUISIANA STATE PENITENTIARY

- - - - - -

IN RE: Williams, David Lee: Applying for Supervisory and/or Remedial
Writs; Parish of Washington 22nd Judicial District Court Div."A"
Number 37-096

- - - - - -

March 18, 1988

Denied.

LFC

JAD

PFC

WFM

JLD

JCW

HTL

Supreme Court of Louisiana
March 18, 1988

Clerk of Court
For the Court

# The Supreme Court of the State of Louisiana

STATE EX REL. DAVID LEE WILLIAMS

VS.                                              NO.  2006-KH-2878

STATE OF LOUISIANA


— — — — —

IN RE:  Williams, David Lee; - Plaintiff; Applying for Supervisory
and/or Remedial Writs, Parish of Washington,  22nd Judicial District
Court Div. A, Nos. 82-CRC-37096;


— — — — —


September 21, 2007


Denied.  La.C.Cr.P. art. 930.8; State ex rel. Glover v. State,
93-2330 (La. 9/5/95), 660 So.2d 1189; cf. La.C.Cr.P. art.
930.4(D).

                    BJJ

                    PFC

                    CDK

                    CDT

                    JTK

                    JLW


Supreme Court of Louisiana
September 21, 2007

_Rai Daigle_
Deputy Clerk of Court
       For the Court

# The Supreme Court of the State of Louisiana

**STATE EX REL DAVID LEE WILLIAMS**

NO.  2000-KH-0344

VS.

**STATE OF LOUISIANA**

- - - - - -

IN RE:  Williams, David Lee; - Plaintiff; Applying for Supervisory and/or Remedial Writs, Parish of Washington,  22nd Judicial District Court Div. A, Nos. 82-CRC-37096;

- - - - - -

**September 15, 2000**

Denied.  La.C.Cr.P. art. 930.8; State ex rel. Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d 1189; La.C.Cr.P.  art. 930.3.

HTL

PFC

CDK

BJJ

JPV

CDT

JTK

~~⬥URGENT * URGENT * URGENT~~⬥

PETITIONER HAS BEEN INCARCERATED NOW FOR OVER 24 YEARS

AND HAS NEVER BEEN INDICTED FOR THE CAPITAL CRIME HE'S BEEN

CONVICTED OF.   THE CRIME'S PENALTY IS ONLY PUNISHABLE

BY A SENTENCE OF LIFE IMPRISONMENT.  THERE WAS NEVER

AN INDICTMENT FILED - ONLY A BILL OF INFORMATION.

⬥ URGENT * URGENT * URGENT ⬥

COURT RULES

APPENDIX C. SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET

No. _____

## TO BE COMPLETED BY COUNSEL
## or PRO SE LITIGANT FILING APPLICATION

TITLE

_David Lee Williams_
VS.

_N. Burl Cain, Warden_

Applicant: _David Lee Williams_
Have there been any other filings in this
Court in this matter?  [✓] Yes  [ ] No

Are you seeking a Stay Order? _No_
Priority Treatment? _No_
If so you MUST complete & attach a
Priority Form

### LEAD COUNSEL PRO SE LITIGANT INFORMATION

APPLICANT: _David Lee Williams_          RESPONDANT: _N. Burl Cain_
Name: _Some as above_                    Name: _Same as above_
Address: _La. State Penitentiary, Angola, La. 70712_   Address: _La. State Penitentiary, Angola, La. 70712_
Phone: _N/A_   Bar Roll No. _N/A_        Phone: _N/A_   Bar Roll No. _N/A_
Pleading being filed: [✓] In Proper Person,    [✓] In Forma Pauperis
Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the paties they
represent.

### TYPE OF PLEADING

[ ] Civil,  [✓] Criminal,  [ ] Bar,  [ ] Civil Juvenile,  [ ] Criminal Juvenile,  [ ] Other

### ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court: _N/A_         Docket No. _N/A_
Judge/Commissioner/Hearing Officer: _N/A_         Ruling Date: _N/A_

### DISTRICT COURT INFORMATION

Parish and Judicial District Court: _Washington/22nd Judicial District Court_ Docket No. _____
Judge and Section: _Raymond S. Childress, Div. A_      Date of Ruling/Judgement: _____

### APPELLATE COURT INFORMATION

Circuit: _N/A_           Filing Date: _N/A_   Docket No. _N/A_
Applicant in Appellate Court: _N/A_
Ruling Date: _N/A_   Panel of Judges: _N/A_          En Banc: [ ]

### REHEARING INFORMATION

Applicant: _N/A_         Date Filed: _N/A_   Action on Rehearing: _N/A_
Ruling Date: _N/A_   Panel of Judges: _N/A_          En Banc: [ ]

### PRESENT STATUS

[ ] Pre-Trial, Hearing/Trial Scheduled Date: _____ , [ ] Trial in Progress, [✓] Post Trial
Is there a stay now in effect? _No_  Has this pleading been filed simultaneously in any other court? _No_
If so, explain briefly _____
_N/A_

### VERIFICATION

I certify that the above information and all of the information contained in this application is true and correct to the
best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are
attached to this filing. I further certify that a copy of this application has been mailed or delivered to the appropriate
court of appeal (if required), to the respondent judge in the case of a remedial writ, and to all other counsel and
unrepresented parties.

_David L. Williams #98840_
SIGNATURE

IN THE
LOUISIANA SUPREME COURT
STATE OF LOUISIANA

DOCKET NO: _____

STATE OF LOUISIANA

VERSUS

DAVID LEE WILLIAMS

APPLICATION FOR WRIT OF CERTIORARI

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
ON REVIEW OF MOTION TO CORRECT AN ILLEGAL SENTENCE
FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
DOCKET NO: 82-CRC-37096
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RESPECTFULLY SUBMITTED BY: *(10-12-06)*

*David L. Williams #98840*
DAVID LEE WILLIAMS #098840
HICKORY HALL - 4
LA. STATE PRISON
ANGOLA, LA. 70712
(PRO SE)

## WRIT GRANT CONSIDERATION

Pursuant to Rule X of the Louisiana Supreme Court, the following listed reasons are respectfully included for the court's consideration in granting this writ of certiorari. Under Section 1(a)1, the Court of Appeal decision "conflicts with a decision of another court of appeal, this court, or the Supreme Court of the United States, on the same legal issue. The lowe court has also erroneously interpreted or applied the constitution of a law of this state or the United States and the decision will cause material injustice or significantly affect the public interest.

Further the court of appeals has so far departed from proper judicial proceedings or so abused its powers, or sanctioned such a departure or abuse by a lower court, as to call far an exercise of this court's supervisory authority.

DAVID LEE WILLIAMS

            Petitioner

VERSUS

N. BURL CAIN, WARDEN

Louisiana State Penitentiary

            Respondent

SUPREME COURT OF LOUISIANA

DOCKET NO: _____

_____

CLERK OF COURT

### APPLICATION FOR WRIT OF CERTIORARI AND MEMORANDUM OF LAW IN SUPPORT

MAY IT PLEASE THE COURT:

    NOW BEFORE THIS HONORABLE COURT, comes David L. Williams, petitioner herein, in the above styled caption, who, urges this Honorable Court to grant his Writ of Certiorari for the reasons that follow:

### JURISDICTION

    Supervisory jurisdiction of this Honorable Court is invoked pursuant to Article V, Section V of the Louisiana Constitution of 1974, as amended.

### STATEMENT OF THE CASE

    Relator was charged on January 7, 1982 by Bill of Information with Aggravated rape, a violation of La.R.S. 14:42 and Armed robbery, a violation of La.R.S. 14:64. On March 15-16, 1982, a jury convicted the relator on both counts and the trial court imposed the mandatory sentence of life imprisonment for the violation of Aggravated rape. He appealed the conviction to the First Circuit Court of Appeal, which transferred it to the Louisiana Supreme Court in State v. Williams, 427 So.2d 873 (La. 3/2/83). He has filed a prior Post Conviction Application. However, the current application is in compliance with La.C.Cr.P. Art. 930.8 A(1) and is based on newly discovered evidence which was recently received from the Clerk of Court's Office in a letter dated July 25, 2005, which states the following:

> "I have searched through your record and what was filed on January 7, 1982 was a Bill of Information not a Bill of Indictment. Therefore, there will be no grand jury report in your case."

(See attached Exhibit -A-)

    The United States Supreme Court has held that:

> "Petitioner was entitled to present evidence in support of Brady claim that had not been presented to state post-conviction Court."

Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (12/24/04).

This application is also in compliance with La.C.Cr.P. art. 926.1 et seq., relative to a DNA.

Relator then filed an Obection/Traverse in response to the state's answer in opposition. The 22nd Judicial District Court granted petitioner an evidentiary hearing on April 11, 2006 but denied requested relief. Petitioner requested a verbatim transcript of the evidentiary hearing and the trial court granted request and ordered the court reporter to transcribe a copy for the petitioner. Petitoner has yet to receive said-transcript. However, it is his request that once he obtains a copy that he be allowed to supplement current record with the hearing transcript and argument.

Petitioner did not receive any notification of the trial court's denial of his post conviction relief application until only recently. See notification from Clerk of Court. It is from the erroneous denial of the trial court in which the petitioner now seeks relief in this Honorable Court.

## WHY TRIAL COURT'S DENIAL IS ERRONEOUS

A review of the documents and exhibits submitted with relator's PCR and the objection/traverse will demonstrate the relator has recently been provided with a document from the Office of the Clerk of Court, which substantiate his claim that he was not prosecuted as required by law for the crime of Aggravated rape. (See attached Exhibit -A-).

Relator further contends that pursuant to La. Const. Art. 1 § 15 states in pertinent part the following:

> "Prosecution of a felony shall be initiated by indictment or information, but no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except by indictment by a grand jury. . ."

The Louisiana criminal code specifically sets out the statutory requirements for instituting criminal prosecution in the State of Louisiana in La.C.Cr.P. art. 383(A) in pertinent part which states the following:

> A prosecution for an offense punishable by death, or for an offense punishable by life imprisonment, shall be instituted by indictment by a grand jury.

The United States Constitution also states the following in 28 U.S.C.A. Amend. V in pertinent part:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . ."

Relator has also received documentation from the Franklinton Police Department and the District Attorney Office which states that a rape kit was submitted to the State Police Crime Lab. In Baton Rouge, Louisiana. See attached exhibit -B-.

3

Though relator received the documents from the police department more than (1) year ago, the Louisiana Supreme Court has recently decided in a per curiam opinion that; "The fact that relator discovered new facts before the prescriptive period had run but did not file until after it had run does not make the application untimely. Instead, if delays caused by matters outside the control of the state have prejudiced the state, it may invoke La.C.Cr.P. art. 930.8(B) and demand a hearing on that issue." State v. Lanieu, 855 So.2d 512, 2003-2640 (La. 10/1/04). Citing Carlin v. Cain, 97-2390 (La. 3/13/98), 706 So.2d 968, relative to procedural requirement of La.C.Cr.P. Arts. 930.4 and 930.8, which are relevant in this instant case. Therefore, the issues in this post conviction should be reviewed on the merits. Further, Carlin, supra, notes that "the exception to the three-year time bar provided by La.C.Cr.P. art. 930.8(A)(1) for claims based on facts 'not known to the petitioner or his attorney' imposes no express due diligence requirement on the inmate and remains subject to the laches provision of La.C.Cr.P. art. 930.8(B)."

Further, pursuant to La.C.Cr.P. art. 926.1, the petitioner has until (2007) to seek DNA PCR relief seeking DNA testing.

To overcome procedural default bar to claim, a habeas petitioner must demonstrate cause for the default and prejudice; ineffective assistance of counsel may constitute cause. Andrews v. Collins, 21 F.3d 612. To establish actual prejudice to overcome a state procedural bar, a habeas petitioner must show that, but for the error of counsel, he might not have been convicted.

Relator has shown cause and prejudice, due to his counsel's failure to investigate and learn of the rape kit and the lack of a Grand Jury indictment. Thus, due to counsel's ineffective assistance, relator has shown it was reasonably probable that the results of the proceedings would have been different had suppressed evidence been disclosed. State v. Kenner, 900 So.2d 948.

Relator further admits that his claims for relief articulated in relator's original PCR and in the interest of justice, relator feels that his claims for relief should be heard on the merits by this Honorable Court. Louisiana law governing post conviction relief, tempers the rule of finality by providing a form in which prisoners in state custody may attack their final convictions on constitutional grounds. When required to so in the interest of justice, the district court may consider a claim for PCR although it was fully litigated in an appeal from the proceedings to the judgment of conviction and sentence. The official revision comment to this article observes that "[t]he trial court has the discretion to make allowances for the unique case in which justice requires that the same ground be relitigated." State v. Cage, 637 So.2d 89, 87-2778 (La. 2/4/1994).

Relator present his claims and asks, why he should not be given the benefit of this Honorable Court's authority on reviewing his ineffective assistance of counsel claim especially considering the totality of the circumstances and the fact that the relator is not a lawyer, nor is he trained as a lawyer and should not be held to the stringent standards as a lawyer.

Denial of Motion to Quash Bill of Information

Bill read in open court Hon. Judge James R. Strain, Jr., Hon. Judge Thomas W. Tanner, Hon. Judge Hillary J. Crain, whom relator was originally tried, convicted and sentenced under an Hon. Judge Raymond S. Childress who relator sought relief of judgment in instant case. Neither judge upheld his duties to the court (Section II) to give the issues in controversy deliberate, impartial, and studied analysis and consideration, nor did they abide by (Section II) district court standards, Equality, Fairness, and Integrity, Standard 3.1. Fair and reliable Judicial Process, Standards 3.3. Court Decisions and Actions.

On February 25, 1982, Motion to Quash was filed in open court by the defendant's counsel Mr. Reggie Simmons. Court denied Motion to Quash. Mr. Simmons objected to the Court's denial of Motion to quash bill of information charging R.S. 14:64 armed robbery and R.S. 14:42 aggravated rape which could only be legally instituted by grand jury indictment.

Art. 296, Scope of preliminary examination before and after indictment: If the defendant has not been indicted by a grand jury for the offense charged, the court shall, at the preliminary examination, order his release from custody or bail if, from the evidence adduced, it appears that there is not probable cause to charge him with the offense or with a lesser included offense. If the defendant is ordered held upon a finding of probable cause, the court shall fix his bail if he is entitled to bail. In Court's denial of motion to quash at preliminary examination resulted in Relator's due process being denied him. Relator contends he had right to quash the bill of information on legal and relevant laws and Const. of United States and Louisiana. Title XV, Art. 532(8). The Court has no jurisdiction of the offense charged: Art. 534(2). The offense is not one for which prosecution can be instituted by an bill of information. Art. 535(A)(5)(6). The information charges an offense for which prosecution can be instituted only by a grand jury indictment. Art. 537; Trial of issues arising on Motion to Quash. All issues, whether of law or fact, that arise on a motion to quash shall be tried by the court without a jury. By denying Relator a hearing under Title XV court denied Due Process of fact finding to determine if the State had right to prosecute defendant.

5

Hon. Judge Thomas W. Tanner erred in denying Motion to quash bill of information, therein, constituting a versible error because his denial inflict great harm and prejudice against Relator, in that from the very start Relator was denied his right as a citizen of the United States and of Louisiana. (Extract of Minute page 1).

ERROR 3.

Court erred when it allowed bill of information to be read in open court as a means to initiate prosecution against defendant of R.S. 14:42 aggravated rape which could only be instituted legally by a grand jury indictment. (Tr.Trans. P. 43). Court knew that trial couldn't proceed without proper jurisdiction through grand jury indictment. Therefore, court did not adhere to (Judges Duties to the Court; District Court Standards). Thereby violating Relator's constitutional right to a fair and impartial trial and judicial process of law. Title XXVI, Art. 761. A jury trial commences when the first prosective juror is called for examination. Art. 765(2) The reading of the indictment. Title X, Art. 382; Method of instituting criminal prosecutions. (A). A prosecution for an offense punishable by death, or for an offense punishable by life imprisonment, shall be instituted by indictment by a grand jury. Art. 872. Basis for valid sentence: A valid sentence must rest upon a valid and sufficient: (1) Statute; (2) Indictment; and (3) Verdict, judgment, or plea of guilty. See Art. 882(A)(B).

Bill of Information or indictment must be clearly and concisely stated and must contain all the essential elements of crime intended to be charged in sufficient particularity to enable defendant to prepare for trial, to allow court to determine propriety of the evidence which is submitted upon the trial and to impose the correct punishment on verdict of guilty, and to afford protection from subsequent prosecution for the same offense. LSA-Const. Art. 1, § 9, 10. LSA-R.S. 14:42 and 14:64; LSA-C.Cr.P. art. 465, 473.

Aggravated rape R.S. 14:42 section (1) states, "Whoever commit the crime or item of aggravated rape shall be punished by life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. (La. Const. 1974) art. 1, section 2: No person shall be deprived of life, liberty, or property, except by due process of law; Section 3: No person shall be denied equal protection of the law. § 3. Right to Individual Dignity: Relator's rights were not preserved and enforced when prosecution was allowed without Due Process of law of an indictment in proceedings and in presenting indictment in open court. Therefore making Slavery and involuntary servitude prohibited and illegal since there is no indictment there can be no crime thereby where there is no crime there can be no punishment. Section 16. Every person charged with a crime is presumed

6

innocent until proven guilty and is entitled to a speedy, public and (impartial trial) in the parish where the offense or an element of the offense occurred, unless venue is charged in accordance with law. Relator contends there could be no fair and impartial trial when court allowed and State prosecuted Relator for R.S. 14:42 aggravated rape initiated by a bill of information rather than being instituted by a grand jury which law prescribed. (§19) Right to Judicial Review: Section 19. No person shall be subjected to imprisonment of forfeiture of rights . . . without the right to judicial review beased upon a complete record of all evidence upon which the judgment is based.

Relator has not had a Judicial review of all the records for which his conviction stands. The facts are that favorable and impeaching evidence was withheld by prosecutor. (§20) Right to Humane Treatment: Section 20. No law shall subject any person to . . . . unusual punishment: Though Relator's conviction and sentence appears in all respects legal by law. The facts are inescapable that R.S. 14:42 can be instituted only by a grand jury indictment and not by bill of information, therefore, making the conviction and sentence illegal by law and conviction and sentence unusual punishment. Const. U.S. 1974, Article 1. Declaration of Rights.

§13. Rights of the Accused.

Section 13. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. Section §2, §3, § 14, §15, §19, §20, §22, Art. III, Section 2, Art. IV, Section 1; Section 2. Art. VI, Art. VII, Amendment V [1791], Amendment VI [1791], Art. VII, Amendment VIII [1791], Amendment XIII [1865], Amendment XIV [1868].

Relator contends that all his rights as a citizen of the United States and of the State of Louisiana have been denied through Due Process of Law.

### ERROR 4.

Court erred in not instructing the jury according to the law of aggravated rape, and failed to clarify Assist. Prosecutor's instruction to jury that ultimately led to a guilty verdict in the instant case.

Assist. Prosecutor Rusty Knight stated in pertinent part, the case we are trying today is a case of Aggravated rape. I want to read to you the definition of Aggravated rape as found in our Louisiana Criminal Code and ask you a question or two about it as a group in whole. Aggravated rape is defined as a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances. (T.Tr.11). (1) Where the victim resisted the act to the utmost but whose resistance was overcome by force, or (2) Where the victim is prevented from resisting the act by threats of great and immediate

bodily harm accompanied by apparent power of execution, or (3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon. Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence . . . Now do any of you have any personal problems to applying this definition of rape as I've read it to you? (T.Tr. 12). Q. Does the fact that there is, that the crime carries a life imprisonment sentence at hard labor without benefit of parole, probation or suspension of sentence, would that prevent any of you from rendering a fair and impartial judgment in this case at the end of the evidence? (T.Tr. 13). What Mr. Knight failed to inform the jury of is that he nor the State could institute a charge of Aggravated rape against Relator in instant case legally by bill of information. LSA-C.Cr.P. 382, subd. A, 533(5), subd .C, C.Cr.P. 383. Bill of information charging that defendant violated statute by committing an aggravated rape was defective in failing to name victim. LSA-Const. Art. 1 §§ 9, 10; LSA-R.S. 14:42; 14:64; LSA-C.Cr.P. art. 465, 473, C.Cr.P. art. 462, art. 464, art. 442-3, 4.

BY MR. KNIGHT: State would at this time move to call case number 37,096, State of Louisiana versus David Lee Williams as to Count One only in that bill of information. We move to sever under the provisions of Code of Criminal Procedure Article 495.1 as to the second count.

District Attorneys' are empowered to amend indictment to charge lesser offenses. The State may abandon the charge of a greater crime and proceed with prosecution for the lesser crime, and no formal indictment is necessary for the purpose. State v. Hansbro, 796 So.2d 185, 35,027. The prosecutor had the authority to sever the charges in the instant case, however, only for the lesser offense of aggravated rape being forcible rape since relator was charged by way of bill of information and no laws or Constitutions would have been violated. However, prosecutor severed the charge of armed robbery from aggravated rape under a bill of information and proceed to prosecute the greater charge illegally.

Relator asserts the prosecutor's and court's misstatement and application of law prejudiced him and the judge's instruction did not alleviate the problem by providing a clear and unambiguous statement of the law and the jury's responsibilities. Jury had right to know that the State was required by law and constitution to indict accused by grand jury before it could prosecute a crime of aggravated rape, a crime for which the penalty if life imprisonment that there may be a fair and just verdict.

SECTION 2.

Court erred when it failed to instruct the jury on the limited purposes for which other crime evidence may be used as required by State v. Prieur, 277 So.2d 126 (La. 1973). The requirement of Prieur apply when the other crime evidence is admitted under the exception outlined in LSA-R.S. 15:455 and 15:446. Prieur, supra. (P.3) of State v. Donahue, 408 So. 1262.

The instruction which this Court held to have been erroneous in the case of State v. Gibbs, 355 So.2d 1299 (La. 1978), because it did not advise the jury that it was entitled to acquit "because it was not convinced beyond a reasonable doubt because of lack of evidence as to an essential element of the crime."

State introduced as evidence $286.00 that was supposedly stolen from the victim. Relator contends that the money had no probative value in the trial other than to prejudice the jury against the accused. (T.Tr. 56, 57). It must be noted that Mrs. Thompson stated that that wasn't all the money taken from her and that she only identified the money after it was placed in her possession and not before. See police affidavit of Mrs. Thompson's statement. (Exhibit E 4-A thru E 4-D).

Victim/Witness testimony was different from her police statement. LSA-C.E. art. 801, subd. D. To pass the balancing test of La.C.E. art. 404 which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Relator counsel was prohibited from questioning victim fully about money because Prosecutor withheld relevant information in the police affidavit from defense.

Relator contends that the money was not relevant to the Prosecutor's case to prove aggravated rape, but was used to prejudice, confuse the issue and to mislead the jury and was a waste of time. (C.E. art. 403). "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (C.E. art. 401).

Relator contends he was never tried, convicted nor sentenced for robbing or stealing anything from Mrs. Thompson, therefore such evidence was irrelevant to the rape charge and should have been excluded as evidence to prove a rape.

The admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant. As to the prejudicial effect of evidence of other crimes, Wigmore says:

The natural and inevitable tendency of the tribunal -- whether judge or jury -- is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the

9

present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. Evidence of crimes related to the offense with which a defendant is charged is inadmissible except under special exceptions. For an excellent discussion of the problem, see McCormick on Evidence, s 190 (Cleary Ed. 1972). Aside from related offenses admissible as part of the res gestae, and convictions admissible for impeachment purposes, Louisiana's statutes provide for only three exception -- acts relevant to show intent, knowledge or system. State v. Prieur, 277 So.2d 126, 128, 129.

SECTION 3.

Court erred in its instruction on circumstantial evidence:

> Evidence is either direct or circumstantial. Direct evidence is evidence which if believed proved a fact. Circumstantial, or indirect evidence, is evidence which if believed proved a fact, and from that fact you may logically and reasonably conclude that another fact exists. You cannot find a defendant guilty solely on circumstantial evidence unless the facts proved by the evidence exclude every reasonable hypothesis of innocence. (T.Tr. 177).

Relator contends that this erroneous charge prejudice the accused that it confused jury in thinking that it as a whole could look beyond the law in the State must prove its case against the accused beyond every reasonable doubt to come to a guilty verdict. Court erred when it did not instruct the jury that it had obligation to acquit if there was a lack of sufficient evidence to convict the accused of aggravated rape.

Court failed to instruct jury as to law applicable to R.S. 15:438, Circumstantial evidence. The rule as to circumstantial evidence is: assuming every fact to be proved that evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.

Relator contend the jury instruction on reasonable doubt undermined the level of assurance in the outcome of the guilt phase of the trial required by the due process clause, in violation of Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The question for the Court resolution, therefore, is whether it appears beyond a reasonable doubt that the erroneous instruction did not contribute to the jury's finding of guilt. See State v. Cage, 538 So.2d 1125 (La.), cert.denied, 502 U.S. 874, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991). Compared to Cage, Relator asserts, the evidence of guilt in this case is not overwhelming.

Relator asserts that the prosecutor and judge misstated the applicable law and the judge's instruction did not alleviate the problem by providing a clear and unambiguous statement of the law and the jury's responsibilities. See People v. McDonald, 690 P.2d 709 (Cal. 1984)(overruled on

other grounds, 4 P.3d 265); State v. Hubbard, 48 P.3d 953 (Utah, 2002); State v. Chapple, 660 P.2d
1208 (Ariz. 1983); United States v. Downing, 753 F.2d 1224 (3rd Cir. 1985); United States v. Fosher,
590 F.2d 381 (1st Cir. 1979).

Relator contends that court erred in not instructing the jury as to the reliability of eyewitness
identification.

Relator assert that in-court identification was unreliable and highly suggestive and prejudice
in it mislead jurors to believe that identification by victim/witness was conclusive and led to the guilty
verdict.

The court must note these facts:

"1.  Identification of the defendant is a critical issue in the state's case.

2.  The case turns substantially or entirely upon eyewitness testimony.

3.  There is little or no collateral evidence to independently corroborate the defendant's connection
with the crime.

4.  The defendant advances an alibi and maintains that he was not present when the offense was
committed."

5.  There was no lineup identification or photo identification after the commission of the crime,
although victim said she knew relator to be the perpetrator of crime they were never socially or
otherwise connected, and being the only Black man at counsel table was overt that victim would point
him out as perpetrator of crime against her.

6.  Witness out of court identification was inadequate, though victim spent at least 30 to 40 minutes
with her attacker and she testified she clearly saw her assailant.  However, her testimony clearly
shows she did not.  (T.Tr. 55).  It is noteworthy that the victim never describes the clothes, height,
complexion, age, and voice of perpetrator which is very essential to prosecutor case to convict.  It is
noteworthy that the victim not once said she identified relator to police officers as her attacker.  (T.Tr.
49-68).  Moreover, not once did any police officer, Mr. Harold Varnado, Mr. Denver Miller, Mr.
Wade Bateman, Mr. David McNish, say Mrs. Thompson identified David Lee Williams as the
perpetrator of the crime.  (T.Tr. 80 thru 100).  It is also noteworthy, that there no fingerprints offered
from crime scene of the perpetrator to collaborate Mrs. Thompson testimony that Relator was in fact
her attacker.  State v. Wiggins, 556 So.2d 622 (La.App. 2nd Cir. 1990).  The trial judge gave the
following instruction:

The State must prove beyond a reasonable doubt that the crime charged
in this case was actually committed.  But more than that, the State must

11

also prove beyond a reasonable doubt that the defendant, William Wiggins, committed the crime. Therefore, the identification of William Wiggins as the perpetrator is a necessary part of the State's case. As with other witnesses, you must first decide whether [the victim] is telling you the truth as she understands it. But you must do more than that, you must also decide how accurate the identification was, whether the witness saw what she thought she saw. You should consider whether the witness had a good opportunity to see the person; whether the witness seemed as though she was paying careful attention to what was going on; whether the description given by the witness was close to the way the defendant actually looked; how much time had passed between the crime and the first identification by the witness; whether at the time of the first identification by the witness was likely to make a mistake; that is, the witness was not asked to pick out the person she saw from a group of people. You should also consider whether the witness seemed certain at the time of the first identification and again when she testified here in court.

If you are not convinced beyond a reasonable doubt that it was the defendant who committed the crime, you must find him not guilty. 556 So.2d at 626. See also State v. Williams, 815 So.2d 378 (La.App. 1st Cir. 2002); State v. Hills, 129 So.2d 12 (La. 1960). The trial court refused to give an instruction on eyewitness identification. Supreme Court found error -- such a charge should have been included as misidentification was the sole defense. In State v. Richey, 249 So.2d 143 (La. 1971), the trial court declined to give a special instruction and was upheld without elaboration. There was corroboration. There was corroboration in the case to the identification. See also Neil v. Biggers, 93 S.Ct. at 382.

Factors affecting the witness' opportunity to observe the offender at the time of the offense include.

(1) The length of time available for observation;
(2) The distance between the witness and the offense;
(3) Whether the witness' view of the offender was obstructed in any way;
(4) The light or lack of light at the time;
(5) The witness' state of mind at the time of the observation, including whether the witness was experiencing extreme fear during the incident; and:
(6) Any other circumstances affecting the witness' opportunity to observe the person committing the crime.

Factors affecting the reliability of any identification made after the offense include:

(1) The length of time between the occurrence of the crime and the identification;
(2) The circumstances surrounding the identification;
(3) Whether the offender was a stranger to the witness before the incident;
(4) The witness' certainty or lack of certainty about the identification;
(5) Whether or not the witness has previously expressed an inability to identify the attacker;
(6) The witness' state of mind at the time of the identification; and
(7) Any other circumstances bearing on the reliability of the identification.

You may also consider any occasion on which the witness gave a description of the offender which conflicted with the witness' description or identification at trial.

Relator contends that such jury instruction should been made by judge automatically without having to ask, considering that State's case was hinged on the testimony of the victim.

Trial judge is not required to give precise instruction submitted by litigants; he need only given instruction that properly reflect applicable law and adequately convey issue to jury.

Appellate court may not set aside finding of fact by judge or jury in absence of manifest error or unless it is clearly wrong.

Adequate jury instruction are those that fairly and reasonably point up issues and provides correct principles of law for jury to apply.  Barbara A. Smith v. American Indemnity Insurance Company, et al., 598 So.2d 486.

Prior to rendering a verdict of guilt, the trial judge instructed the jury on the evidence that is needed to prove aggravated rape.  However, the trial court did not instruct the jury as to the law applicable to this case.  Therefore, relator was denied effective assistance of counsel when defense counsel failed to object to the trial court's instruction to the jury which applied the wrong law and statute to the instant matter, and therefore, resulted in his conviction.

CONTENTION:

Petitioner/Relator contend that he was denied effective assistance of counsel when counsel fail to object to the trial court's instruction to the jury which fail to mention essential elements of the crime.

PRINCIPLE OF LAWS:

In order for the defendant to properly preserve his objection to the trial court's general charge to the jury, he must comply with the contemporaneous objection rule.  An objection to the general jury charge is timely if made immediately after the jury is retired.  State v. Mack, 403 So.2d 8 (1981); State v. Hardman, 467 So.2d 1163, 1171 (1985).  In the instant case, defense counsel did not object to he trial court's instruction to the jury which fail to mention essential elements of the crime.

ARGUMENT:

To establish the claim of ineffective assistance of counsel a defendant must demonstrate that his defense attorney fail to meet the level of competency normally demanded of attorneys in criminal cases.  State v. Fickes, 497 So.2d 392 (1986); State ex rel., Graffagnino v. King, 436 So.2d 559 (1983).  The right of effective assistance of cousnel does not require errorless counsel or counsel

which may be judged ineffective only on hindsight. Upon reviewing a claim of ineffective assistance, a court should inquire whether counsel violated some duty to the client and if so, determine whether the defendant was prejudiced by the violation. State v. Hartman, 530 So.2d 615 (1988). Here, counsel failed to object to the trial court's failure to instruct the jury on essential elements of the crime. State v. Sims, 465 So.2d 769 (1985).

The trial court is required to instruct the jury as to the law applicable to the case and every theory of defense supported by the evidence regardless whether the judge accepts the theory as true. State v. Garrison, 400 So.2d 874 (1981). The trial judge instruction to the jury on the elements of aggravated rape read as follows in pertinent part:

> "Aggravated rape is an act of vaginal sexual intercourse with a person who is not the spouse of the defendant and without the person's lawful consent when the following is present: First, the person resisted the act of vaginal sexual intercourse to the utmost, but the person's resistance was overcome by force, or the person was prevented from resisting the act of vaginal sexual intercourse by threat of great and immediate bodily harm accompanied by apparent power of execution. Sexual intercourse is deemed to have taken place even though emission did not occur. Any vaginal sexual penetration, however slight, is sufficient. Thus, in order to convict the defendant of aggravated rape, you must find, first, that the defendant committed an act of vaginal sexual intercourse with Ethel Thompson without the lawful consent of Ethel Thompson, and Secondly, that Ethel Thompson was a person who was not the defendant's spouse. Thirdly, that Ethel Thompson resisted to the utmost, but her resistance was overcome by force or Ethel Thompson was prevented from resisting by threats of great and immediate bodily harm with apparent power of execution." (See: jury Charge page 178-179 attached hereto).

The above instructions fail to mention that prosecution for aggravated rape require defendant be indicted lawfully by grand jury. The above instructions fail to mention the limited purposes for which other crime evidence may be used as evidence and its probative value in other cases. The above instructions fail to mention that the jury was obligated to acquit if there was a lack of sufficient evidence to convict the accused of aggravated rape.

The above instruction fail to mention the law applicable to R.S. 15:438, Circumstantial evidence. It fail to instruct the jury as to the reliability of eyewitness identification. It also fail to mention the element of armed with a dangerous weapon.

At the time of relator's arrest and conviction, the aggravated rape statute had been amended under Act No. 707 to include the element of armed with a dangerous weapon. The amended statute read:

Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one of the following circumstances:

> (1) Where the victim resists the act to the utmost but where resistance is overcome by force; or
>
> (2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
>
> (3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or
>
> (4) Where the victim is under the age of twelve years.  Lack of knowledge of the victim's age shall not be a defense.

Under the above statute, the State was required to prove three of the elements to support its connection that petitioner committed the crime of aggravated rape.

Here the prejudice suffered by the erroneous jury charge and counsel's failure to object to said charge is clear.  State v. Butters, 527 So.2d 1023 (1988).  Relator's defense at trial consists of the presumption of innocence; and that, according to the evidence, there was no great force employed, that the victim was in no great and immediate harm where she felt she was going to die, there was no weapon involved in the crime.  The trial judge's instruction clearly lower the standard of proof that is required by the aggravated rape statute and the Due Process Clause interpreted in, In re Winship, the court noted that "in State criminal trials the due process clause of the 14th Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  U.S. v. Cage, 111 S.Ct. at p. 329. (Citing Winship, 443 U.S. 315).  In this case, the erroneous instruction so prejudiced relator as to affect his substantial right; in that, it contributed to the jury's verdict of aggravated rather than forcible rape.  State v. Alexander, 504 So.2d 591 (1987).

The judge's obligation under art. 807 is a corollary to his basic obligation to charge the jury as to the law applicable to the case pursuant to La.C.Cr.P. art. 802.  Under art. 802, the trial judge is required to cover every phase of the case supported by the evidence whether or not accepted as true.  State v. Marse, 365 So.2d 1319 (1979).  However, when as here, defense counsel fail to comply with the contemporaneous objection rule concerning the trial court failure to include essential elements in its' instruction to the jury, then it cannot be said that counsel render effective assistance.  State v. Everett, 530 So.2d 615.  Therefore, relator's conviction and sentence must be reversed and vacated.

ERROR 5.

The verdict was contrary to the law and evidence. Art. 851(1), C.Cr.P. Relator contends that the verdict was contrary to the law and evidence in that he was tried, convicted, and sentenced to life imprisonment in violation of R.S. 14:42 aggravated rape instituted by bill of information. Bill of Information was defective as well as illegal in failing to follow short form for charging Aggravated rape. It as also defective in failing to name victim and illegal in that C.Cr.P. art. 382. Method of Instituting Criminal Prosecution: (A) states, "A prosecution for an offense punishable by death, or for an offense punishable by life imprisonment, (shall) be instituted by indictment by a grand jury."

Art. 383. Indictment: An indictment is a written accusation of crime made by a grand jury. It must be concurred in by not less than nine of the grand jurors, indorsed "a true bill", and the endorsement must be signed by the foreman. Indictment shall be returned into the district court in open court. La.C.Cr.P. art. 5; State v. Pitts, 39 La.Ann. 914, 3 So. 118. Regarding Grand Jury, see Art. 442-444(A)(1)(2)(3); (B); art. 461-2; art. 465-6; Art. 468, Art. 473.

SECTION 1. CONCLUSION

Mrs. Thompson stated to the questions of prosecutor that her attacker was making threat of death to her before and after the rape. However, when asked by the Prosecutor, "What did he threaten to do if you tried to resist him?" A. He just kept, he kept repeating, I don't know how many times he siad he would kill me if I didn't hush and attempted to move the cover once to free my face so that I could breathe, and he told me that, and he told me if I didn't hush hollering he would kill me, cut my head off. Mrs. Thompson never answered that question directly, she never said the attacker threaten her if she resisted his attempt to have sexual intercourse with her, instead she said he threaten to harm her if she continued to holler. Prosecutor go on to use a deceptive question to deceive the court and jury that the victim was resisting her attacker. Q. Alright. Did you believe that he would do that if you didn't quit resisting? A. Well, certainly. He had come in here. (T.Tr. 55-6). See earlier statement by victim to the same question posed in a different way, the 6th question, and the 6th answer. (T.Tr. 51)

SECTION 1       VERDICT CONTRARY TO LAW AND EVIDENCE

The victim was asked, "Mrs. Thompson, is there any doubt in your mind who it was that came to your house on January 3rd in the early morning hours and raped you?" A. "No, no doubt," and she named the defendant David Lee Williams as her attacker. On cross examination by Mr. Ford, "You stated that David Lee Williams walked into the hallway and you saw him and from that point he was in contact with you, that is seeing, hearing or touching?" She replied, "I recognized him when he was,

when he got in the door of the dining room. He had come through the kitchen and the dining room." (T.Tr. 60). This statement is in direct contradiction to her statement made to the court earlier (T.Tr. 55) where she stated to a question about where the rape took place, "Right on the bed, the same bed I was in when he walk in." If she encountered her attacker while she was still in bed, how can the victim see the man coming through kitchen and dining room? This just doesn't add up logically. Mrs. Thompson can't be in two places at the same time.

Still under cross examination by Mr. Ford, she continues, "And the wall light was on the wall of the dining room right by the door where he went out into the hallway. I recognized him as soon as he got there because I was trying to make up my mind what to do after hearing all this noise. I knew something had had happen, but I did not know what, and the minute I saw him when he entered this door by the light, I could see perfectly who it was, and other than that, I never would have known." In her affidavit to officers, Mrs. Thompson said something similar but quite different as to seeing her attacker, "I just don't know about how long I slept anyway I finally heard this noise, like somebody uh, that ran into something. And I jump up in the bed, sat up in the bed, and I said what on earth is happening. And just as I went to get off of the bed to see if I could see anybody or anything around he entered the door. (Exhibit E4-A). Against court must review (T.Tr. 55) where Mrs. Thompson states she was on the bed when her attacker converged upon her before she was able to come to a door so how can she see him and recognize him by the light in the hallway? (T.Tr. 60). See Exhibit D2, the configuration drawing of the victim's home where point of observation of perpetrator and point of observations where victim observed perpetrator, and position of light, and her statement to police affidavit and T.Tr. 55 is proof that Mrs. Thompson perjured herself on the witness stand in to help prosecutor gain a guilty verdict. Some valuable documents in this case of relators' that must be considered by this Court is thoroughly and throughout its pages is Mrs. Thompson's initial police statement or her affidavit of the facts to offices about the events that transpired in the early morning attack on her, exhibit E4-A thru E4-D, here it even shows Mrs. Thompson may have through her conduct of conversation induced and facilitated the commission of the sexual assault against her. "He said when have you had any?" "Mrs. Thompson replied, "Oh, goodness, I said oh, 10 years," exhibit E4-A. It was said also in exhibit D2 by Mrs. Thompson that she had taken a bath before calling the police. One would reasonably have to think what affect this would have on the evidence and the State's case and to Mrs. Thompson as a truthful witness. Police drawing of the house and Mrs. Thompson statement out of court and in court thoroughly proves she never saw her attacker clearly

enough to give a description to say that the man who did this to me; in fact, she was sitting on her bed about to get up when the attacker came in on her, in the room with the light to his back with no other lighting in the house.

Prosecutor purposely withheld exculpatory and impeaching documents from defense that his star witness, the victim of the crime wouldn't be made to appear to look like a liar before the jury. Thereby State prejudiced defense in not turning over documents it had asked for, through the Brady act. Court must inquire as to, what happened to victim's underwear, what happened to hair comb of perpetrator, with hair samples and fingerprints, what happened to flashlight that perpetrator took from victim and threw on bed, what happened to fingerprint evidence period, perpetrator came through window, fell to floor. There should have been fingerprints all over that section of the house and in the victim's bedroom. However, none was presented by State to prove relator was perpetrator of crime or was in the victim's house. This sort of evidence surely would have strengthen State's case against any perpetrator of any crime. However, there being such a fundamental lack of such strong evidence surely weaken the State's case against any defendant to be prosecuted for the crime of aggravated rape.

Relator contends this was and is sufficient evidence to have convicted him of aggravated rape. If there was a rape there was a total lack of evidence of the aggravated nature of the rape. There is legitimate reason to question Mrs. Thompson identity of relator as the perpetrator of the crime against her because of the inconsistency in her police statement and her courtroom testimony are not harmoniously joined to make reasonable sense to any rational person.

## ERROR 6
### INSUFFICIENT EVIDENCE

Facts of case are Mrs. Thompson made two contradictory statements to police officers during her statement of the crime against her and throughout her testimony in the prosecution of relator. In her statement to the Court, she stated, after hearing noise in her home, "So I was trying to make up my mind what could I or should I do, tip around in the house to see if I could see anything, and about that time he appeared, had come from where I heard this noise, through the kitchen, then the dining room, wall light on, and when he got to that light, I could see clearly who he was." She stated her attacker rushed over and that he took a flashlight from her that she had managed to take hold of and threw it on the bed and pushed her over and threaten to kill her if she continued to holler, she did not see any weapon at any time. (T.Tr. 49-64). Identity of the defendant not properly identified. No lineup. It must be noted in her statement to officers Mrs. Thompson replied when asked, "Did he strike you at

any time?" Mrs. Thompson said, "No, he just took his hand and put over my mouth and whenever he would move his hand he would push that robe back down a little. Nowhere during her testimony does Mrs. Thompson states that she was beaten, choked, dragged or abused in any other way than being threaten. (Exhibit E4-C).

SECTION 1. PROSECUTION FAILED TO PROVE THE VICTIM FEARED FOR LIFE

Mrs. Thompson is asked, "Did you feel that if you hollered or resisted at that point that he would hurt you? A. "I guess he would. I suppose I would hollered again, I suppose, . . ." (T.Tr. 50, 51). By using the word (I guess) Mrs. Thompson was using a conjectural statement there was no founded evidence in her mind to base any sufficient fear of being hurt by her attacker. Then she uses the word (I suppose) which is to make a hypothesis assumption which is to say she didn't know if her attacker would hurt nor was she in fear that he would

SECTION 2. DID NOT RESIST HER ATTACKER

From Mrs. Thompson latter statement shows there was very little or resistance of the attack on her part against her attacker. Mrs. Thompson states that the whole time the perpetrator was in her bedroom she had a blanket, sheet, or robe over her face and that her attacker was all over her room looking for money and at some point she told him where the money was. Her statement during testimony clearly shows she was not trying to struggle or fight off her attacker, but only to keep his hand from over her mouth and nose. (Trial T. 52).

Again, Mrs. Thompson says when her attacker left he went out right back through the dining room door where he came in where she had recognized him by the light. (T.Tr. 53). Mrs. Thompson was asked, "Did he hold you down during the course of the rape?" She answered, "That's right." However, what wasn't brought out is how her attacker held her down and to what degree of force he used to hold her down. To illustrate a point using the, State v. Trent, 517 So.2d 1053 (La.App. 3 Cir. 1987) case. There are similar differences in the case against Trent and Relators' and major differences. In the Trent case like relators' both victims were up in age. Mrs. Iris Hidalgo being 70 years old, and Mrs. Ethel Thompson being 82 years old, the defendant Matthew Trent confessed to the crime, relator has always maintained his innocence. Trent was identified by the victim by his voice and article of clothing, and complexion and general size. Relator was not identified by article of clothing nor his voice, his complexion, and identity of him is not reliable. Mrs. Iris Hildago testified, "He ripped my bed clothes off of me. I still had my robe on. I continued to scream and call on God and was fighting with everything in me. He was holding me down with both knees and he said, 'Lady,

19

if you don't stop screaming I will smother you." She she submitted.  In the case of Mrs. Thompson testified she screamed and grabbed a flashlight there was no kicking, there was no wrestling with her attacker, there's no attempt to scratch him, bite him, or to get away from him.  In contrast to the Trent case, relator case is far from an aggravated rape case by any standards.  The next question put to Mrs. Thompson was, "Where did he rape in the house?"  She answered, "Right on the bed, the same bed I was in when he walked in."  This statement by Mrs. Thompson is in direct contradiction to her earlier statement to the court that she had gotten out of bed to investigate the noise in her home and had seen her attacker clearly as he rushed her.  However, in this statement when she was attacked, she was still on her bed, in her room, when her attacker came in her room.  Mrs. Thompson was next asked, "Did you resist him or fight him any way?"  She answered, "I couldn't do a thing.  He was holding me down, as I said before. . . ."  Still she doesn't say how she was held down or to what degree of force was used to hold her down.  Again one must reflect on State v. Trent.  Mrs. Thompson goes on to relate that she's a victim of arthritis and hardly has strength to get around, and that, "I can't do anything, I had no way of defending myself."  By all definition of aggravated rape her own testimony proves it was not. (T.Tr. 55).  Mrs. Thompson claim she was debilitated from fighting off her attacker because of arthritis.  However, there was no medical testimony to say she was a victim of arthritis or to what degree.  The District Attorney would have the court view Mrs. Thompson as a twelve (12) year old child as in State v. Jackson, 437 So.2d 855 (La. 1983).  In this case the victim is 12 years of age who is raped in the middle of night in a bed with two younger children in the same bed.  One can foresee many reasons why this child didn't cry out or fight off her attacker.  He had threaten to kill her, and being inexperienced in most everything in life at her age, she didn't know what to do.  There was two younger children in the room and in the same bed, she feared for their safety too.  Furthermore, there were other family members in the house asleep, she feared for their lives too.  It is noted she did not say a thing until after her attacker was chased off.

As is noted in the Jackson case, Dr. Broussard testifies to his physical examination of the victim, "revealed several lacerations of the victim's inferior hymen and her vaginal wall.  Dr. Broussard testified that the injuries were serious and resulted from forced entry.  State v. Jackson, 437 So.2d 855 (La. 1983).  The Supreme Court of Louisiana note in the Jackson case, "We first consider whether the rape occurred under the circumstances set forth in La.R.S. 14:42(2), i.e., "Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution."  "The victim testified that she was frightened and would do anything

the defendant asked." The court found there was sufficient evidence to find defendant guilty beyond a reasonable doubt based on the facts that defendant to harm victim, that victim was frightened, and that the victim was but a 12 year old child and defendant being ten years older than she. Under State v. Parish, 405 So.2d 1080 (La. 1981), the court noted that the legal definition of aggravated rape set forth in La.R.S. 14:42(2) was virtually identical to forcible rape. See State v. Willie, 422 So.2d 1128 (La. 1982). The sole distinction between the two crimes is the "degree of force employed and the extent to which the victim resist." 405 So.2d at 1087. A greater degree of force is necessary to justify the more serious punishment imposed for aggravated rape. Unfortunately, there is no magic formula to determine which acts of coerced sexual intercourse warrant the greater punishment of aggravated rape rather than forcible rape. Each case must be examined on its own facts. We hold that evidence in this case is sufficient to justify the jury verdict of aggravated rape. The magnitude of the force exerted upon the victim is most clearly evidence by the injuries she sustained as a result of the attack. Blood was found on her underclothes and her bed sheets. Dr. Broussard testified the defendant was visibly upset when he examined her. She was still bleeding at the time of his examination and her vaginal vault was full of blood. Dr. Broussard found several lacerations of the victim's inferior hymen and also of her inferior vaginal wall. One laceration of the vaginal wall measured approximately two centimeters long and one and one-half centimeters deep. The doctor termed the victim's injuries as serious and roughly similar to an episiotomy. Although Dr. Broussard could have stitched the open wounds, he chose not to do so, for he thought it wise not to sedate her. The doctor further stated that the victim was probably a virgin prior to the attack, and he was of the impression that she did not understand what had happened to her.

We also consider the fact that the victim was twelve years old at the time of the offense. The amount of force required by the twenty-two year old defendant to subdue the child was certainly less than the force necessary to overcome the resistance on a mature woman. For these reasons, we conclude that viewing the evidence in the light most favorable to the prosecution, any rational jury could have found beyond a reasonable doubt that the victim was raped under the circumstance listed in subsection (2) of La.R.S. 14:42 with a sufficient degree of force to warrant punishment in the greater degree as aggravated rape. Now compared to relator's case the story is quite different. Dr. Wickboldt the examining physician stated it was at least or less 5:00 in the morning when he examined Mrs. Thompson, he did pertinent observation, not a complete physical exam. It was oriented to the rape examination. He stated, she was an elderly lady. She was not in any particular distress as far

as heart, lung condition were to be concerned.  In just attempting to make observation, she was clothes

in a nightgown.  Under her nightgown, she did not have on any underwear.  I understood later there had

already been handed over to the police.  There was no, (T.Tr. 105) injury to her skin or bruises,

scratches, cuts, etc., in the vaginal area.  There was a laceration, that is a tear, around the opening of

the vagina.  On it had bled, there was some blood on the surface, but there was no active bleeding at

the time I examined her.  There was also no abrasion on the cervix, which is the, sort of opening or

mouth to the womb, which is deep in the vagina.  Q.  Alright, sir, now the tear that you mentioned

around the opening of the vagina, would this be consistent with some trauma to the vaginal area?  A.

"Yes."  Q.  And the abrasion on the cervix, when you say an abrasion, is this a laceration cut?  What

is the nature of this?  A.  An abrasion is a superficial tearing of the surface, much like a brush burn.

(T.Tr. 109).  Q.  I am going to give you a hypothet, if I could, assume the facts which you found on

your physical examination.  That is a tear around the opening of the vagina where there had been

bleeding but no active bleeding was present at the time of your examination.  White fluid in the vagina

which was consistent with seminal fluid, and the abrasion of the cervix, are these symptoms consistent

with forcible intercourse?  A.  "They are consistent with intercourse, which I would imagine would

be painful.  (T.Tr. 110).  In comparing these two cases, Dr. Broussard stated the victim in State v.

Jackson, 437 So.2d 855 (La. 1983) was 12 years of age, was frighten because of threats made toward

her, she tried to estracate herself from the room and was forced back in.  Upon examination Dr.

Broussard testifies she had, "several lacerations of the victim's inferior hymen and vaginal wall."

Doctor said, "the injuries were serious and resulted from forced entry."  Court said, "The magnitude

of the force exerted upon the victim is most clearly evidenced by the injuries she sustained as a result

of the attack.  Blood was found on her underclothes, and bed sheets, she was visibly upset, she was

still bleeding, vagina vault was full of blood, several lacerations of inferior hymen and inferior

vaginal wall, one laceration of the vaginal wall was two centimeters long and the other was one and

one-half centimeters deep.  Doctor termed the victim's injuries serious and roughly similar to an

episiotomy.  The doctor could stitched open wounds, but didn't want to sedate child in present

condition.  Court considered it took far less force to rape a 12 year old child than it would require

force for a mature woman to submit to the act.  Relator's case is not so complicated.  Doctor stated

Mrs. Thompson, "Was not in any particular distress as far as heart, lung conditions were to be

concerned, her underwear were taken by the police, which never was presented as evidence at trial

so it will never be known if they had blood in them or not.  (T.Tr. 105).  There were no injuries to her

skin or bruises, scratches, cuts, etc., in the vaginal area.  There was (a laceration), that is a tear, around the opening of the vagina.  There was no bleeding though there was blood on the surface. There was (an abrasion on the cervix, which Dr. Wickboldt described as, "a superficial tearing of the surface, much like a brush burn, from "over-expansion."  (T.Tr. 106).  When asked if these injuries resulted from forcible intercourse, doctor answered, "They are consistent with intercourse . . ." Relator is convinced that under the standard of <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), he would not have been found guilty of aggravated rape.  <u>Hudson v. Louisiana</u>, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).

SECTION 3.

(1.) Prosecutor failed to prove aggravated nature circumstances of R.S. 14:42, (1) Where the victim resists the act to the utmost, but her resistance is overcome by force.  Mrs. Thompson own testimony in court and her initial police statement proves she did not resist the act of rape but through her conduct induced or facilitated its commission.

R.S. 14:42(2).  Where victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.  It is most important that Court pay close attention to determine if prosecutor proved section (2) of R.S. 14:42.  For instance, although victim was threaten with great harm, however, was it immediate bodily harm, accompanied by apparent power of execution.

Definition for immediate: without any time intervening; instant; of the present moment, not separated; next; nearest, direct.  Mrs. Thompson testimony show she was unsure her attacker would harm her when asked that question she said, "I guess; I supposed."  Then, too, her attacker was all over her room looking for money there being no immediate threat of her being hurt.

Definition for accompanied: go with; be associated with.

Definition for apparent: in plain view, capable of being clearly perceived; obvious.

The question then is, was the threat of death made to the victim of such magnitude at that point she felt she would die if his demands weren't met?  Mrs. Thompson answered the question herself, "Armand: did he strike you at any time?  Thompson: No, he just took his hand and put over my mouth . . ."  "He told me he would kill me . . . . I don't know if he meant it -- I didn't know."  (Exhibit E4-C).  Under the standard provided by <u>Jackson v. Virginia</u>, did the State prove aggravated rape?  443 U.S. at 319, 99 S.Ct. at 2789.  Relator contends State did not prove beyond a reasonable doubt the force necessary

to ensure the greater punishment of aggravated rape. See State v. Burnett, 496 So.2d 1236 (La.App.

5 Cir. 1986); Art. 821 (A)-(E); Art. 882(A)(B)(2).

Relator contends there was no proper identification of the defendant to single out as

perpetrator of crime in a corporal lineup. Under the standard of Neil v. Biggers, 114 S.Ct. 217

(1993), (1) the victim didn't have opportunity to view the defendant at the time of crime; (2) The

witness' degree of attention in relation to the identification; (3) The accuracy of the defendant in

relation to the identification; (4) The witness' level of certainty when identifying the defendant at the

confrontation; the length of time elapsed between the crime and the identification.

### ERROR 7

State erred when it did not adhere to the high standard of Louisiana Rules of Court; Part G,

§10: District Court Stands: Equality, Fairness, and Integrity: Standard 3.1. Fair and Reliable Judicial

Process: Trial Court procedures faithfully adhere to laws, procedural rules and establish policies;

Standard 3.3. Court Decisions and Actions. Trial courts give individual attention to cases, deciding

them without undue disparity among like cases and upon legally relevant factors.

Advocate: Rule 3.8; Special Responsibilities of a Prosecutor: Refrain from prosecuting a

charge that the prosecutor knows is not supported by probable cause.

Hon. Williams J. Knight, Asst. D.A. went far below high standards set out in Louisiana Rules

for Court and Special Responsibilities of a Prosecutor in pursuing prosecution of defendant for R.S.

14:42 aggravated rape instituted illegally by bill of information instead of grand jury indictment,

which would not support probable cause. Art. 382(A): A prosecution for an offense punishable by

death, or for an offense by life imprisonment, shall be instituted by indictment by a grand jury. See

C.Cr.P. art. 5; art. 383; art. 384, art. 872(2)(3); a valid sentence must rest upon a valid and sufficient

indictment, verdict, judgment, or plea of guilt. Louisiana Const. Article 1 § 13, section 13: In a

criminal prosecution, an accused shall be informed of the nature and cause of the accusation against

him. Defendant was never indicted by a grand jury therefore defendant has never been informed of

the nature and cause of the accusation against him. The bill of information charging defendant is in

violation to C.Cr.P. art. 384, art. 383, art. 382; La. Const. Art. 1 § 13: Bill of Information or

indictment must be clearly and concisely stated and must contain all the essential elements of crime

intended to be charged in sufficient particularity to enable defendant to prepare for trial, to allow court

to determine propriety of the evidence which is submitted upon the trial and to impose the correct

punishment on verdict of guilt, and to afford protection from subsequent prosecution for the same

offense. LSA-Const. Art. 1 §§ 9, 10; See Berger, supra. Bill of Information charging that defendant violated statute by committing an aggravated rape was defective in failing to follow short form for charging agg. rape was was defective in failing to name victim. LSA-Const. Art. 1 §§ 9, 10; LSA-R.S. 14:42 & 14:64; LSA-C.Cr.P. art. 465, 473.  See bill of information attached.

District Attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when and how he shall prosecute. C.Cr.P. 61, 62. Although District Attorney is invested with such authority he shall not go beyond the law and Const. of the United States and Louisiana to gain a conviction. C.Cr.P. art. 382-4; C.Cr.P. art. 872, C.Cr.P. art. 442-4; (A) 1-3; B) Art. 461-6, 8; Art. 473; La. Const. 1 § 13 section 13, § 2, § 3, § 15; Federal Const. Art. 7, Amendment 5, Amendment 6 [1791]; Art. 7, Amendment 8 [1791]; Amendment 13 [1865] section (1); Amendment 14 [1868].

Error patent, LSA-C.Cr.P. 382, subd. A, 533 (5), 535, subd. C.  State v. Hansbro, 796 So.2d 185, 35,027 (La.App. 2 Cir. 9/26/01). District attorney are empowered to amend indictment to charge lesser offense.  However, district attorney doesn't have power or authority to upgrade a bill of information to one requiring a grand jury investigation and indorsement.  The State may abandon the charge of a greater crime and proceed with prosecution for the lesser crime, and no formal indictment is necessary for the purpose.  Lack of a "true bill" endorsement is an error patent. State v. Hansbro, supra.  In instituting prosecution by bill of information State violated defendant's right to Due Process and to fair and impartial trial under law and constitution.  State knew prosecution of R.S. 14:42 instituted by bill of information is not supported by law and const., therefore is a reversible error.  See State v. Donahue, 355 So.2d 247.

## ERROR 8

State erred in its' closing argument where Asst. District Attorney knowingly misrepresented, mischaracterized, misquoted, miscited facts and authorities in oral and written communication to the court.

SECTION 1.

In closing argument, State asserted Mrs. Thompson said she, could see very clearly in the light coming through the doorway David L. Williams. The record shows (T.Tr. 55) she was in her bed when her attacker came upon her with the light to the perpetrator's back.  See Exhibit D2, initial police report exhibit E4-A, B, C.  Not one time did the victim call out or said defendant's name to police officers which leaves the logical question who did.  It appears the victim was speaking to Officer Tanya Bickham, a young black female who had grown up and around in the neighborhood.

Relator contends it was not the victim who brought up his name but Officer Bickham. State went on to assert, Mrs. Thompson say, "I told the police who came in on her was David." No such testimony was given by Mrs. Thompson.

Defense brought some vital points to the fron to the jury in his closing argument. "The identification of this man, I don't think is very strong." "I'm telling you that under reasonable doubt concepts, no. This man has not been proven guilty beyond a reasonable doubt. I don't think this man has even been I.D.'d. I don't think that at all." (T.Tr. 168-9). Mr. Ford was correct, defendant was never properly identified outside of in court I.D. There was no corporal lineup on the morning of the attack nor thereafter if defense attorney had investigated he would have known for certain that his client was never properly I.D.'d and could presented a much more effective defense. Anyone can come to a courtroom and point a defendant out at the counsel table, the only black man at the table in front of courtroom. (T.Tr. 51). Again, referring back to (T.Tr. 55) Mrs. Thompson testified, she was on her bed when her attacker came upon her which is a direct contradiction that she got out of bed went up the hallway and immediately recognized her attacker. To further stress this contradiction in the victim's testimony at trial, Mrs. Thompson in her statement to police officers Lynn Armand and Connie Tonya Bickham said, "I jumped up in the bed, sat up in the bed to see if I could see anybody or anything he entered the door." (Exhibit E4-A). Clearly Mrs. Thompson is still in her bedroom and in her bed when the attack took place. The contradiction here is that Mrs. Thompson can't be in two places at one time. She can't be in her bed when the attack took place. She can't be in her bed where she was asleep and awaken by noise in her home and just as she attempted to get out of bed her attacker converged upon her suddenly, and at the same time be in the hallway leading to the bathroom and through to the dining room where she sees her attacker coming in the dining room. It's not humanly possible for anyone to be in two places at one time. (T.Tr. 55).

Mrs. Thompson further states, "And that's what waked me up, really (referring to the noise she heard) and when I looked up and saw it was a man, I commenced screaming, he rush for me and said hush up, I'll kill you." (T.Tr. 50-1, 55)(Exhibit E4-A, Exhibit D2). Her statement here coincide with her testimony that she was in her bedroom in bed when the attacker came upon her and contradicting her statement that she saw the attacker clearly in the hallway. Mrs. Thompson further states under cross examination by Mr. Ford, "I recognize him when he was, when he got in the door of the dining room. He had come through the kitchen and the dining room . . . I could see perfectly who it was and other than that, I never would have known." (T.Tr. 60). I ask court to scrutinize Mrs. Thompson's

testimony carefully in that all the contradiction show she never saw her attacker's face clear at anytime during the attack on, but her story was concocted by her and Asst. District Attorney to produce a wrongful conviction. See Exhibit D2 drawing house in relation to Mrs. Thompson testimony that she saw her attacker when she stated in (T.Tr. 55) that she was still in the bed.  See also initial police report (Exhibit E4-A thru D).

SECTION 2.

As in State v. Sullivan, 596 So.2d 177, 186, relator asserts the prosecutor misstated or didn't give and apply the applicable law and the judge's instruction did not alleviate the problem by providing a clear and unambiguous statement of the law and the jury's responsibilities.

Assist. Prosecutor explains to what aggravated rape is.  (T.Tr. 12) (1) Where the victim resisted the act to the utmost but whose resistance was overcome by force, or (2) where the victim is prevented from resisting the act by threat of great and immediate bodily harm accompanied by apparent power of execution or (3) where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.  (T.Tr. 12).  What prosecution neglected to inform jury is that to prosecute relator for the crime of R.S. 14:42 required that he be indicted by a grand jury.

SECTION 3.

Prosecutor repeated insinuated defendant lied or was lying directly or indirectly before the jury. (T.Tr. 138).  As to question #4, T.Tr. 144, defendant never said he couldn't remember what had happened before he went to Covington, La., or after he was awaken when he arrived back in Franklinton, La., only while he was in Covington, La., his memory isn't clear because of heavy drinking and smoking marijuana.  (T.Tr. 159-60).

SECTION 4.

Mr. Knight asserted to the jury; "She (Mrs. Thompson) went to the doctor.  She went to se Dr. Wickboldt and Dr. Wickboldt was accepted by this Court as an expert in internal medicine.  What did he tell you?  That there was a tear in the vaginal opening.  He said there was also an abrasion on the cervix deep within the vagina.  He said there was also seminal fluid deep within the vaginal opening, which was pooled toward the back of the vagina.  All of this is consistent with forcible sexual intercourse." (T.Tr. 155).

However, Dr. Wickboldt actually stated, when asked by Mr. Knight in a hypothetical question about the abrasion on the cervix which he described as, "An abrasion is a superficial tearing of the surface, much like a brush burn." It would be caused by "over-expansion." Dr. Wickboldt testified this was consistent with intercourse, not forced intercourse as prosecutor misquoted and misled jury to believe. (T.Tr. 106-110). Dr. Wickboldt never testified it consisted with forcible rape as District Attorney asserted before the jury. (T.Tr. 155). It must be noted that the technician Mr. Jerry Miller stated that in a case like this, "It is possible, that there was a mixture of A and O antigens, not that there were. (T.Tr. 124). On further questioning, Mr. Miller stated "that in a case like this, . . . of course, you can only suggest there's going to be a mixture of fluids there, like vaginal secretion and spermatozoa or seminal fluids . . . ." Q. "Okay, in this particular case also there is a possibility that some of the Hanigens can be coming from another type A secretor. I cannot say for sure." (T.Tr. 128). Q. By Mr Ford: "Possible, not probable?" A. "Well, I can say in this particular case that whoever left the stain can be a type O secretor or maybe a type A secretor also, the same as the victim." (T.Tr. 129).

SECTION 5.

In cross examination of the defendant by Mr. Knight. "Mr. Williams, you've heard the testimony of the doctor who testified you had seminal fluid in your penis at the time he examined you." (T.Tr. 142). What Dr. Wickboldt state was, "I more or less milked the penis in an attempt to obtain some fluid from the urethra. There was a small amount of fluid obtained. "There was a little bit of fluid, in milking the penis in an attempt to get anything out of the urethra . . . there was a small amount of fluid at the opening of that urethra." (T.Tr. 108).

> Q.   This was something which would have to be examined
> microscopically to determine the exact nature of the fluid?
> A.   That is correct. (T.Tr. 109).

It must also be noted that the same doctor stated later, "that such fluid . . . could be in the urethra for prolonged period of time." (T.Tr. 112).

Technician Mr. Miller stated that it take spermatozoa twelve to twenty-four hours to deteriorate. (T.Tr. 127). Court should take note it was only 3-4 hours from arrest to examination and the taking of samples. One might ask how long did it take from the examination to the crime lab, in that case the same can be asked about the victim samples yet spermatozoa was found in her sample and they were submitted at the same time.

Mr. Miller also state, "We did not really have enough on the swab there to really test to (get a type off it)." (T.Tr. 126). This was in answer to Asst. Prosecutor's question if he was able to make a match from the seminal fluid on the swab from the defendant with the seminal fluid found within Mrs. Thompson.

Q. By Mr. Knight, "Alright, sir, but the fluid obtained from the defendant, David L. Williams, which was contained in the rape kits, was seminal fluid containing spermatozoa, is that correct? A. "On that urethral swab we got an (indication) of seminal fluid. There was no spermatozoa found." (T.Tr. 126). In essence Mr. Miller's statment shows there were no physical evidence to link defendant to the rape of the victim.

SECTION 6.

Assistant prosecutor stated to the jury: "She (Mrs. Thompson) remembers that $286.00 . . ." (T.Tr. 171). However, the record reflect she never said she remembered the $286.00 as being hers. When asked to identify the money as State's #1 she stated, "Well, I can tell you what was in there. I had $100.00 bills, four $20.00 bills. One $5.00, and one six, one $5.00 bill and one $1.00 bill" (T.Tr. 56). This amounts to $297.00 dollars not $286.00 that she said was hers.

Assist. Prosecutor also tell jury, "She (Mrs. Thompson) also told the police officers, "I had $286.00 and some few cents left over from when I made my groceries from my check," and she was able to identify the amount of money (T.Tr. 156). What the victim already stated to police officers in initial report that the district attorney withheld from defense is, "I had took a hundred dollars out to pay something and I think I had around three hundred and eighty-three hundred and eighty dollars or something like that. (Exhibit E4-C). Mrs. Thompson told police officers that her attacker took, "Nearly four hundred dollars in case," from her. Again prosecutor knowingly, misquote and misrepresent victim to gain an illegal sentence and conviction.

SECTION 7.

District attorney erred when he used tactics of prejudice to gain sympathy for the victim to gain a wrongful conviction in violation of art. 774, art. 770, art. 771, art. 775(3)(5); R.S. 15:452 which state, No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel a confession of crime. C.Cr.P. 5.

Throughout trial prosecutor argument appealed to passion and prejudice at both phases of the trial. In cross examination prosecutor asserted, "Isn't it true that she's (Mrs. Thompson) been cooking for your family since your mother has been dead and try to help you all out a little bit." (T.Tr. 140).

Prosecutor knew his statement not to be true and factual. His statement was wholly for prejudicial purposes and outside evidence and record developed at trial. His state was only to vouch for the credibility of the victim. His statement only served to inject an extraneous issue into the trial. See Berger v. United States, 295 U.S. 78, 55 S.Ct. 629. "Prosecutor's duty is not only to use every legitimate means to bring about a just conviction, but to refrain from improper methods calculated to produce a wrongful conviction." State v. Sullivan, 596 So.2d 177; 295 U.S. 78, 55 S.Ct. 629.

Prosecutor used sympathetic tactics throughout the whole trial to pull jury's attention away from the true fact that the state did not have evidence to convict defendant of aggravated rape. Prosecutor used terms and phrases such as, ". . . as you will be told when she testifies, is an eighty-two year old lady." (T.Tr. 45). ". . . she was further prevented from resisting because of the great disparity in size between herself and the defendant. You will have an opportunity to see Mrs. Thompson when she take the stand, and you will note she is a slight, elderly lady." (T.Tr. 48). "She simply does not have the physical ability to resist. "The main witness obviously was Mrs. Ethel Thompson. She is an elderly lady. She is eighty-two years old. She is a rather small lady. She is rather crippled with arthritis. She has some trouble getting around." She is a remarkable eighty-two year old lady. She is doing extremely well for her age. You have also seen the defendant. You have seen his physical size. He's a big, burly, robust young man. (T.Tr. 151). "You remember when she was on the stand she said, "Oh no, oh no, no," and he told her to be quiet or he would cut her head off. Now that, ladies and gentlemen, is the voice of somebody when he's that size who means he is going to do what he says he's going to do." (T.Tr. 153). Now place yourself in Mrs. Thompson's shoes for just a moment and look at the size of her and the size of the defendant and ask yourself if you believe that she believe that the defendant was able to carry out his threats. I am certain you would be under those circumstances. I'm not in Mrs. Thompson's age and condition, and I certainly would believe it. (T.Tr. 154).

SECTION 8.

Prosecutor went so far as to insinuate that defendant should have been mentally and physically torture to confess to the crime in violation of R.S. 15:452, art. 770-1, 774-5(3). No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel a confession of crime.

I submit to you, ladies and gentlemen of the jury, the defendant is having selective memory lapses. He doesn't want to tell you what he remembers about that night. He doesn't want to admit to

you what happened that night, but if he is pressed, and we could press hard enough and make him tell the truth, then I believe the truth would be that he went to Mrs. Ethel Thompson's house and raped her that night, but he's not going to remember that. (T.Tr. 159).

Relator contend that judge should declared mistrial even if defense attorney didn't object sympathy plea and prejudicial remarks under art. 771, 770, 774, 775(3), by prosecutor for no other then fairness and justice.

Again prosecutor appealed to jury for sympathy, "I want you to think about what has been said from this stand. I'm going to cut your head off... I'm going to rip your guts out." Over and over and over again to an eighty-two year old lady by a twenty-four year old defendant, who is as big as a barn. What else can an eighty-two year old little lady to do against a big robust man." (T.Tr. 172, 173). The initial police report of the victim shows prosecutor's exaggeration on how many times perpetrator told her he would harm her. (Exhibit E4-A thru E4-D).

SECTION 9.

Mr. Knight further engaged in an effort to intimidate defendant while on the witness stand and to bully him before jury. Cross examination by Mr. Knight of relator:

Q. You don't have any explanation for how that money got under you couch where you were sleeping that night, though, do you? A. No. I don't, but who said the money was Mrs. Ethel Thompsons'? The money was taken to her. Anybody that see they have some money missing that come from a person's father, say the money came from my father, and knowing my father, he took it over there and she knowing how I am his son, knowing that somebody had stolen some money from her, she could have just said that was her money, wouldn't necessarily mean that mark was on there could have recognized it. If you will -- Q. I will ask question, Mr. Williams. Thank you.

By Mr. Ford: Your Honor, he's trying to explain his answer right now.

By Mr. Knight: I think he's trying to give a dissertation, your Honor, which I would object to at this point. I would ask the question --

By the Court: You are instructed to let him answer the question and you are instructed you are not to ask questions, simply to answer the question as presented to you.

By Mr. Knight: Thank you, your Honor. (T.Tr. 143-4).

Clearly, Asst. Prosecutor didn't want relator to answer a question with a queston so he sought to bully and intimidate and embarrs relator before the jury because his case was weak against relator and wasn't built on facts of evidence nor law but on half truths and deception in order to manipulate

the jury to gain sympathy for the victim for a wrongful conviction and sentence of life imprisonment of relator. See Berger v. United States, 295 U.S. 78, 55 S.Ct. 629.

Relator contends that prosecutor's misrepresentation of witnesses, misquoting and misciting of facts, and misstatement of the applicable law the judge's instruction did not alleviate the problem by providing a clear and unambiguous statement of the law and the jury's responsibilities. See United States v. Bagley, 105 S.Ct. 3375, 3381. "If the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." Id. at 113, 96 S.Ct. at 2402, Agurs.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecutor attorney, will be faithfully observed. Consequently, improper suggestion, insinuations, and especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633. For this reason, relator's conviction and sentence should be reversed and vacated.

## ERROR 9

> State erred when it withheld favorable material in its' possession, exculpatory and impeaching the form of initial police report and supplementary reports.

Prosecutor knowingly withheld the police report of Mrs. Thompson initial statement to officers which could have been used to impeach state's primary witness Mrs. Thompson in that she testified she saw her attacker clearly, that she identified her attacker to police officers, that she did facilitate and induce the sexual assault upon her by conduct in conversing in improper manner, that the money $286.00 Mrs. Thompson identified as hers may not have been hers because of the actual amount stolen was nearly four hundred dollars and the fact that the victim never gave officer any identifying mark of money if it had been recovered, police report shows there is a time variance that defense could have used, police report show the victim was never struck at any time and there was no resistance on the part of the victim to resist the act of intercourse. (Exhibit E4-A thru D).

Prosecutor withheld crime laboratory report that shows a comb was taken from the crime scene left by the perpetrator which would have presented fingerprints and hair sample. (Exhibit B).

Prosecutor withheld supplementary report from defense if defense had retained as it had asked for, it could have shown no money was never identified to police officers, the configuration of the house that contradict victim story she saw attacker. See (T.Tr. 55). Document also shows victim took

a bath before calling police. One would have to think what effect her bathing had on the evidence. Exhibit D2.

Prosecutor withheld supplementary report #3 which shows Officer Lynn Armand was left at crime scene to life fingerprints and take photographs which was not introduced into evidence at trial.

Relator contends prosecutor knowingly withheld from court and defense that State was going to use Officer Connie Bickham as witness at trial in order that she would not be asked certain questions which would have revealed that she was actual source of identifying relator as perpetrator of crime against victim. See Witness List (exhibit E4-G). Prosecutor used trial by ambush or prosecution by ambush by not placing Officer Bickham on witness list when State intended to use her the whole time. See Exhibit E4-H thru I, Exhibit E4-K emergency record, exhibit E4-K2 radio log, exhibit E4-A thru E4-D) which shows Officer Bickham one of the officers taking the victim statement, and the other Officer Patrolman Lynn Armand who was not on the witness list. However, should have been because Officer Armand took initial statement from victim and could have cleared all the contradictory and contrary statements made by the prosecutor and Mrs. Thompson. If this evidence had been given to defense and introduced at trial defense could have caused considerable doubt on State's case against relator as perpetrator of crime aggravated rape and invariably would have resulted in a not guilty verdict of relator's innocence.

Although Office Bickham had definite role in the investigation of the assault on the victim her courtroom testimony was restricted to her only transporting the rape kit of the victim from the hospital to Officer Harold Varnado. (T.Tr. 78-9). Officer Bickham's testimony is somewhat different from other officer's testimonies in that the prosecutor didn't ask certain questions of tampering with the evidence although she had handle it. For instance, when Officer Varnado testified prosecutor asked, "During the time it was in your possession did you alter or change it in any way? (T.Tr. 81). Q. "Now at any time while State's #5 was in your possession did you change or alter it in any way? (T.Tr. 82). Q. During the time it was in possession, was it altered or changed in any way? (T.Tr. 85). Officer Denver Miller is now asked the same line of questioning, "Was it changed or altered by you in any way during the period of time you had it in your possession?" (T.Tr. 87). CHIEF WADE BATEMAN is asked the same as to evidence, "Alright, sir, State's #3 and State's #4, have they been changed or altered at any time during the period of time they were in your possession?" (T.Tr. 89). Q. "Has it been changed or altered in any way at any time during the period you had it in your custody?" Q. "Has it been changed or altered by you in any way since you received it back from the

crime lab?" (T.Tr. 90).  Q.  "Was it changed or altered in any way while it was in your custody?

(T.Tr. 91).  Officer Bickham was not asked any of these questions of changing or altering the evidence.

Officer Miller testifies no one else had access to the car where he had placed evidence,

however, relator contends others did have access to evidence one being Officer Bickham who was

there at that time and had means and motive for tamper evidence, because Mrs. Thompson was relative

of hers.  Officer David McNish he took Mrs. Thompson to hospital and said that he was the only

officer there.  (T.Tr. 100).  However, hospital emergency room record show Officer Bickham was

there as well.  (Exhibit E4-K).  Relator contends the only tangible evidence prosecutor had to

implicate him in crime was the A antigen on his underwear which was weak evidence at best and was

placed there by officer or officers to further implicate as perpetrator.  Relator asserts that the evidence

was tampered with although he cannot prove it by the record.

Prosecutor withheld D.A's file from defendant until well pass the three year deadline for PCR,

and trial transcripts as well as the knowledge of being illegally prosecuted by the State by bill of

information.  Exhibit A and C.  Relator had asked for trial records as early as December 15, 1983.

Relator did not receive any court document from the 22nd Judicial District until January 29, 1999, Bill

of Information; Exhibit-C; July 8, 2002, D.A.'s file.  Relator contends it took him (3) years to save

enough money at $0.02 an hour to be able to buy court transcripts from Louisiana Supreme Court.  See

Exhibit F; F-1; F-2 A thru F-2-D.  This willful misconduct on the State's behalf hampered defendant's

effort to a great degree in his quest for justice and fairness in the Judicial process of law.

District attorney denied relator equal access to evidence to conduct independent study and

testiing of all evidence introduced in the trial.  See Motion for Pre-tial discovery.

Relator contends that district attorney's file and its' contents are newly discovered evidence

presented to him July 8, 2002.  Relator filed a PCR writ June 13, 2003 seeking relief.  However, he

was denied by the district court and later the Louisiana Supreme Court, January 28, 2005, in part.

Allegation that State suppressed material exculpatory evidence at trial in violation of Brady

and that defendant and his attorney did not know of claim until defendant obtained documents pursuant

to Public Records Act raised claim falling under statute providing exception to 3 yr. time limit for

filing for post conviction relief.  LSA-C.Cr.P. art. 930.8, subd. A(1); LSA-R.S. 44:1 et seq., Winn v.

Louisiana, 685 So.2d 104.

Withholding of exculpatory evidence under certain circumstances may constitute event "under

control of the State" for purpose of statute providing exception to 3 year time limit for filing

34

application for post conviction relief. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In re Thompson, Keith, plaintiff(s): applying for supervisory and/or remedial writ; 480 Parish of Orleans, Crim. District Court, Div. E, No. 304-916 to the Court of Appeal, Fourth Circuit, No. 92-KW-2278. Writ granted, case remanded. Relator in the instant application alleges on the basis of a police report obtained after his conviction that the State suppressed material exculpatory evidence at trial and that his present constitution claims therefore rest on facts not known to him or his attorney as set out in La.C.Cr.P. art. 930.8(A)(1), which provides an exception to the 3 year time limit filing application for PCR. Accordingly, the judgment of the 4th Circuit is vacated and this case is remanded to the court of appeal for reconsideration of the district court's ruling that relator's application was otherwise barred by the repetitive application provisions of La.C.Cr.P. art. 930.4. State ex rel. Thompson v. State of Louisiana, 661 So.2d 479 94,0480 (La. 10/13/95); State ex rel. Gregory Cormier v. State of Louisiana, 731 So.2d 274, 1998-2111 (La. 12/18/98); La. Const. Art. 1 § 16.

Relator asserts that the State withheld initial police report, supplementary reports to conceal truth from defendant, his lawyer, and Court and jury that he and victim conspired together obtain a wrongful conviction.

Relator asserts that the State withheld information from defendant, his attorney, Court and jury in the initial police report. First, that Officer Bickham was the radio dispatch officer on duty the morning of crime. See Exhibit E4-K2. Second, that officer Bickham was one of the officers along with Officer Armand who took victim's official statement. Exhibit E4-A thru E4-D.

Relator asserts that the State withheld the Emergency Room Record from defense, show officer Bickham was also at the hospital same time officer McNish testified he was the only officer at hospital with victim. Exhibit E4-K, T.Tr. 100.

Relator asserts that prosecutor intentionaly misled defense and court by keeping officer Bickham's name off the witness list when it had full intention to put her on the stand as witness to avoid more serious questioning. Exhibit E4-G, Exhibit E4-H, I, J.

Relator asserts that prosecutor withheld initial police report from defense showing officer Armand was one of the officers taking official statement from the victim and was not placed on witness list as material witness to avoid more serious questioning and fact finding. Exhibit E4-A thru E4-D.

Relator contends that the prosecutor that the prosecutor adversely affected the adversarial process of the trial in denying defense the records that had been requested from the start of trial, therefore, making defense counsel ineffective throughout trial and denying relator a fair and impartial trial.

In a long line of cases that include Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), this Court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitutional guarantees a fair trial through the Due Process Clause, but it defines the basic elements of the Sixth Amendment, including the counsel clause: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." Thus, a fair trial is one in which evidence subject to a adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding.  The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendant the "ample opportunity to meet the case of the prosecution" to which they are entitled. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

Because of the vital importance of counsel's assistance, this Court has held that, with certain exceptions, a person accused of a federal or state crime has the right to have counsel appointed if retained counsel cannot be obtained.  See Argersinger v. Hamlin, 407 U.S. 25.  That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The 6th Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. Strickland, supra.

In cases in which the government acted in a way that prevented defense counsel from functioning effectively, we has refused to require the defendant, in order to obtain a new trial, to demonstrate that he was injured. Strickland, supra. Due process clause requires State to provide to

defense any information which is in State's possession, if favorable to accused, and is material to guilt, including impeachment information. U.S.C.A. const. Amends. 5, 14.

The State is required to provide to the defense and information in its possession which is favorable to the accused and is material to guilt. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This, of course, includes exculpatory and impeachment information and the "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. U.S. v. Bagley, 473 U.S. 667.

Relator contends that prosecutor refusal to hand over Brady material and notify defense of officers Bickham as a witness for the State and the absence of officer Armand was a violation of the confrontation clause set out in Davis v. Alaska, 415 U.S. 308. Also by withholding police report and supplementary report State prevented defense from making adequate inquiry into the fact of the case prosecutor presented against him.

Constitutional right of accused to be confronted with witnesses against him means more than being allowed to confront witnesses physically and a primary interest secured by it is the light of cross-examination. U.S.C.A const. Amend. 6.

> " . . . cross-examination is not only permitted to delve into witness' story to test witness' perceptions and memory but is traditionally allowed to impeach, that is, discredit the witness. Partiality of witness is subject to exploration at trial and is always relevant as discrediting witness and affecting weight of his testimony. Denial of right of effective cross-examination was constitutional error of the first magnitude so that no amount of showing of want of prejudice could cure it." U.S.C.A. const. Amend. 6.

Relator contends had it not been for prosecutor withholding police report and supplementary police report relator's constitutional right to confront witnesses present and absent would not have breached and he would have been able to show main witness was unbelievable in instant case.

Relator who was prosecuted for aggravated rape, was denied his constitutional right of confrontation of witnesses in state trial where he was precluded by State prosecutor's withholding Brady material from cross examining key prosecution witnesses, Mrs. Ethel Thompson, Officers Bickham and Armand to show that main witness was not telling the truth about incident in the case against relator. Moreover, police report show where victim stated that $286.00 was hers, the report states it was $383.00 or nearly four hundred dollars was stolen. Where victim states she recognized her attacker, and told officers his name, the report clearly show she never got a good look at the perpetrator and never called Relator's name. Where victim stated she resisted the attacker, record

reflect she did not resist and in fact induced and facilitated the assault through her conversation. Defendant and jurors were entitled to all material evidence presented to them. First, that defense would to effect adversarial process of trial in fact finding and that the end result would have ended in a fair trial through due process. Second, that jury would have all evidence before them in order to render a reliable and valid verdict.

Relator contend that serious damage to the strength of the State's case would have been a real possibility had defendant been allowed to have Brady material and to pursue a line of argument and of inquiry based on the information of those documents.

The 6th amendment to the constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in State as well as federal criminal proceedings under Pointer v. Texas, 380 U.S. 400 (1965). Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the (confrontation) clause hold that primary interest secured by it is the right of cross examination.' Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

In United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), the court held that due process is violated when the testimony is made unavailable to the defense by Government deportation of witnesses "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." Whenever the government fails, in response to a request, to disclose impeachment evidence relating to the credibility of its key witnesses, the truth-finding process of trial is necessarily thrown askew. The failure to disclose evidence affecting the overall credibility of witnesses corrupts the process to some degree in all instances. See Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

(Marshall, J., dissenting), but when "the reliability of a given witness may well be determinative of guilt or innocence.' Giglio, supra. Without Mrs. Thompson's testimony there could have been no case, there was no indictment against relator, and no evidence to carry the case to the jury. Mrs. Thompson's credibility as a witness was therefore an important issue in the case, and evidence perjury, contradiction and inconsistency would be relevant to her credibility and the jury was entitled to know of it. What has happened to relator amount to nothing more than false imprisonment by the State. La.C.Cr.P. art. 465.

Relator contends that because he was denied Brady material relevant to his innocence, he was also denied access to court by State in refusing him adequate remedy by due process of law and

justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.  See Barefoot v. Texas, 463 U.S. 880, 103 S.Ct. 3383.  Since the truth-seeking process has been unfairly skewed a new trial is warranted.  See State v. Bright. Nevertheless, it is important to note that Brady and its progeny do not establish a general rule of discoverability, and not every case in which it is discovered post-trial that favorable evidence was withheld by the State will result in a reversal of the conviction.  "A prosecutor does not breach any constitutional duty to disclose favorable evidence unless the omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.  U.S. v. Agurs, supra.  For purpose of Brady's due process rule, a reviewing court determining materiality must ascertain not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. Kyles v. Whitley, 514 U.S. 419 (1995).  This, the reviewing court does not put the withheld evidence to an outcome-determinative test in which it weighs the probabilities that the petitioner would have obtained an acquittal at trial or might do so at a second trial.  Instead, a Brady violation occurs when the "evidentiary suppression undermines confidence in the outcome of the trial." Kyles, supra.

In his District attorney's procedural objection to petitioner's post conviction relief, Dale e. Branch and court denied relator's writ on grounds of art. 930.8.  August 5, 1999 based on newly discovered evidence, and before that a post conviction relief claiming, evidence was insufficient to withstand the verdict of guilty, and another PCR claiming ineffectiveness of counsel.  And each time petitioner was denied relief.  District attorney in stating (In State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995).  La. Supreme Corut held that: "1.  Article 930.8 which limits the filing period for most applications for post conviction relief to three years, and allowing petitioners whose applications would have been barred on effective date of rule one year to file, did not violate federal or State due process clause, habeas corpus clauses, or ex post facto clauses, or the State constitution clause guaranteeing right of access to courts.

2.  The statutory requirement that the trial judge inform the defendant of the limitation period for post conviction relief is supplicatory language and does not bestow an enforceable right upon an individual defendant.

3.  Even if the trial court reached the merits in an untimely filed application for post conviction relief, this did not preclude the Court of Appeal from invalidating application on the basis of a time bar.

In effect, the Supreme Court has held that the time bar contained in Article 930.8 is absolute unless the defendant can substantially allege that one of the exception applies. None of the exceptions apply in this case.

District attorney erroneously assumed relator could not apply for post conviction relief. First, C.Cr.P. art. 930.8 was enacted well after relator conviction therefore, creating an ex post facto law prohibiting him relief through due process of law. See State v. Masino, 216 La. 352, 43 So.2d 685, 214. Second, relator was never notified of a one year grace period by sentencing judge. Third, Art. 930.3(A)(B) preclude art. 930.8 because the conviction was obtained in violation of the constitution of the United States and the State of Louisiana and the court exceeded its jurisdiction in violation of C.Cr.P. art. 765(2).

Allegation that state suppressed material exculpatory evidence at trial in violation of Brady and that defendant and his attorney did not know of claim until defendant obtained documents pursuant to Public Record Act raised claim falling under statute providing exception to 3 year time limit for filing applications for post conviction relief. LSA-C.Cr.P. art. 930.8, subd. A(1); LSA-R.S. 44:1 et seq.

Withholding of exculpatory evidence under certain circumstances may constitute event "under control of the state" for purpose of statute providing exception to 3 year time limit for filing application for post conviction relief. LSA-C.Cr.P. 930.8; State ex rel. David A. Winn v. State, 685 So.2d 104, 95-0898 (La. 10/2/96).

In his conclusion, district attorney asserted "In enacting C.Cr.P. art. 930.4, the legislature has given its clear intention that it wants to establish a point in time when a defendant's conviction becomes final.

Relator contends 'how can there be finality in this instant case, when there's been gross misuse of the law and his individual right as a citizen of the United States and of the State of Louisiana. Relator has from the very start of case against him, has protested the charge against him were and is illegal because legal representative and offices of the court did not follow the rules and laws of federal and state guidelines and the constitutional right to a fair trial and the constitutional right to due process.

For the facts and reasons stated relator contends his sentence and conviction should be reversed and vacated.

The knowledge of this evidence raises a very important question as to whether or not relator was convicted for someone else crime.

Under Louisiana law, when a petitioner alleged Newly Discovered Evidence, the following requisites must be met: (1) the evidence must have been discovered since the trial; (2) the failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; (3) the evidence must be material to the issue at trial, and (4) the evidence must be of such a nature that it would probably produce an acquittal in the event of a re-trial. La.C.Cr.P. art. 851. Also, under Louisiana law, it is clear that the new evidence must be so material that it ought to produce a verdict different from that rendered at trial. State v. Clayton, 427 So.2d 827 (La. 1982). For purpose of Brady's due process rule, a reviewing court determining materiality must ascertain: not whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. [Emphasis supplied]. Strickland, supra.

First of all, as stated earlier, relator discovered this evidence on July 8, 2002, after obtaining his D.A. files. See Exhibit-A, a letter from the D.A.'s office. Relator's trial was held on March 15-16, 1982, therefore it is clear and evident that this evidence was discovered since trial.

Second, the failure to learn of the evidence at the time of trial was not due to the defendant's lack of diligence. Relator's first attorney Mr. Reggis Simmons pre-trial motions entitled "Motion for Bill of Particular" and "Motion for Discovery", on February 17, 1982, in which counsel specifically requested to know and be provided with any favorable or exculpatory evidence "Brady" material. Furthermore, the district court judge ordered the district attorney to furnish the defendant the particular requested material.

There can be no doubt as to whether or not there was a lacking on the behalf of the defendant to learn of this evidence. As can be seen, relator's attorney made an attempt to obtain this evidence by filing pre-trial motion to obtain this very type of information. Moreover, Relator himself filed countless motions to obtain the exact information over the year. See attached documents from as early as December 15, 1983 thru to July 8, 2002. However, relator had to wait until three (3) years and some months after 3 year time limit to pay for his own trial transcripts at an hourly wage of $0.02 an hour.

Third, the evidence in question is material to the issues at trial, simply becaue it was relator's theory of defense that he did not commit the crimes charged against him someone else did. Had the hair comb been disclosed to the defense, relator's attorney could have had scientific tests conducted

41

on the hair comb to determine if any hair fibers were left in or on the comb, and these hair fibers could have been tested to show that they belonged to someone else. Also, the hair comb could have been used at trial to show that someone other than relator had actually left the hair comb during the commission of the crime. Most importantly is the police report and the supplementary reports which could have been used to impeach the state's star witness, the victim, to show she never saw the perpetrator clearly enough to give or make an positive identification, that she never identified relator to police officers by name or otherwise as her attacker and that by her conduct she may have induced and facilitated the sexual assault against her. Moreover, relator could have used police report to show victim never identified any money to officers and the amount she claimed was stolen was far more than what she claimed at the trial. Defense and jury had right to know that Office Connie Tonya Bickham was one of two officers who took the victim statement of the crime, the officer Lynn Armands. Prosecutor used a deceptive poise by keeping Officer Bickham's name from appearing on the witness list. However, bring to trial and have her testify to relatively minor issue but had it been known to defense her true involvement in the entire case could brought out the truth about who really brought up relator's name and other important issues of the case and the same is true of Officer Lynn Armands.

It is to be determined that this is a rape case, and evidence of this nature is very valuable to the defense in preparing and presenting its case, which it was denied by the State. The State prevented the defense from presenting exculpatory and impeaching evidence to the jury in its behalf which jury had a right to hear and examine to conclude a fair and just verdict and sentence. By all means, the undisclosed evidence was materially relevant.

Fourth, the new evidence is of such a nature that it would probably produce an acquittal in the event of a re-trial. If this new evidence was presented to a new jury, there is a strong probability that an acquittal would result simply because the defendant would have strong and sufficient evidence to support his defense and undermine the State's case, by presenting evidence that the hair comb was left by the perpetrator other than him and police report and its supplementary reports to show that State case centered mainly around the testimony of an 82 year old woman who had perjured herself on the witness stand. There is every reason to believe had the hair comb been disclosed and along with police reports to the defense, and had the defense conducted tests on the hair comb for hair fiber and fingerprints, there is a strong possibility that the test results would have shown that the hair comb and fingerprints belonged to someone else other than relator, meaning the wrong person has been convicted and detained for over twenty-three years.

It is submitted that relator has made a clear showing that the newly discovered evidence would produce a different result or an acquittal in the event of a re-trial, and relator feels as though he should be granted a new trial in the Interest of Justice. In State v. Perron, 660 So.2d 903 (La.App. 4 Cir. 1995), the court held that defendant's claim that newly discovered evidence would change the verdict should be considered as a motion for new trial. La.C.Cr.P. art. 851(3)(4) Grounds for New Trial:

> The court on motion of the defendant, shall grant a new trial whenever:
>
> (3) New and material evidence that notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict of judgment of guilt.
>
> (4) The defendant has discovered, since the verdict or judgment of guilt, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant was not discovered before the verdict or judgment.

In further support that relator was denied his constitutional right, relator relies on the fact that when a request, whether general or specifi in nature is made, the State/prosecution has an obligation to disclose such information under Brady v. Maryland, supra.

The duty to disclose evidence is a continuing one. La.C.Cr.P. art. 729.3. It is clear from the record that the State did not adhere to its duty.

> "If it can be shown that the State, after request for evidence material to issue and favorable to the defense, has deliberately withheld from the trial specific evidence favorable to the defense, error would warrant reversal of conviction." State v. Hodges, 526 So.2d 406 (La.App. 4 Cir. 1988).

Certainly, this information if it had been disclosed, would have been beneficial to the defendant, simply because the evidence was material to his guilt or innocence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Kyles v. Whitley, _____ U.S. _____, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Had the police report and its supplements been disclosed, defense could have proven main witness the victim committed perjury. Had defense not been deceived by State concerning all the witnesses their probative value defense could prove main witness had perjured herself.

Had the hair comb been disclosed to defense, petitioner's attorney could have had scientific tests conducted on the hair comb to determine if any hair fibers were left in or on the comb, and these hair fibers could have been tested to show the jury that they belonged to someone else and comb could have been dusted for fingerprints to show that someone other than relator committed the crime. It is to be remembered that this is a rape case, and evidence of this nature is very valuable to the defense

in preparing and presenting its case.  The newly discovered evidence had it been presented at trial, it would have created a reasonable doubt had it been presented at trial, it would have created a reasonable doubt in favor of the defense, and the outcome of the trial would have been different.

Non-disclosure of this evidence prior to trial had a cumulative effect on the defense trial preparations and this information should have been disclosed.  Sellers v. Estelle, 651 F.2d 1074 (5th Cir. 1981); United States v. Auten, 632 F.2d 478 (5th Cir. 1980); State v. Knapper, 579 So.2d 956 (La. 1991); Napue v. Illinois, 79 S.Ct. 1173 (1959).

Relator in closing, also avers that if DNA testing had been done on comb and other scientific, and fingerprinting, alone with the police report and its supplemental reports the outcome of the trial would have been totally different.

For reason and argument stated above, relator should be granted a new trial and or an evidentiary hearing contradictorily with the district attorney should be granted.  Relator also request that all pertinent records/documents be subpoenaed to settle the allegation raised in this matter.

Having met all of the requirements of Article 926.1, and the requirement for Newly Discovered Evidence, David Lee Williams respectfully request that his sentence and conviction be reversed and vacated and a new trial ordered.

ASSIGNMENT OF ERROR 10

INEFFECTIVE ASSISTANCE OF COUNSEL

Relator asserts his attorneys Thomas Ford and Sam Collectt was fatally ineffective during trial and sentencing.  And S. Austin McElroy and David J. Knight were ineffective during relator's direct appeal.

CONTENTION:

Relator contend that he was denied effective assistance of counsel when counsel fail to object to bill of information in open court as means of instituting prosecution of R.S. 14:42 aggravated rape, when he did not object to money being offered as evidence in a rape trial which only probative value was to prejudice against defendant, when he did not object to relator underwear being entered as

44

evidence when underwear was seized illegally under defective and illegal search warrant, when he did not object to judge's erroneous instructions to the jury, when he did not file any motion in behalf of relator.

Relator contends counsels were ineffective on direct appeal when they failed to file list of errors of assignment of the record and trial attorney fatal errors of defense.

Relator contends that his trial counsel was actually ineffective and adversarially ineffective partially due to State withhold Brady material sought before trial.

Relator contend trial counsel was ineffective when he did not object to prosecutor bullying relator on the witness stand, and did not object to prosecutor's prejudicial remarks and a indirect plea of sympathy for the victim to the jury and going outside of rebuttal rules.

PRINCIPLE OF LAWS:

In order for the defendant to properly perserve his objection to the "relevant evidence", C.E. art. 105; 401; 403-4, bill of information, underwear seized illegally, prejudice remarks, trial court's general charge to the jury, he must comply with the contemporaneous objection rule. An objection to the general jury charge is timely if made immediately after the jury is retired, and objection must be made of evidence when questionable evidence entered as evidence by State at that moment. State v. Edwards, 420 So.2d 663; State v. Prieur, 277 So.2d 126 (La. 1973); State v. Mack, 403 So.2d 8 (1981). In the instant case, defense counsel did not object to bill of information being read in open court, did not object to money and underwear being entered as evidence, did not object to the in-court identification, did not object to the trial court's instruction to the jury which fail to mention the essential elements of the crime, did not object to prosecutor's bullying of defendant on witness stand, did not object to prosecutor's prejudicial remark and remark made to jury outside of scope of facts and evidence of the trial.

ARGUMENT:

The right to counsel is a fundamental right of criminal defendant; it assures the fairness, and the legitimacy, of our adversary process. E.g., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. See Strickland v. Washington, 466 U.S. at 686, 104 S.Ct. at 2064; U.S. v. Cronic, 466 U.S. 648, 104 S.Ct. at 2039, 80 L.Ed.2d 657 (1984).

45

To establish the claim of ineffective assistance of counsel, a defendant must demonstrate that his defense attorney failed to meet the level of competency normally demanded of attorneys in criminal cases. State v. Fickes, 497 So.2d 392 (1986). The right of effective assistance of counsel does not require errorless counsel or counsel which maybe judge ineffective only on hindsight. Upon reviewing a claim of ineffective assistance, a court should inquire whether counsel violated some duty to the client and if so, determine whether the defendant was prejudiced by the violation. State v. Hartman, 479 So.2d 948 (1985); State v. Berry, 430 So.2d 1005 (1985). Here, counsel failed to object to the trial court's failure to instruct the jury on the essential elements of the crime. State v. Simms, 465 So.2d 769 (1985).

History and Fact of Case:

Relator was appointed as counsel Mr. Reggie Simmons for representation against the charges of R.S. 14:42 aggravated rape and R.S. 14:64 armed robbery. Counsel filed all necessary documents for a fair trial as trial minutes will show trial Judge abused his discretionary authority when he denied Motion to Quash bill of information and to examine State's evidence to show there was no grounds to which State could prosecute for aggravated rape and armed robbery. See trial minutes, chronological index, motion for pre-trial discovery, alternatively, prayer for oyer and answer which was filed twice on two separate occasions because of failure of the State to respond to the first request specifically for all recorded testimony before the Grand Jury. Of course there was not a grand jury in this case when there clearly should have been an indictment by grand jury.

After preliminary hearing and denial of motion to quash and inspection of State evidence, relator's counsel Reggie Simmons was removed from the case by the Court without notice for one reason only because he had laid the foundation work for a fair trial and he was prepared to fight for his client's right to a fair trial and due process of the law. The record reflect Judge James R. Stain, Jr., presided during arraignment, Bill of Information read in open court, January 28, 1982.

The record reflect Judge Thomas W. Tanner presided during preliminary examination, motion to quash bill of information was denied February 25, 1982.

Relator contends from February 25, 1982 until March 14, 1982 he did not know Mr. Reggie Simmons had been removed from representing him.

On the late evening hours of March 14, 1982, just hours from appearing before Judge Hillary J. Crain, for the charges of aggravated rape, Mr. Thomas Ford and Mr. Sam Collett came to the parish jail and informed relator they were now representing him and they were familiar with the case and

prepared to go to trial. Relator had no choice but to put his full trust in the attorneys since he was indigent.

It is at this point relator claim ineffective assistance of counsel, and dereliction of duty by Public Defendant Attorneys' Thomas Ford, Sam Collett and Public Defendant Attorneys' on direct appeal S. Austin McElroy, and David J. Knight.

Louisiana Rules for Court, State 2000

Article XVI, Rules of Professional Conduct:
Client-lawyer Relationship:

Rule 1.1(A) Competence:

A lawyer shall provide competent representation to a client. Competent representation require the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

Trial and Sentencing

Attorneys Thomas Ford and Sam Collett March 15, 1982 at this time, on motion of Mr. Knight, Asst. D.A. court severs the charges count II, R.S. 14:64 Armed robbery and proceeded with the trial on count 1, R.S. 14:42 Aggravated rape. Lead attorney Mr. Ford and or Mr. Collett should have raised objections to state's amendment on the ground the State had no authority to amend a charge of greater punishment. State v. Hansbro, 796 So.2d 185, 35,027 (La.App. 2 Cir. 9/26/01), which states in pertinent part, "District Attorneys are empowered to amend indictments to charge lesser offense. The State may abandon the charge of a greater crime and proceed with prosecution for the lesser crime, and no formal indictment is necessary for the purpose."

Relator contend there is no law that gives District Attorneys the authority to prosecute a charge which require a grand jury to institute which prosecutor did in this instant case in violation of La.Const. Art. 1 § 2-3, § 15-16, § 19-20, §22; United States Const. Article V - VII, amendment XIII - XIV; LSA-Crim.P. art. 382; art. 5, Art. 383, art. 462. State v. Donahue, 355 So.2d 247; State v. Demolle, 621 So.2d 167.

Relator contends that counsels Thomas Ford and Sam Collett were actual ineffective they knew their client was never indicted by a grand jury. See T.Tr. 1. However, a motion to quash bill of information had already been filed with the court by prior counsel Reggie Simmons earlier February 25, 1982. Mr. Ford and Mr. Collett should have known there was such a document in existence and acted upon it. If counsels were unsure of any pretrial motion they should have at start filed for a continuance that they may have time to prepare a defense and file what motion necessary.

Mr. Ford and Mr. Collett created a conflict of interest in the welfare of their client by not exposing the erroneous charge of aggravated rape instituted by bill of information thereby, contributing to the prejudice suffered during trial and ultimately being found guilty of charge and sentenced to life imprisonment. This was a direct violation of procedure and Mr. Ford and Mr. Collett did know that court proceedings were in jurisdictional error of prosecuting their client of R.S. 14:42 under bill of information instead of being instituted by grand jury indictment. Because of this neglect, there was significant prejudice against relator for lack of counsel's unprofessionalism, lack of knowledge, skill, thoroughness, and preparation reasonably necessary for the representation of relator David L. Williams.

Defendant's counsels erred when he failed to object to State presenting money and court allowing money entered as evidence against his client. Such evidence was not turned over to proper authority immediately after discovery.

Relator contends that State using money as evidence in the aggravated rape trial was inadmissible as evidence when relator was never tried and convicted of robbery therefore, State was not at liberty to say relator had stolen anything from Mrs. Thompson without a conviction of proof.

Relator contends using the money as evidence had no probative value in the case but to prejudice jury against the defendant. State v. Prieur, supra, states admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant; the probative value of evidence upon related offense in relation to the charge offense should therefore be weighed in light of its possible prejudicial effect, its tendency to influence the triers of fact improperly as to present guilt of accused. LSA-R.S. 15:445-6.

Evidence of crimes related to the offense with which a defendant is charged is inadmissible except under special exception. LSA-R.S. 15:445-6; State v. Prieur, supra. In order for the seizure of a thing to be upheld as constitutional, there must be a showing of probable cause that the thing seized is somehow related to a particular crime. U.S.C.A. Const. Amend. 4.

In order for the evidence to be admitted, the State need to show that the evidence is, more likely than not, related to the case. State v. Drew, 360 So.2d 500, 518-19 (La. 1978). See State v. Nuccio, 454 So.2d 93.

The only reason that the money was introduced as evidence was to perpetuate the State case in the minds of jurors of unproven accusation of theft in an aggravated rape charge against relator. Further, the money was not relevant to the State's case to prove Aggravated rape. However, it was

used to sway the jury minds from the fact that State had no real evidence to prosecute relator for aggravated rape, therefore, leading to an invalid conviction and verdict.  See State v. Easter, 756 So.2d 703, 32,940 (La.App. 2 Cir. 4/7/00), in pertinent part, La.C.E. art. 404 which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.  Louisiana C.E. art. 401 which provides, "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

It must be noted that victim could not and did not identify any money until after she had gotten it in her possession.

Relator contends counsel was adversarially ineffective in part due to State withholding police report and affidavit of statement of victim.

Documents obtained in the D.A.'s files secured July 8, 2002 Assistant District Attorney, Mr. Dale E. Branch, (exhibit E4-A thru E4-D), clearly testifies to her statement to police officers on the night she was assaulted or soon afterward to her contradictory testimony three months later to the court and jury.  She said on page 3, exhibit E4-C there was $383.00 taken from her and again on page 4 exhibit E4-D the victim said it was "Nearly four-hundred dollars" in cash, however, she never said to police officers that money could be identified by a "X" or "RED" writing on such and such bill nor did she say the money could be identified period.  It wasn't until she had gotten the money in her possession and had it for an hour or so that she said she knew the money was hers.  Of course she can identify any money at that point after having it and studying it for awhile.  Especially when she knew relator was arrested for the crime against her and if she reasonably believe relator was the one who raped and stole her money this would be a chance to get some of it back.  See, exhibit D5.  One must reason on this fact, the victim said in police affidavit nearly four hundred dollars or $383.00 stolen from her then her trial testimony it was $286.00 brought to her that she said was hers, the question is what happened to the remaining $97.00, there was nowhere to spend money in Franklinton, La., at 3 and 4 o'clock in the morning.  Police record and court documents show defendant was arrested very shortly after or within an hour or two after crime occurred.  (T.Tr. 47, 48).

Assistant Prosecutor asked Mrs. Thompson about money that was taken from her, her answer. "Well, as near as I can remember, I believe it was about $350.00.  To confuse jury assistant prosecutor imposed a question in a deceptive manner to make it appear she never saw the money until

49

presented to her by police officers. Q. "Alright, were you later shown some money by the Franklinton Police Department and asked to identify that if you could?" A. "Yes. Q. "Were you able to identify part of the money as being yours?" A. "I was." See T.Tr. 54 - 58; 72 - 78, 87, 156, 171. The money Mrs. Thompson said was stolen from her went from nearly $4.00 to $383, to $350.00 finally to $286.00. Relator's counsel was ineffective in that he had several options he could have taken to keep his client from being convicted wrongly by filing motion to suppress money that it had no probative value other than being prejudicial in the case.

Relator contends counsel erred in failing to file motion to suppress evidence of defendant's underwear and not objecting to State entering underwear as evidence.

Relator asserts affidavit supporting search warrant is invalid in that it gave not description of the assailant's height, weight, complexion, clothing or name, facial hair. Victim's own testimony in affidavit and trial is tantamount that she never saw the perpetrator face clear enough to give a positive identification. See Exhibit E4-A thru E4-D and T.Tr. 55.

Further, relator asserts there was no search warrant therefore, there was no probable cause to arrest and seize any evidence from him. In fact making any evidence seized illegal and any conviction obtained by said evidence is reversible. Relator contends that his underwear was seized in violation of his Fourth Amendment right, should have been excluded at trial in state court. See Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574.

Relator contends though there was a antigens presence on his underwear it was never proven that it came from the victim. State v. Fugler, 721 So.2d 1, 1997-1836 (La.App. 1 Cir. 9/25/98). States in pertinent part, to defeat presumption that affidavit supporting search warrant is invalid, defendant must proven by preponderance of evidence that affidavit contains intentional misrepresentation. Per Chiasson, J. Pro Tempore, with two judges concurring and assigning reasons. U.S.C.A. Const. Amend. 4; LSA-Const. Art. 1 § 5; LSA-C.Cr.P. art. 162; Fugler, supra.

Relator contends there was no searches and seizures warrant and therefore any evidence seized and used as evidence in a course of law was illegally obtained, [emphasis added] and therefore inadmissible.

It is evident that trial counsel made no attempt to suppress evidence used at trial, money which had no probative value and underwear which was illegally seized that help State to convict relator. Had trial counsel sought suppression of said evidence he would have succeeded and would have been successive in preventing his client from being wrongfully convicted.

Relator contends trial counsel fail to raise objection and to file motion to suppress in court identification.

Relator assert that in court identification was insufficient to implicate him as perpetrator of crime against Mrs. Thompson especially when there's little more than a general description of the assailant in the victim's affidavit to police officers. ". . . so the boy I'm thinking of, you know where he lives, up on the corner there in the same block with me." Exhibit E4-A. "I know he had on dark pants, I don't think I could describe them to you." Exhibit E4-B. Question by Armand: Could you give us a general description of him? Thompson: I don't know, I don't think he's as tall as you are. And heavier seemingly. Exhibit E4-C. Thompson: "Bushy headed." Bickham: What about his complexion? Thompson: "I think he was . . . I only saw him as he was walking in by the light, you see." Armand: thin-muscular built? Thompson: a big stout fellow. Exhibit E4-D.

Although, Mrs. Thompson in her in court identification pointed to relator as her attacker in front of court and the only black man sitting at the counsel table. Relator contends this was suggestive identification and it also lead jurors to believe it was proper identification when there were no lineup identification nor a photo I.D. to support the victim in court I.D. Even without police affidavit trial counsel had opportunity to impeach Mrs. Thompson testimony that she clearly saw relator as the perpetrator of the crime against her. (T.Tr. 51). See (T.Tr. 55) and again (T.Tr. 60) under cross examination by Mr. Ford. Trial counsel had good reason to question the identity of his client as the victim's attacker from her very own statement, however, counsel did not. Therefore, leading to the conviction of his client. In closing argument trial counsel state, "I don't think this man has even been I.D.'d. (T.Tr. 169). Trial counsel should have known whether his client was properly I.D.'s or not. Trial counsel did no kind of investigation to find out if his client was properly I.D.'s outside of court, nor did he seek expert testimony on fallibility of eyewitness testimony. See Neil v. Bigger, 409 U.S. 188, 93 S.Ct. 375; State v. Rosette, 653 So.2d 80. It must be noted in her testimony Mrs. Thompson states (T.Tr. 49) she has known the defendant all his life since he was a little boy yet she couldn't give the police description of the person who raped her. Exhibit E4-A thru E4-D.

Trial counsel erred when he failed to object to State tactics to secure sympathy for the victim through his repeated use of the term, 'This old lady' throughout the trial or comparing the size of the victim relator throughout his closing arguments. See T.Tr. 45, 48-9, 151, 153-4, 171-3.

Trial counsel erred when he failed to object to prosecutor's bullying and remarks made outside scope of facts and evidence stated in trial: "She is living on a fixed income and it is very important

51

to her." It was never an issue or statement brought up about Mrs. Thompson's income or livelihood. Prosecutor only used such a statement to prejudice the jury against defendant.

Mr. Knight on cross examination. (T.Tr. 140) I see. Isn't it true that she's (Mrs. Thompson) been cooking for your family since your mother has ben dead and trying to help you all out a little bit? This question to relator while on the witness stand is further effort by prosecutor to draw the jury from the facts and acquire sympathy for the victim even though no facts or reference were ever made in the trial as to Mrs. Thompson cooking for relator's family and needless to say such was untrue.

Mr. Knight on cross examination resulted to bullying defendant on witness stand although trial counsel expressed anxiety to prosecutor's actions and count mild rebuttal damage had been done. (T.Tr. 143-4)

Trial counsel erred when he did not object to prosecutor's insinuation that his client should be harshly interrogated, intimidate or beaten into confessing to the crime of aggravated rape. "He doesn't want to tell you what he remembers about that night. He doesn't want to admit to you what happened that night, but if he is pressed, and we could press hard enough and make him tell the truth, then I believe the truth would be that he went to Mrs. Ethel Thompson's house and raped her that night..." These remarks attributed to the conviction of relator and trial counsel did nothing to prevent it. These statements by prosecutor prejudiced the jury in they overshadowed the facts of the case or lack of facts in the State's case and efforts in prosecuting relator on charge of aggravated rape and contributed to his wrongful conviction.

Relator contends his trial counsels were fatally incompetent and ineffective in that it was like not being represented at all in violation of his Fourteenth and Sixth Amendment right to counsel and due process. See Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006 (1972).

Relator further contends trial counsel was not familiar with his client's case adequately enough to represent him in a court of law and violated due process clause. See Ganby v. State of Alabama, 569 F.2d 1318 (3/23/78).

Relator contends he was denied the right to test scientifically any tangible objects in State's possession to counter prosecutor's charge of aggravated rape. Although, first counsel to defense Reggie Simmons filed Motion of Discovery and to receive tangible evidence in order to test independently of State's results. Latter trial counsel Thompson Ford failed to follow up on such request to defend his client right to fair trial. Because of trial attorney incompetence relator was tried and found guilty of aggravated rape upon irrelevant and inadmissible evidence.

Relator contends that his conviction is also a result of trial attorney lack of investigating his client alibi. It was only due to relator efforts that just one of his witness was present at trial. Trial counsel did nothing to ascertain his alibi through Ms. Vicki Anders and Carolyn Jackson who did not appear in court. Mrs. Thompson stated in the police affidavit that the rape occurred about 2:35 in the morning then she dialed the time at 4:21. Relator contribute the large gap between time of rape and when Mrs. Thompson called police is due the fact Mrs. Thompson had taken a bath in between the time. See Exhibit E4-B and Exhibit D2.

In her testimony, Ms. Vicki Anders stated it was 3:30 in the morning when she was dropped off after getting back into town. See T.Tr. 147, 148.

During relator's testimony, he stated it was about 3:00 in the morning when they got back in town although unsure of it. Relator stated he had went by Ms. Carolyn Jackson house before going home. Relator contends trial attorney did no investigation whatsoever to collaborate their client's alibi where Ms. Carolyn Jackson, Emily McKay, Fred Cain and Emmett Brown were necessary witnesses to prove relator was in another place during the commission of the crime. See T.Tr. 132-3, 142, 148.

Mr. Thomas Ford failed crucially and fatally as defense counsel as has been shown by his incompetency and unprofessional errors to investigate the full facts he was entrusted to represent and to follow the groundwork which was laid before he entered the case.

Relator contends trial counsel erred in failing to object to court's erroneous instruction to the jury of the law which applies to aggravated rape which ultimately led to the conviction of his client. See State v. Donahue, 408 So.2d 1262; State v. Gibbs, 355 So.2d 1299 (La. 1978).

This case presents again the question of whether the harmless error standard of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), applies to a jury instruction that violate the Fourteenth Amendment and the principle of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) because it fails to clearly and effectively inform each reasonable juror that the state must prove every element of the criminal offense with which the defendant is charged beyond a reasonable doubt. The United States Supreme Court has not resolved this question in a square holding, but it has given clear signals that such an error cannot be harmless. See discussion in State v. Cage, 583 So.2d 1125 (La. 1991).

Relator contends trial counsel erred in failing to file any motion at end of trial in behalf of his client. For instant, Mr. Ford knew his client was never indicted by a grand jury therefore he had the

53

option of filing a motion to correct illegal sentence at end of trial, post verdict acquittal because of lack of credible evidence. Because of the numerous errors in trial, Mr. Ford could have taken advantage of any one of the cited statutes or articles. R.S. 15:438; R.S. 15:452; R.S. 14:42(1)(2); C.Cr.P. art. 382-3, art. 438, art. 442-4, art. 461-6, art. 770-5, art. 821-2, art. 811, art. 813-4, art. 778, art. 851(1)(2), art. 853, art. 872, art. 881.5, art. 882(A)(B); C.E. art. 104-5, art. 401-2, art. 404, art. 801.

With all these options at his disposal, Mr. Ford filed no motions thereby abandoning his client, and therefore contributing to his guilty verdict and sentencing to life imprisonment. Relator contends there were no assignment of error made on his behalf on direct appeal by S. Austin McElroy and David J. Knight public defender because attorneys did not want to expose the gross negligence of their fellow workers and friends and the fact that David J. Knight is closely related to the assistance prosecutor William J. Knight.

Question here for this Honorable Court is whether relator was entitled to fair representation on direct appeal and was his Six and Fourteenth Amendment rights to counsel and due process was violated.

Attorneys for appeal filed a frivolous appeal on behalf of relator which resulted in the affirmative of the conviction. Although there was a patent of error on the fact of the record, mainly that it was no grand jury indictment and many other errors as Relator pointed out, Mr. McElroy and Mr. Knight stated none. However, citing "The Court does not review the sufficiency of the evidence to sustain a conviction. Citing a weak case such as State v. Lewis, 343 So.2d 1056 which had nothing to do with aggravated rape charge. However, counsel should have presented strong cases such as Chappel v. The State, 1835 WL 925 (Tenn. 1835); Berger v. United States, 295 U.S. 78, 55 S.Ct. 629 (1935); Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105 (1974).

Relator contends his appeal counsels were ineffective in that they did not file a claim of ineffective assistance of counsel on trial counsel which has been abundantly shown.

Relator assert appeal counsel should have filed motions: Ground for arrest of judgment. C.Cr.P. art. 861(1)(3)(5)(8) Art. 861. Ground for New Trial. Art. 852. Since there was no grand jury indictment. Art. 872(2)(3) Basis for valid sentence, art. 881.5, art. 882(A)(B) Motion to Correct illegal sentence.

There was no assignment of error presented in relator's behalf and as he has shown there are many fatal errors in this instant case that need resolving by law. What counsel filed for Assignment

of Error was not according to C.Cr.P. art. 844(A).  And relator feels Louisiana Supreme Court punished him unjustly for trial counsels and appeal counsel's gross negligence and unprofessionalism on direct appeal.  See exhibit E4-L-1 thru E4-L-4; Exhibit E4-M1 thru E4-M-6; Exhibit E4-N-1 thru E4-N-6.

C.Cr.P. Art. 844(A)(C) provides, The party appealing shall file with the appellate court a written designation of errors which are to be urged on appeal and furnished a copy to the trial judge and all counsel.  This assignment of error shall be filed in accordance with uniform rules of the appropriate appellate court.  If the record is not lodged in the appellate court within sixty days after the motion for the appeal is made or within the extended time granted by the proper court if the record is lodged in the appellate court without an assignment of error, the appellate court may adjudge the appellate, his attorney, or both guilty of contempt of court and impose a punishment authorized by law. State v. Easter, 756 So.2d 703, 32,940 (La.App. 2 Cir. 4/7/00).

Relator contends although his trial counsel and appeal counsel did nothing to suppress irrelevant evidence or suppress evidence illegally seized by police officers from being erroneously admitted as evidence against him in trial, he still has the right to evoke this High Court to dismiss said evidence through the action of first counsel, Mr. Reggie Simmons.  When Judge Thomas W. Tanner denied Motion to Quash bill of information and did not allow defense to challenge State's evidence as to its relevancy and counsel's objection to such blatant abuse of Judge's discretion.

Therefore, relator believes his rights are intact regardless of trial and appeal counsels negligence to bring forth errors.  See Extract of Minutes.  In State v. Rosette, 653 So.2d 80, 81, it states, Louisiana Code of Crim. P. Art. 841(A) provides: A.  An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.  A bill of exceptions to ruling or orders is unnecessary.  It is sufficient that a party, at the time the ruling or order of the court is made or sought, make known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds thereof.

Relator asserts, it is merely through the (Gross Negligence) of his appointed public counsels that there were no assignment of errors stated and filed on direct appeal, rather than any fault on his behalf.  Relator never heard from any counsel after trial, conviction and sentence.  It is request that this Court take the judicial cognizance of the promise that, even though his attorneys did not state any assignment of errors, he likewise did not submit a request of his removal from the case, so as to enable the court to provide petitioner with a new counsel to protect his right to appellate review.

Irrespectively, the case is barely distinguishable from that decided by the United States Supreme Court in Anders v. California, 386 U.S. 738, 87 S.Ct. 1394, 18 L.Ed.2d 493 (1967), wherein the court held the attorney must follow a particular procedure to withdraw from a defendant's appeal.  The Court rationalized:

> "(If) counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the Court and request permission to withdraw.  That request must, however, be accompanied by a brief actually referring to anything in the record that might arguably support the appeal.  A copy of Counsel's brief shall be furnished the indigent and time allowed him to raise any point that he chooses, the Court, not counsel, then proceeds after a full examination of all the proceedings, to decide whether the case is frivolous.  If it so finds it may grant the counsel request to withdraw and dismiss the appeal insofar as Federal requirements are concerned, or proceed to a decision on the merits, if state law so requires.  On the other hand, if it finds any of the claims of legal principles arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.  386 U.S. 744, 87 S.Ct. at 1400."

Although concession is made here to the effect of the present case being distinguishable Anders having filed his own appeal, supra, the rationale of the United States Supreme Court remains the same.

Thus, the foregoing considered, relator asks this Court to take judicial cognizance of the facts presented herein, and ask itself "SHOULD RELATOR BE DENIED HIS RIGHT TO APPELLATE REVIEW" merely because of his attorneys negligence and lack of effectiveness, even where he (Relator) has not "Personally waived his right to appellate review?"  See Kimmelman v. Morrison, 477 U.S. 365, 376, 106 S.Ct. 2574, 2583 (1986), provide, as we held only last term, the right to effective assistance of counsel is not confined to trial, but extends also to the first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); Barefoot v. Estelle, 463 U.S. 880, 885, 103 S.Ct. 3383, 3391.

Relator asserts trial counsels and appeal counsels showed no loyalty to him in his defense against a criminal trial and appeal.  See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064; Wash. Legal Found. v. Legal Found. of Wash., 271 F.3d 835.  Had counsel been loyal to the rights of their client the outcome would have been different.

Relator contends that a fair trial could have been assured him if trial judge and Louisiana Supreme Court Justices had intervened two decades ago.  See Gandy v. State of Alabama, 569 F.2d 1318, 1321 91978).  Which provides in pertinent part: the Sixth Amendment right to counsel incorporated in Fourteenth Amendment due process is violated if it is "shown that some responsible state official connected with the criminal proceeding . . . . could have remedied the conduct (and)

failed in his duty to accord justice to the accused." Id. at 1337.  See also Cantrell v. Alabama, 546 F.2d 652 (5th Cir. 1977); Loftis v. Estelle, 515 F.2d 872 (5th Cir. 1975).  The failure by counsels to act on already filed motion to quash the bill of information or refile motion to quash bill of information or any other motion pertaining to relief is based upon denial of equal protection and due process amounts to ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees to defendants the right to effective assistance of counsel.  The Sixth and Fourteenth Amendments guarantee a person accused of a crime the right to the aid of a lawyer in preparing and presenting his defense.  It has long been settled that "the right to counsel is the right to the effective assistance of counsel," whether during trial or appeal.  McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Kimmelman, supra.

When a defendant raises an ineffective assistance of counsel claim, he must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland v. Washington, 446 U.S. 668 (1984) and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  Strickland, supra.  The Louisiana Supreme Court interprets Strickland as requiring a showing that counsel's performance was deficient (not within the range of competence required of attorneys in criminal cases) and that deficient performance ended in the result that was unreliable.  "The inquiry is whether, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different."  State v. Sullivan, 596 So.2d 177, 183 (La. 1992).

Relator has carried his burden of proving ineffective assistance of counsel. He has alleged in claim of this writ application that he was denied Equal Protection and Due Process of the law due to "Ineffective Assistance of Counsel", in the parish of Washington, State of Louisiana.

Relator contends that counsel knew there was no grand jury indictment which was required by law for the prosecution of R.S. 14:42 and if trial counsel did not have knowledge of prior Motion to Quash bill of information he should have filed motion to quash instead.

Relator contends that trial counsel failed to investigate into the facts of the case thereby fatally prejudiced his client in which sentence and conviction stands.

Relator further contends that trial judge is at fault that he had opportunity to alleviate the problem but did nothing.

Relator contends that appeal counsels did not investigate case and filed no assignment of errors when there's numerous nonfrivolous errors in instant case, thereby, denying him effective assistance of counsel and violating this Sixth and Fourteenth Amendment, and which prejudice your relator on direct appeal.

## CONCLUSION

The facts in this case undisputably demonstrates that trial judge, Assistant District Attorney, trial counsel and appellate counsel erratically and blatantly disregarded Relator's right to "Equal Protection" and "Due Process of Law" as an "American" citizen and of the State of Louisiana.

Relator has demonstrated through law code and articles that he did not have a fair trial and has been incarcerated for over two decades unlawfully being denied "Relief".

WHEREFORE, relator pray that this Honorable Court grant this Application for Writ of Certiorari, by ordering relator released from further confinement, or in the alternative, hold an evidentiary hearing so that the record can demonstrate the State's inability to prove each and every element of said charge.

Respectfully Submitted by: ( 10 -12 - 06 )

David L. Williams #98840
David Lee Williams, #098840
Hickory Hall - 4
Louisiana State Penitentiary
Angola, La. 70712

58

CERTIFICATE OF SERVICE

I, DAVID LEE WILLIAMS, do hereby certify that a true copy of the foregoing Application for

Post Conviction Relief has been served upon the Clerk of Court for the Supreme Court of Louisiana,

Mr. John Tarlton Olivier, 400 Royal Street, New Orleans, La. 70130; and District Attorney, Mr.

Walter P. Reed, Administrative Complex, 428 E. Boston Street, Covington, La. 70433; by placing a

copy of same in the U.S. mail on this 8th day of May, 2006.

David L. Williams #98840
Signature
(10-12-06)

December 12,
~~November 27~~, 2007

Mr. David Lee Williams, #098840
Magnolia Unit - 4
Louisiana State Prison
Angola, La. 70712

Ms. Loretta G. Whyte
Clerk of Court
United States District Court
Eastern District of Louisiana
500 Camp Street
New Orleans, La. 70130

Re:   Submission of Writ of Habeas Corpus
      U.S.C. 28 § 2254 (d)(1) & (2)
      David Lee Williams v. Burl Cain, Warden, L.S.P.

Dear Ms. Whyte:

    Please find enclosed copies of my writ of habeas corpus. I am requesting that you please

put me on notice with same once you have filed and docketed this matter. Also, know that the

($5.00) five dollars, filing fee should be arriving at your office, in a very short time.

    Therefore, I also request that you please bear with me until you've receive the cost for

filing fees.

Sincerely,

David Lee Williams, DOC #098840
Magnolia Unit - 4
Louisiana State Penitentiary
Angola, La. 70712

TENDERED FOR FILING

DEC 14 2007

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk



$ 05.05⁰
DEC 13 2007
ZIP CODE 70712

Ms. Loretta G. Whyte, Clerk
U.S. Eastern District Court
500 Camp Street
New Orleans, La. 70130

Mr. David Lee Williams, #98840
Magnolia-4
La. State Penitentiary
Angola, La. 70712

PRIORITY
MAIL

PRIORITY
MAIL